# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIRST CIRCUIT

NEW HAMPSHIRE INDONESIAN COMMUNITY SUPPORT; LEAGUE OF UNITED LATIN AMERICAN CITIZENS; MAKE THE ROAD NEW YORK,

Plaintiffs-Appellees,

v.

DONALD J. TRUMP, President of the United States, in their official capacity; U.S. DEPARTMENT OF HOMELAND SECURITY; KRISTI NOEM, in their official capacity as Secretary of the U.S. Department of Homeland Security; U.S. DEPARTMENT OF STATE; MARCO RUBIO, in their official capacity as Secretary of the U.S. Department of State; U.S. DEPARTMENT OF AGRICULTURE; BROOKE L. ROLLINS, in their official capacity as Secretary of the U.S. Department of Agriculture; CENTERS FOR MEDICARE AND MEDICAID SERVICES; MEHMET OZ, in their official capacity as Administrator of the Centers for Medicare and Medicaid Services,

Defendants-Appellants.

On Appeal from the United States District Court
for the District of New Hampshire

## JOINT APPENDIX

YAAKOV M. ROTH
*Acting Assistant Attorney General*

ERIC D. McARTHUR
*Deputy Assistant Attorney General*

MARK R. FREEMAN
SHARON SWINGLE
BRAD HINSHELWOOD
DEREK WEISS
*Attorneys, Appellate Staff*
*Civil Division, Room 7230*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 616-5365*

# TABLE OF CONTENTS

District Court Docket Report..........................................................................................JA1

Complaint (Dkt. 1) (Jan. 20, 2025)..............................................................................JA29

Declaration of Rev. Sandra Pontoh, Director of New Hampshire Indonesian
      Community Support (Dkt. 24-2) (Jan. 21, 2025) ..............................................JA46

Declaration of Juan Proaño, CEO of LULAC (Dkt. 24-3) (Jan. 21, 2025) ..............JA50

Declaration of Sienna Fontaine, General Counsel of Make the Road New York
      (Dkt. 24-4) (Jan. 21, 2025) ...................................................................................JA54

Supplemental Declaration of Rev. Sandra Pontoh, Director of New Hampshire
      Indonesian Community Support (Dkt. 74-1) (Feb. 8, 2025)...........................JA64

Transcript of February 10, 2025 Preliminary Injunction Hearing (Dkt. 80).............JA66

Transcript of March 14, 2025 Clarification Motion Hearing (Dkt. 91)...................JA118

Notice of Appeal (Dkt. 94) (Apr. 10, 2025)...............................................................JA136

# U.S. District Court
## District of New Hampshire (Concord)
## CIVIL DOCKET FOR CASE #: 1:25–cv–00038–JL–TSM

New Hampshire Indonesian Community Support et al v. Trump et al
Assigned to: Judge Joseph N. Laplante
Referred to: US Magistrate Judge Talesha L. Saint–Marc
Case in other court:  First Circuit Court of Appeals, #25–01348
Cause: 28:2201 Declaratory Judgment

Date Filed: 01/20/2025
Jury Demand: None
Nature of Suit: 440 Civil Rights: Other
Jurisdiction: U.S. Government Defendant

**Plaintiff**

| | | |
|---|---|---|
| **New Hampshire Indonesian Community Support** | represented by | **Cody Wofsy**<br>American Civil Liberties Union Foundation<br>425 California St, Ste 700<br>San Francisco, CA 94104<br>415–343–0785<br>Email: cwofsy@aclu.org<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |
| | | **Adriana Lafaille**<br>American Civil Liberties Union of Massachusetts<br>One Center Plz, Ste 850<br>Boston, MA 02108<br>617–482–3170<br>Email: alafaille@aclum.org<br>*ATTORNEY TO BE NOTICED* |
| | | **Ashley Michelle Burrell**<br>NAACP Legal Defense Fund<br>40 Rector St<br>New York, NY 10006<br>212–965–2200<br>Email: aburrell@naacpldf.org<br>*ATTORNEY TO BE NOTICED* |
| | | **Ayomide Odunsi**<br>NAACP Legal Defense & Educational Fund, Inc.<br>700 14th St NW, Ste 600<br>Washington, DC 20005<br>202–682–1300<br>Email: modunsi@naacpldf.org<br>*ATTORNEY TO BE NOTICED* |
| | | **Carol Garvan**<br>American Civil Liberties Union Foundation<br>PO Box 7860<br>Portland, ME 04112<br>207–619–8687<br>Email: cgarvan@aclumaine.org<br>*ATTORNEY TO BE NOTICED* |
| | | **Chelsea Eddy**<br>American Civil Liberties Union of New Hampshire<br>18 Low Ave<br>Concord, NH 03301<br>603–227–6681<br>Email: chelsea@aclu–nh.org |

*ATTORNEY TO BE NOTICED*

**Christopher Myron Lapinig**
Asian Law Caucus
55 Columbus Ave
San Francisco, CA 94111
415−896−1701
Email: christopherl@asianlawcaucus.org
*ATTORNEY TO BE NOTICED*

**Elizabeth Grace Caldwell**
NAACP Legal Defense Fund
40 Rector St
New York, NY 10006
212−965−2200
Email: bcaldwell@naacpldf.org
*ATTORNEY TO BE NOTICED*

**Gilles R. Bissonnette**
American Civil Liberties Union of New
Hampshire
18 Low Ave
Concord, NH 03301
603 224−5591
Email: Gilles@aclu−nh.org
*ATTORNEY TO BE NOTICED*

**Grace Choi**
American Civil Liberties Union Foundation
125 Broad St, 18th Flr
New York, NY 10004
770−880−5592
Email: gchoi@aclu.org
*ATTORNEY TO BE NOTICED*

**Hannah Schoen Steinberg**
American Civil Liberties Union Foundation
425 California St, Ste 700
San Francisco, CA 94104
212−549−2500
Email: hsteinberg@aclu.org
*ATTORNEY TO BE NOTICED*

**Henry Klementowicz**
American Civil Liberties Union of New
Hampshire
18 Low Ave
Concord, NH 03301
603 333−2201
Email: henry@aclu−nh.org
*ATTORNEY TO BE NOTICED*

**Kimberly Leung**
Asian Law Caucus
55 Columbus Ave
San Francisco, CA 94111
425−234−0748
Email: kimberlyl@asianlawcaucus.org
*ATTORNEY TO BE NOTICED*

**Lee Gelernt**
American Civil Liberties Union Foundation
125 Broad St, 18th Flr
New York, NY 10004
212−549−2616

Fax: 212–549–2654
Email: lgelernt@aclu.org
*ATTORNEY TO BE NOTICED*

**Morenike Fajana**
NAACP Legal Defense Fund
40 Rector St
New York, NY 10006
212–965–2200
Email: mfajana@naacpldf.org
*ATTORNEY TO BE NOTICED*

**Morgan Elle Humphrey**
NAACP Legal Defense & Educational
Fund, Inc.
700 14th St NW, Ste 600
Washington, DC 20005
202–682–1300
Email: mhumphrey@naacpldf.org
*ATTORNEY TO BE NOTICED*

**Noor Zafar**
American Civil Liberties Union Foundation
125 Broad St, 18th Flr
New York, NY 10004
469–301–5991
Email: nzafar@aclu.org
*ATTORNEY TO BE NOTICED*

**Omar C. Jadwat**
American Civil Liberties Union Foundation
125 Broad St, 18th Flr
New York, NY 10004
212–549–2620
Fax: 212–549–2654
Email: ojadwat@aclu.org
*ATTORNEY TO BE NOTICED*

**Spencer Elijah Wittmann Amdur**
American Civil Liberties Union Foundation
425 California St, Ste 700
San Francisco, CA 94104
212–549–2500
Email: samdur@aclu.org
*ATTORNEY TO BE NOTICED*

**Stephen Kang**
American Civil Liberties Union Foundation
425 California St, Ste 700
San Francisco, CA 94104
212–549–2500
Fax: 415–395–0950
Email: skang@aclu.org
*ATTORNEY TO BE NOTICED*

**Wafa Junaid**
American Civil Liberties Union Foundation
66 W 38th St, Ste 29C
New York, NY 10018
646–256–2274
Email: wjunaid@aclu.org
*ATTORNEY TO BE NOTICED*

**Winifred Kao**
Asian Law Caucus

55 Columbus Ave
San Francisco, CA 94111
415–896–1701
Fax: 415–896–1702
Email: winifredk@asianlawcaucus.org
*ATTORNEY TO BE NOTICED*

**Zachary L. Heiden**
American Civil Liberties Union Foundation
PO Box 7860
Portland, ME 04112
207–619–6224
Fax: 207–774–1103
Email: zheiden@aclumaine.org
*ATTORNEY TO BE NOTICED*

**SangYeob Kim**
American Civil Liberties Union of New
Hampshire
18 Low Ave
Concord, NH 03301
603 224–5591
Fax: 603 617 7264
Email: SangYeob@aclu–nh.org
*ATTORNEY TO BE NOTICED*

<u>**Plaintiff**</u>

| **League of United Latin American Citizens** | represented by | **Cody Wofsy**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |
|---|---|---|

**Adriana Lafaille**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ashley Michelle Burrell**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ayomide Odunsi**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Carol Garvan**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Chelsea Eddy**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Christopher Myron Lapinig**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Elizabeth Grace Caldwell**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Gilles R. Bissonnette**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Grace Choi**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Hannah Schoen Steinberg**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Henry Klementowicz**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Lee Gelernt**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Morenike Fajana**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Morgan Elle Humphrey**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Noor Zafar**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Norman Larry Eisen**
State Democracy Defenders Action
2022 Columbia Rd NW, Ste 214
Washington, DC 20009–1309
202–753–9667
Email: norman@statedemocracydefenders.org
*ATTORNEY TO BE NOTICED*

**Omar C. Jadwat**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Spencer Elijah Wittmann Amdur**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Stephen Kang**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Tianna Jade Mays**
State Democracy Defenders Action
1500 K Street, Ste 900
Washington, DC 20005
202–662–8383
Email: tianna@statedemocracydefenders.org
*ATTORNEY TO BE NOTICED*

**Wafa Junaid**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Winifred Kao**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Zachary L. Heiden**

(See above for address)
*ATTORNEY TO BE NOTICED*

**SangYeob Kim**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Make the Road New York**                 represented by  **Cody Wofsy**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Adriana Lafaille**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ashley Michelle Burrell**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ayomide Odunsi**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Carol Garvan**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Chelsea Eddy**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Christopher Myron Lapinig**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Elizabeth Grace Caldwell**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Gilles R. Bissonnette**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Grace Choi**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Hannah Schoen Steinberg**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Henry Klementowicz**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Lee Gelernt**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Morenike Fajana**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Morgan Elle Humphrey**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Noor Zafar**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Omar C. Jadwat**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Spencer Elijah Wittmann Amdur**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Stephen Kang**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Wafa Junaid**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Winifred Kao**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Zachary L. Heiden**
(See above for address)
*ATTORNEY TO BE NOTICED*

**SangYeob Kim**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**<u>Defendant</u>**

**Donald J. Trump**   represented by   **Brad P. Rosenberg**
*President of the United States, in his*   US Department of Justice
*official capacity*   1100 L St NW
   Washington, DC 20530
   202–514–3374
   Email: brad.rosenberg@usdoj.gov
   *LEAD ATTORNEY*
   *ATTORNEY TO BE NOTICED*

   **Yuri Fuchs**
   US Department of Justice
   1100 L St NW
   Washington, DC 20530
   202–598–3869
   Email: yuri.s.fuchs@usdoj.gov
   *LEAD ATTORNEY*
   *ATTORNEY TO BE NOTICED*

   **Drew C. Ensign**
   US Department of Jusitice – Civil (950
   Penn, NWB 7002)
   950 Pennsylvania Ave NW NWB 7002
   Washington, DC 20530
   202–514–2331

Email: drew.c.ensign@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Robert Charles Merritt**
DOJ–Civ
1100 L Street, NW
Ste 4044
Washington, DC 20005
202–616–8098
Email: robert.c.merritt@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Defendant**

**US Department of Homeland Security**          represented by          **Brad P. Rosenberg**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Yuri Fuchs**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Drew C. Ensign**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Robert Charles Merritt**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**US Department of Homeland Security,
Secretary**
*in their official capacity*          represented by          **Brad P. Rosenberg**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Yuri Fuchs**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Drew C. Ensign**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Robert Charles Merritt**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**US Department of State**          represented by          **Brad P. Rosenberg**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Yuri Fuchs**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Drew C. Ensign**
(See above for address)

*ATTORNEY TO BE NOTICED*

**Robert Charles Merritt**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**US Department of State, Secretary**
*in their official capacity*

represented by **Brad P. Rosenberg**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Yuri Fuchs**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Drew C. Ensign**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Robert Charles Merritt**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**US Department of Agriculture**

represented by **Brad P. Rosenberg**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Yuri Fuchs**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Drew C. Ensign**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Robert Charles Merritt**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**US Department of Agriculture, Secretary**
*in their official capacity*

represented by **Brad P. Rosenberg**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Yuri Fuchs**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Drew C. Ensign**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Robert Charles Merritt**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

| | | |
|---|---|---|
| **Centers for Medicare and Medicaid Services** | represented by | **Brad P. Rosenberg**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Yuri Fuchs**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Drew C. Ensign**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Robert Charles Merritt**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

| | | |
|---|---|---|
| **Centers for Medicare and Medicaid Services, Administrator**<br>*in their official capacity* | represented by | **Brad P. Rosenberg**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Yuri Fuchs**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Drew C. Ensign**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Robert Charles Merritt**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amicus**

| | | |
|---|---|---|
| **Local Governments and Local Government Officials** | represented by | **Henry Clay Quillen**<br>Whatley Kallas LLP<br>159 Middle Street, Suite 2C<br>Portsmouth, NH 03801<br>603–294–1591<br>Fax: 800–922–4851<br>Email: hquillen@whatleykallas.com<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Katherine Courtney**
Public Rights Project
490 43rd St, Ste 115
Oakland, CA 94609
510–738–6788
Email: katiec@publicrightsproject.org
*ATTORNEY TO BE NOTICED*

**Amicus**

| | | |
|---|---|---|
| **Gun Owners of America, Inc.** | represented by | **Phillip Evan Marbury**<br>The Law Offices of Marbury & Marbury, PLLC<br>PO Box 2122 |

29 Mill Street
STE C–4
Wolfeboro, NH 03894
603–569–4111
Fax: 603–569–3180
Email: pm@marblaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**America's Future**                    represented by **Phillip Evan Marbury**
                                        (See above for address)
                                        *LEAD ATTORNEY*
                                        *ATTORNEY TO BE NOTICED*

**Amicus**

**Gun Owners Foundation**               represented by **Phillip Evan Marbury**
                                        (See above for address)
                                        *LEAD ATTORNEY*
                                        *ATTORNEY TO BE NOTICED*

**Amicus**

**Citizens United**                     represented by **Phillip Evan Marbury**
                                        (See above for address)
                                        *LEAD ATTORNEY*
                                        *ATTORNEY TO BE NOTICED*

**Amicus**

**U.S. Constutional Rights Legal**      represented by **Phillip Evan Marbury**
**Defense Fund**                        (See above for address)
                                        *LEAD ATTORNEY*
                                        *ATTORNEY TO BE NOTICED*

**Amicus**

**Leadership Institute**                represented by **Phillip Evan Marbury**
                                        (See above for address)
                                        *LEAD ATTORNEY*
                                        *ATTORNEY TO BE NOTICED*

**Amicus**

**Conservative Legal Defense and**      represented by **Phillip Evan Marbury**
**Education Fund**                      (See above for address)
                                        *LEAD ATTORNEY*
                                        *ATTORNEY TO BE NOTICED*

**Amicus**

**Iowa, State of**                      represented by **Richard J. Lehmann**
*other*                                 Lehmann Major List PLLC
Brenna Bird, Attorney General           6 Garvins Falls Road
                                        Concord, NH 03301
                                        603–731–5435
                                        Fax: 720–995–9156
                                        Email: rick@nhlawyer.com
                                        *ATTORNEY TO BE NOTICED*

**Amicus**

**Alabama, State of**                   represented by **Richard J. Lehmann**
*other*                                 (See above for address)
Steve Marshall, Attorney General        *LEAD ATTORNEY*
                                        *ATTORNEY TO BE NOTICED*

**Amicus**

| | | |
|---|---|---|
| **Arkansas, State of**<br>*other*<br>Tim Griffin, Attorney General | represented by | **Richard J. Lehmann**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Amicus**

| | | |
|---|---|---|
| **Florida, State of**<br>*other*<br>John Guard, Acting Attorney General | represented by | **Richard J. Lehmann**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Amicus**

| | | |
|---|---|---|
| **Idaho, State of**<br>*other*<br>Raul R. Labrador, Attorney General | represented by | **Richard J. Lehmann**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Amicus**

| | | |
|---|---|---|
| **Indiana, State of**<br>*other*<br>Theodore E. Rokita, Attorney General | represented by | **Richard J. Lehmann**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Amicus**

| | | |
|---|---|---|
| **Kansas, State of**<br>*other*<br>Kris Kobach, Attorney General | represented by | **Richard J. Lehmann**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Amicus**

| | | |
|---|---|---|
| **Louisiana, State of**<br>*other*<br>Liz Murrill, Attorney General | represented by | **Richard J. Lehmann**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Amicus**

| | | |
|---|---|---|
| **Mississippi, State of**<br>*other*<br>Lynn Fitch, Attorney General | represented by | **Richard J. Lehmann**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Amicus**

| | | |
|---|---|---|
| **Missouri, State of**<br>*other*<br>Andrew T. Bailey, Attorney General | represented by | **Richard J. Lehmann**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Amicus**

| | | |
|---|---|---|
| **Montana, State of**<br>*other*<br>Austin Knudsen, Attorney General | represented by | **Richard J. Lehmann**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Amicus**

| | | |
|---|---|---|
| **Nebraska, State of**<br>*other*<br>Michael T. Hilgers, Attorney General | represented by | **Richard J. Lehmann**<br>(See above for address)<br>*LEAD ATTORNEY* |

**Amicus**

| | | |
|---|---|---|
| **North Dakota, State of**<br>*other*<br>Drew Wrigley, Attorney General | represented by | **Richard J. Lehmann**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Amicus**

| | | |
|---|---|---|
| **Oklahoma, State of**<br>*other*<br>Gentner Drummond, Attorney General | represented by | **Richard J. Lehmann**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Amicus**

| | | |
|---|---|---|
| **South Carolina, State of**<br>*other*<br>Alan Wilson, Attorney General | represented by | **Richard J. Lehmann**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Amicus**

| | | |
|---|---|---|
| **South Dakota, State of**<br>*other*<br>Marty Jackley, Attorney General | represented by | **Richard J. Lehmann**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Amicus**

| | | |
|---|---|---|
| **Utah, State of**<br>*other*<br>Derek E. Brown, Attorney General | represented by | **Richard J. Lehmann**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Amicus**

| | | |
|---|---|---|
| **Wyoming, State of**<br>*other*<br>Bridget Hill, Attorney General | represented by | **Richard J. Lehmann**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Amicus**

| | | |
|---|---|---|
| **Immigration Reform Law Insitute** | represented by | **Jacob Rhodes**<br>Cleveland Waters & Bass PA<br>Two Capital Plaza<br>PO Box 1137<br>Concord, NH 03302–1137<br>603–224–7761<br>Email: rhodesj@cwbpa.com<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

| Date Filed | # | Docket Text |
|---|---|---|
| 01/20/2025 | 1 | NEW CASE/ COMPLAINT Filing fee $ 405, receipt number ANHDC–2593113 filed by Make the Road New York, League of United Latin American Citizens, New Hampshire Indonesian Community Support. (Attachments: # 1 Civil Cover Sheet Civil Cover Sheet, # 2 Attachment to Exhibit Attachment to Civil Cover Sheet, # 3 Summons – Waiver Summons – President Donald J. Trump, # 4 Summons – Waiver Summons – Secretary of Homeland Security, # 5 Summons – Waiver Summons – U.S. Department of Homeland Security, # 6 Summons – Waiver Summons – Secretary of State, # 7 Summons – Waiver Summons – U.S. Department of State, # 8 Summons – Waiver Summons – Secretary of Agriculture, # 9 Summons – Waiver |

| | | |
|---|---:|---|
| | | Summons – U.S. Department of Agriculture, # <u>10</u> Summons – Waiver Summons – Administrator of the Centers for Medicare and Medicaid Services, # <u>11</u> Summons – Waiver Summons – Centers for Medicare and Medicaid Services)(Kim, SangYeob) (Entered: 01/20/2025) |
| 01/20/2025 | <u>2</u> | Disclosure Statement by New Hampshire Indonesian Community Support, League of United Latin American Citizens, Make the Road New York disclosing no parent company, no publicly traded company, and no merger agreement. (Attachments: # <u>1</u> Disclosure Statement – League of United Latin American Citizens, # <u>2</u> Disclosure Statement – Make the Road New York)(Kim, SangYeob) (Entered: 01/20/2025) |
| 01/20/2025 | <u>3</u> | NOTICE of Attorney Appearance by Gilles R. Bissonnette on behalf of New Hampshire Indonesian Community Support, League of United Latin American Citizens, Make the Road New York Attorney Gilles R. Bissonnette added to party New Hampshire Indonesian Community Support(pty:pla), Attorney Gilles R. Bissonnette added to party League of United Latin American Citizens(pty:pla), Attorney Gilles R. Bissonnette added to party Make the Road New York(pty:pla).(Bissonnette, Gilles) (Entered: 01/20/2025) |
| 01/20/2025 | <u>4</u> | MOTION for Cody Wofsy to Appear Pro Hac Vice (Filing fee $ 100, Receipt # ANHDC–2593116.) filed by New Hampshire Indonesian Community Support, League of United Latin American Citizens, Make the Road New York.Follow up on Objection on 2/3/2025. The court only follow up date DOES NOT include 3 additional days that may apply per FRCP 6(d) and FRCrP 45(c).(Bissonnette, Gilles) (Entered: 01/20/2025) |
| 01/20/2025 | <u>5</u> | MOTION for Grace Choi to Appear Pro Hac Vice (Filing fee $ 100, Receipt # ANHDC–2593117.) filed by New Hampshire Indonesian Community Support, League of United Latin American Citizens, Make the Road New York.Follow up on Objection on 2/3/2025. The court only follow up date DOES NOT include 3 additional days that may apply per FRCP 6(d) and FRCrP 45(c).(Bissonnette, Gilles) (Entered: 01/20/2025) |
| 01/20/2025 | <u>6</u> | MOTION for Hannah Steinberg to Appear Pro Hac Vice (Filing fee $ 100, Receipt # ANHDC–2593118.) filed by New Hampshire Indonesian Community Support, League of United Latin American Citizens, Make the Road New York.Follow up on Objection on 2/3/2025. The court only follow up date DOES NOT include 3 additional days that may apply per FRCP 6(d) and FRCrP 45(c).(Bissonnette, Gilles) (Entered: 01/20/2025) |
| 01/20/2025 | <u>7</u> | MOTION for Lee Gelernt to Appear Pro Hac Vice (Filing fee $ 100, Receipt # ANHDC–2593119.) filed by New Hampshire Indonesian Community Support, League of United Latin American Citizens, Make the Road New York.Follow up on Objection on 2/3/2025. The court only follow up date DOES NOT include 3 additional days that may apply per FRCP 6(d) and FRCrP 45(c).(Bissonnette, Gilles) (Entered: 01/20/2025) |
| 01/20/2025 | <u>8</u> | MOTION for Noor Zafar to Appear Pro Hac Vice (Filing fee $ 100, Receipt # ANHDC–2593120.) filed by New Hampshire Indonesian Community Support, League of United Latin American Citizens, Make the Road New York.Follow up on Objection on 2/3/2025. The court only follow up date DOES NOT include 3 additional days that may apply per FRCP 6(d) and FRCrP 45(c).(Bissonnette, Gilles) (Entered: 01/20/2025) |
| 01/20/2025 | <u>9</u> | MOTION for Omar Jadwat to Appear Pro Hac Vice (Filing fee $ 100, Receipt # ANHDC–2593121.) filed by New Hampshire Indonesian Community Support, League of United Latin American Citizens, Make the Road New York.Follow up on Objection on 2/3/2025. The court only follow up date DOES NOT include 3 additional days that may apply per FRCP 6(d) and FRCrP 45(c).(Bissonnette, Gilles) (Entered: 01/20/2025) |
| 01/20/2025 | <u>10</u> | MOTION for Spencer Amdur to Appear Pro Hac Vice (Filing fee $ 100, Receipt # ANHDC–2593122.) filed by New Hampshire Indonesian Community Support, League of United Latin American Citizens, Make the Road New York.Follow up on Objection on 2/3/2025. The court only follow up date DOES NOT include 3 additional days that may apply per FRCP 6(d) and FRCrP 45(c).(Bissonnette, Gilles) (Entered: 01/20/2025) |

| | | |
|---|---|---|
| 01/20/2025 | 11 | WITHDRAWN AS DUPLICATIVE MOTION for Spencer Amdur to Appear Pro Hac Vice (Filing fee $ 100, Receipt # ANHDC–2593123.) filed by New Hampshire Indonesian Community Support, League of United Latin American Citizens, Make the Road New York.Follow up on Objection on 2/3/2025. The court only follow up date DOES NOT include 3 additional days that may apply per FRCP 6(d) and FRCrP 45(c).(Bissonnette, Gilles) Modified on 1/21/2025 to add Withdrawn text (jwb). (Entered: 01/20/2025) |
| 01/20/2025 | 12 | MOTION for Stephen Kang to Appear Pro Hac Vice (Filing fee $ 100, Receipt # ANHDC–2593124.) filed by New Hampshire Indonesian Community Support, League of United Latin American Citizens, Make the Road New York.Follow up on Objection on 2/3/2025. The court only follow up date DOES NOT include 3 additional days that may apply per FRCP 6(d) and FRCrP 45(c).(Bissonnette, Gilles) (Entered: 01/20/2025) |
| 01/20/2025 | 13 | MOTION for Wafa Junaid to Appear Pro Hac Vice (Filing fee $ 100, Receipt # ANHDC–2593125.) filed by New Hampshire Indonesian Community Support, League of United Latin American Citizens, Make the Road New York.Follow up on Objection on 2/3/2025. The court only follow up date DOES NOT include 3 additional days that may apply per FRCP 6(d) and FRCrP 45(c).(Bissonnette, Gilles) (Entered: 01/20/2025) |
| 01/20/2025 | 14 | MOTION for Zachary L. Heiden to Appear Pro Hac Vice (Filing fee $ 100, Receipt # ANHDC–2593126.) filed by New Hampshire Indonesian Community Support, League of United Latin American Citizens, Make the Road New York.Follow up on Objection on 2/3/2025. The court only follow up date DOES NOT include 3 additional days that may apply per FRCP 6(d) and FRCrP 45(c).(Bissonnette, Gilles) (Entered: 01/20/2025) |
| 01/20/2025 | 15 | MOTION for Winifred Kao to Appear Pro Hac Vice (Filing fee $ 100, Receipt # ANHDC–2593127.) filed by New Hampshire Indonesian Community Support, League of United Latin American Citizens, Make the Road New York.Follow up on Objection on 2/3/2025. The court only follow up date DOES NOT include 3 additional days that may apply per FRCP 6(d) and FRCrP 45(c).(Bissonnette, Gilles) (Entered: 01/20/2025) |
| 01/20/2025 | 16 | MOTION for Christopher M. Lapinig to Appear Pro Hac Vice (Filing fee $ 100, Receipt # ANHDC–2593128.) filed by New Hampshire Indonesian Community Support, League of United Latin American Citizens, Make the Road New York.Follow up on Objection on 2/3/2025. The court only follow up date DOES NOT include 3 additional days that may apply per FRCP 6(d) and FRCrP 45(c).(Bissonnette, Gilles) (Entered: 01/20/2025) |
| 01/20/2025 | 17 | MOTION for Kimberly W. Leung to Appear Pro Hac Vice (Filing fee $ 100, Receipt # ANHDC–2593129.) filed by New Hampshire Indonesian Community Support, League of United Latin American Citizens, Make the Road New York.Follow up on Objection on 2/3/2025. The court only follow up date DOES NOT include 3 additional days that may apply per FRCP 6(d) and FRCrP 45(c).(Bissonnette, Gilles) (Entered: 01/20/2025) |
| 01/20/2025 | 18 | MOTION for Norm Eisen to Appear Pro Hac Vice (Filing fee $ 100, Receipt # ANHDC–2593130.) filed by New Hampshire Indonesian Community Support, League of United Latin American Citizens, Make the Road New York.Follow up on Objection on 2/3/2025. The court only follow up date DOES NOT include 3 additional days that may apply per FRCP 6(d) and FRCrP 45(c).(Bissonnette, Gilles) (Entered: 01/20/2025) |
| 01/20/2025 | 19 | MOTION for Tianna Mays to Appear Pro Hac Vice (Filing fee $ 100, Receipt # ANHDC–2593131.) filed by New Hampshire Indonesian Community Support, League of United Latin American Citizens, Make the Road New York.Follow up on Objection on 2/3/2025. The court only follow up date DOES NOT include 3 additional days that may apply per FRCP 6(d) and FRCrP 45(c).(Bissonnette, Gilles) (Entered: 01/20/2025) |
| 01/20/2025 | 20 | Notice of Withdrawal of Motion: 11 MOTION for Spencer Amdur to Appear Pro Hac Vice (Filing fee $ 100, Receipt # ANHDC–2593123.).(Bissonnette, Gilles) (Entered: 01/20/2025) |

| | | |
|---|---|---|
| 01/20/2025 | | Case assigned to Judge Joseph N. Laplante and US Magistrate Judge Talesha L. Saint−Marc. The case designation is: 1:25−cv−38−JL−TSM. Please show this number with the judge designation on all future pleadings. (ed) (Entered: 01/21/2025) |
| 01/21/2025 | | NOTICE. This case has been designated for Electronic Case Filing. All further submissions shall be filed in compliance with the Administrative Procedures for Electronic Case Filing. Pro se litigants are not required to file electronically and may continue to file documents in paper format. Persons filing electronically are strongly encouraged to complete the interactive training modules available on the courts website. To access these modules, click HERE. (ed) (Entered: 01/21/2025) |
| 01/21/2025 | | Motions terminated: 11 MOTION for Spencer Amdur to Appear Pro Hac Vice filed by League of United Latin American Citizens, Make the Road New York, New Hampshire Indonesian Community Support. MOTION WITHDRAWN AS DUPLICATIVE (jwb) (Entered: 01/21/2025) |
| 01/21/2025 | | NOTICE OF DUPLICATE PAYMENT: New Hampshire Indonesian Community Support, League of United Latin American Citizens, Make the Road New York submitted a duplicate payment in the amount of $100.00, receipt no. ANHDC−2593123, re 11 MOTION for Spencer Amdur to Appear Pro Hac Vice (Filing fee $ 100, Receipt # ANHDC−2593123.). <br><br> To request a refund, the filer shall complete the Request for Refund Form available on the court's website and submit it to the clerk's office either via email or conventionally in paper.(jwb) (Entered: 01/21/2025) |
| 01/21/2025 | 21 | NOTICE of Attorney Appearance by Henry Klementowicz on behalf of New Hampshire Indonesian Community Support, League of United Latin American Citizens, Make the Road New York Attorney Henry Klementowicz added to party New Hampshire Indonesian Community Support(pty:pla), Attorney Henry Klementowicz added to party League of United Latin American Citizens(pty:pla), Attorney Henry Klementowicz added to party Make the Road New York(pty:pla).(Klementowicz, Henry) (Entered: 01/21/2025) |
| 01/21/2025 | | **ENDORSED ORDER granting 4 Motion for Cody Wofsy to Appear Pro Hac Vice; granting 5 Motion for Grace Choi to Appear Pro Hac Vice; granting 6 Motion for Hannah Steinberg to Appear Pro Hac Vice; granting 7 Motion for Lee Gelernt to Appear Pro Hac Vice; granting 8 Motion for Noor Zafar to Appear Pro Hac Vice; granting 9 Motion for Omar Jadwat to Appear Pro Hac Vice; granting 10 Motion for Spencer Amdur to Appear Pro Hac Vice; granting 12 Motion for Stephen Kang to Appear Pro Hac Vice; granting 13 Motion for Wafa Junaid to Appear Pro Hac Vice; granting 14 Motion for Zachary L. Heiden to Appear Pro Hac Vice; granting 15 Motion for Winifred Kao to Appear Pro Hac Vice; granting 16 Motion for Christopher M. Lapinig to Appear Pro Hac Vice; granting 17 Motion for Kimberly W. Leung to Appear Pro Hac Vice; granting 18 Motion for Norm Eisen to Appear Pro Hac Vice; granting 19 Motion for Tianna Mays to Appear Pro Hac Vice.** <br><br> *Text of Order: Provisionally granted.* So Ordered by Judge Joseph N. Laplante. <br><br> The clerk's office will provide the admitted attorney with instructions on how to obtain access to electronic filing by separate email. The admitted attorney must have an individual upgraded PACER account, not a shared firm account, to electronically file in the District of New Hampshire. After obtaining e−filing access, the admitted attorney must file an appearance to begin receiving electronic notices.(jwb) <br><br> (Entered: 01/21/2025) |
| 01/21/2025 | 22 | Summonses issued electronically as to All Defendants. **NOTICE: Counsel shall print and serve the summonses and all attachments in accordance with Fed. R. Civ. P. 4.** (Attachments: # 1 Notice ECF)(ed) (Entered: 01/21/2025) |
| 01/21/2025 | 23 | NOTICE of Attorney Appearance by Cody Wofsy on behalf of New Hampshire Indonesian Community Support, League of United Latin American Citizens, Make the Road New York Attorney Cody Wofsy added to party New Hampshire Indonesian Community Support(pty:pla), Attorney Cody Wofsy added to party League of United Latin American Citizens(pty:pla), Attorney Cody Wofsy added to party Make the |

| | | |
|---|---|---|
| | | Road New York(pty:pla).(Wofsy, Cody) (Entered: 01/21/2025) |
| 01/21/2025 | 24 | MOTION for Preliminary Injunction filed by New Hampshire Indonesian Community Support, League of United Latin American Citizens, Make the Road New York. **HEARING REQUESTED.**Follow up on Objection on 2/4/2025. The court only follow up date DOES NOT include 3 additional days that may apply per FRCP 6(d) and FRCrP 45(c). (Attachments: # 1 Memorandum of Law, # 2 Exhibit (Affidavit) Declaration of NHICS, # 3 Exhibit (Affidavit) Declaration of LULAC, # 4 Exhibit (Affidavit) Declaration of MRNY, # 5 Exhibit (Affidavit) Declaration of Attorney Wafa Junaid, # 6 Exhibit 1 Junaid Declaration Exhibit 1, # 7 Exhibit 2 Junaid Declaration Exhibit 2, # 8 Exhibit 3 Junaid Declaration Exhibit 3, # 9 Exhibit 4 Junaid Declaration Exhibit 4, # 10 Exhibit 5 Junaid Declaration Exhibit 5, # 11 Exhibit 6 Junaid Declaration Exhibit 6, # 12 Exhibit 7 Junaid Declaration Exhibit 7, # 13 Exhibit 8 Junaid Declaration Exhibit 8, # 14 Exhibit 9 Junaid Declaration Exhibit 9, # 15 Exhibit 10 Junaid Declaration Exhibit 10, # 16 Exhibit 11 Junaid Declaration Exhibit 11, # 17 Exhibit 12 Junaid Declaration Exhibit 12, # 18 Exhibit 13 Junaid Declaration Exhibit 13, # 19 Exhibit 14 Junaid Declaration Exhibit 14, # 20 Exhibit 15 Junaid Declaration Exhibit 15, # 21 Exhibit 16 Junaid Declaration Exhibit 16, # 22 Exhibit 17 Junaid Declaration Exhibit 17, # 23 Exhibit 18 Junaid Declaration Exhibit 18, # 24 Exhibit 19 Junaid Declaration Exhibit 19, # 25 Proposed Order)(Kim, SangYeob) Modified on 1/22/2025 to add descriptions of exhibits as provided by counsel (jwb). (Entered: 01/21/2025) |
| 01/21/2025 | 25 | NOTICE of Attorney Appearance by Noor Zafar on behalf of New Hampshire Indonesian Community Support, League of United Latin American Citizens, Make the Road New York Attorney Noor Zafar added to party New Hampshire Indonesian Community Support(pty:pla), Attorney Noor Zafar added to party League of United Latin American Citizens(pty:pla), Attorney Noor Zafar added to party Make the Road New York(pty:pla).(Zafar, Noor) (Entered: 01/21/2025) |
| 01/21/2025 | 26 | NOTICE of Attorney Appearance by Wafa Junaid on behalf of New Hampshire Indonesian Community Support, League of United Latin American Citizens, Make the Road New York Attorney Wafa Junaid added to party New Hampshire Indonesian Community Support(pty:pla), Attorney Wafa Junaid added to party League of United Latin American Citizens(pty:pla), Attorney Wafa Junaid added to party Make the Road New York(pty:pla).(Junaid, Wafa) Modified on 1/22/2025 to remove the word Withdrawal and add Appearance as filer chose wrong event at filing (jwb). (Entered: 01/21/2025) |
| 01/21/2025 | 27 | NOTICE of Attorney Appearance by Hannah Schoen Steinberg on behalf of New Hampshire Indonesian Community Support, League of United Latin American Citizens, Make the Road New York Attorney Hannah Schoen Steinberg added to party New Hampshire Indonesian Community Support(pty:pla), Attorney Hannah Schoen Steinberg added to party League of United Latin American Citizens(pty:pla), Attorney Hannah Schoen Steinberg added to party Make the Road New York(pty:pla).(Steinberg, Hannah) (Entered: 01/21/2025) |
| 01/21/2025 | 28 | NOTICE of Attorney Appearance by Stephen Kang on behalf of New Hampshire Indonesian Community Support, League of United Latin American Citizens, Make the Road New York Attorney Stephen Kang added to party New Hampshire Indonesian Community Support(pty:pla), Attorney Stephen Kang added to party League of United Latin American Citizens(pty:pla), Attorney Stephen Kang added to party Make the Road New York(pty:pla).(Kang, Stephen) (Entered: 01/21/2025) |
| 01/21/2025 | 29 | NOTICE of Attorney Appearance by Spencer Elijah Wittmann Amdur on behalf of New Hampshire Indonesian Community Support, League of United Latin American Citizens, Make the Road New York Attorney Spencer Elijah Wittmann Amdur added to party New Hampshire Indonesian Community Support(pty:pla), Attorney Spencer Elijah Wittmann Amdur added to party League of United Latin American Citizens(pty:pla), Attorney Spencer Elijah Wittmann Amdur added to party Make the Road New York(pty:pla).(Amdur, Spencer) (Entered: 01/21/2025) |
| 01/21/2025 | 30 | NOTICE of Attorney Appearance by Lee Gelernt on behalf of New Hampshire Indonesian Community Support, League of United Latin American Citizens, Make the Road New York Attorney Lee Gelernt added to party New Hampshire Indonesian Community Support(pty:pla), Attorney Lee Gelernt added to party League of United |

| | | |
|---|---|---|
| | | Latin American Citizens(pty:pla), Attorney Lee Gelernt added to party Make the Road New York(pty:pla).(Gelernt, Lee) (Entered: 01/21/2025) |
| 01/21/2025 | 31 | NOTICE of Attorney Appearance by Omar C. Jadwat on behalf of New Hampshire Indonesian Community Support, League of United Latin American Citizens, Make the Road New York Attorney Omar C. Jadwat added to party New Hampshire Indonesian Community Support(pty:pla), Attorney Omar C. Jadwat added to party League of United Latin American Citizens(pty:pla), Attorney Omar C. Jadwat added to party Make the Road New York(pty:pla).(Jadwat, Omar) (Entered: 01/21/2025) |
| 01/21/2025 | 32 | NOTICE of Attorney Appearance by Grace Choi on behalf of New Hampshire Indonesian Community Support, League of United Latin American Citizens, Make the Road New York Attorney Grace Choi added to party New Hampshire Indonesian Community Support(pty:pla), Attorney Grace Choi added to party League of United Latin American Citizens(pty:pla), Attorney Grace Choi added to party Make the Road New York(pty:pla).(Choi, Grace) (Entered: 01/21/2025) |
| 01/21/2025 | 33 | NOTICE of Attorney Appearance by Wafa Junaid on behalf of New Hampshire Indonesian Community Support, League of United Latin American Citizens, Make the Road New York (Junaid, Wafa) (Entered: 01/21/2025) |
| 01/22/2025 | 34 | Assented to MOTION for ASHLEY M. BURRELL to Appear Pro Hac Vice (Filing fee $ 100, Receipt # ANHDC–2594307.) filed by New Hampshire Indonesian Community Support, League of United Latin American Citizens, Make the Road New York.(Bissonnette, Gilles) (Entered: 01/22/2025) |
| 01/22/2025 | 35 | Assented to MOTION for ELIZABETH CALDWELL to Appear Pro Hac Vice (Filing fee $ 100, Receipt # ANHDC–2594308.) filed by New Hampshire Indonesian Community Support, League of United Latin American Citizens, Make the Road New York.(Bissonnette, Gilles) (Entered: 01/22/2025) |
| 01/22/2025 | 36 | Assented to MOTION for MORENIKE FAJANA to Appear Pro Hac Vice (Filing fee $ 100, Receipt # ANHDC–2594311.) filed by New Hampshire Indonesian Community Support, League of United Latin American Citizens, Make the Road New York.(Bissonnette, Gilles) (Entered: 01/22/2025) |
| 01/22/2025 | 37 | Assented to MOTION for ELLE HUMPHREY to Appear Pro Hac Vice (Filing fee $ 100, Receipt # ANHDC–2594312.) filed by New Hampshire Indonesian Community Support, League of United Latin American Citizens, Make the Road New York.(Bissonnette, Gilles) (Entered: 01/22/2025) |
| 01/22/2025 | 38 | Assented to MOTION for ADRIANA LAFAILLE to Appear Pro Hac Vice (Filing fee $ 100, Receipt # ANHDC–2594313.) filed by New Hampshire Indonesian Community Support, League of United Latin American Citizens, Make the Road New York.(Bissonnette, Gilles) (Entered: 01/22/2025) |
| 01/22/2025 | 39 | NOTICE of Attorney Appearance by Winifred Kao on behalf of New Hampshire Indonesian Community Support, League of United Latin American Citizens, Make the Road New York Attorney Winifred Kao added to party New Hampshire Indonesian Community Support(pty:pla), Attorney Winifred Kao added to party League of United Latin American Citizens(pty:pla), Attorney Winifred Kao added to party Make the Road New York(pty:pla).(Kao, Winifred) (Entered: 01/22/2025) |
| 01/22/2025 | 40 | NOTICE of Attorney Appearance by Kimberly Leung on behalf of New Hampshire Indonesian Community Support Attorney Kimberly Leung added to party New Hampshire Indonesian Community Support(pty:pla).(Leung, Kimberly) (Entered: 01/22/2025) |
| 01/23/2025 | 41 | Assented to MOTION for Entry of Briefing Schedule With Respect to Plaintiffs' Motion for Preliminary Injunction filed by New Hampshire Indonesian Community Support, League of United Latin American Citizens, Make the Road New York.(Bissonnette, Gilles) (Entered: 01/23/2025) |
| 01/23/2025 | | **ENDORSED ORDER granting 34 Motion for ASHLEY M. BURRELL to Appear Pro Hac Vice; granting 35 Motion for ELIZABETH CALDWELL to Appear Pro Hac Vice; granting 36 Motion for MORENIKE FAJANA to Appear Pro Hac Vice; granting 37 Motion for ELLE HUMPHREY to Appear Pro Hac Vice; granting 38 Motion for ADRIANA LAFAILLE to Appear Pro Hac Vice.** |

| | | |
|---|---|---|
| | | *Text of Order: Provisionally granted* |
| | | So Ordered by Judge Joseph N. Laplante. |
| | | The clerk's office will provide the admitted attorney with instructions on how to obtain access to electronic filing by separate email. The admitted attorney must have an individual upgraded PACER account, not a shared firm account, to electronically file in the District of New Hampshire. After obtaining e–filing access, the admitted attorney must file an appearance to begin receiving electronic notices.(jwb) |
| | | (Entered: 01/23/2025) |
| 01/23/2025 | | **ENDORSED ORDER granting 41 Motion for for Entry of Briefing Schedule With Respect to Plaintiffs' Motion for Preliminary Injunction. *Text of Order: Granted.* So Ordered by Judge Joseph N. Laplante.(jwb)** (Entered: 01/23/2025) |
| 01/23/2025 | | NOTICE re: 24 MOTION for Preliminary Injunction. |
| | | Motion Hearing set for 2/10/2025 08:30 AM before Judge Joseph N. Laplante.(jwb) (Entered: 01/23/2025) |
| 01/23/2025 | 42 | NOTICE of Attorney Appearance by Chelsea Eddy on behalf of New Hampshire Indonesian Community Support, League of United Latin American Citizens, Make the Road New York Attorney Chelsea Eddy added to party New Hampshire Indonesian Community Support(pty:pla), Attorney Chelsea Eddy added to party League of United Latin American Citizens(pty:pla), Attorney Chelsea Eddy added to party Make the Road New York(pty:pla).(Eddy, Chelsea) (Entered: 01/23/2025) |
| 01/24/2025 | 43 | NOTICE of Attorney Appearance by Christopher Myron Lapinig on behalf of New Hampshire Indonesian Community Support, League of United Latin American Citizens, Make the Road New York Attorney Christopher Myron Lapinig added to party New Hampshire Indonesian Community Support(pty:pla), Attorney Christopher Myron Lapinig added to party League of United Latin American Citizens(pty:pla), Attorney Christopher Myron Lapinig added to party Make the Road New York(pty:pla).(Lapinig, Christopher) (Entered: 01/24/2025) |
| 01/24/2025 | 44 | NOTICE of Attorney Appearance by Ashley Michelle Burrell on behalf of New Hampshire Indonesian Community Support, League of United Latin American Citizens, Make the Road New York Attorney Ashley Michelle Burrell added to party New Hampshire Indonesian Community Support(pty:pla), Attorney Ashley Michelle Burrell added to party League of United Latin American Citizens(pty:pla), Attorney Ashley Michelle Burrell added to party Make the Road New York(pty:pla).(Burrell, Ashley) (Entered: 01/24/2025) |
| 01/24/2025 | 45 | NOTICE of Attorney Appearance by Morenike Fajana on behalf of New Hampshire Indonesian Community Support, League of United Latin American Citizens, Make the Road New York Attorney Morenike Fajana added to party New Hampshire Indonesian Community Support(pty:pla), Attorney Morenike Fajana added to party League of United Latin American Citizens(pty:pla), Attorney Morenike Fajana added to party Make the Road New York(pty:pla).(Fajana, Morenike) (Entered: 01/24/2025) |
| 01/24/2025 | 46 | NOTICE of Attorney Appearance by Robert Charles Merritt on behalf of Donald J. Trump, US Department of Homeland Security, US Department of Homeland Security, Secretary, US Department of State, US Department of State, Secretary, US Department of Agriculture, US Department of Agriculture, Secretary, Centers for Medicare and Medicaid Services, Centers for Medicare and Medicaid Services, Administrator Attorney Robert Charles Merritt added to party Donald J. Trump(pty:dft), Attorney Robert Charles Merritt added to party US Department of Homeland Security(pty:dft), Attorney Robert Charles Merritt added to party US Department of Homeland Security, Secretary(pty:dft), Attorney Robert Charles Merritt added to party US Department of State(pty:dft), Attorney Robert Charles Merritt added to party US Department of State, Secretary(pty:dft), Attorney Robert Charles Merritt added to party US Department of Agriculture(pty:dft), Attorney Robert Charles Merritt added to party US Department of Agriculture, Secretary(pty:dft), Attorney Robert Charles Merritt added to party Centers for Medicare and Medicaid Services(pty:dft), Attorney Robert Charles Merritt added to party Centers for Medicare |

| | | |
|---|---|---|
| | | and Medicaid Services, Administrator(pty:dft).(Merritt, Robert) (Entered: 01/24/2025) |
| 01/27/2025 | 47 | NOTICE of Attorney Appearance by Yuri Fuchs on behalf of Donald J. Trump, US Department of Homeland Security, US Department of Homeland Security, Secretary, US Department of State, US Department of State, Secretary, US Department of Agriculture, US Department of Agriculture, Secretary, Centers for Medicare and Medicaid Services, Centers for Medicare and Medicaid Services, Administrator Attorney Yuri Fuchs added to party Donald J. Trump(pty:dft), Attorney Yuri Fuchs added to party US Department of Homeland Security(pty:dft), Attorney Yuri Fuchs added to party US Department of Homeland Security, Secretary(pty:dft), Attorney Yuri Fuchs added to party US Department of State(pty:dft), Attorney Yuri Fuchs added to party US Department of State, Secretary(pty:dft), Attorney Yuri Fuchs added to party US Department of Agriculture(pty:dft), Attorney Yuri Fuchs added to party US Department of Agriculture, Secretary(pty:dft), Attorney Yuri Fuchs added to party Centers for Medicare and Medicaid Services(pty:dft), Attorney Yuri Fuchs added to party Centers for Medicare and Medicaid Services, Administrator(pty:dft).(Fuchs, Yuri) (Entered: 01/27/2025) |
| 01/27/2025 | 48 | NOTICE of Attorney Appearance by Brad P. Rosenberg on behalf of Donald J. Trump, US Department of Homeland Security, US Department of Homeland Security, Secretary, US Department of State, US Department of State, Secretary, US Department of Agriculture, US Department of Agriculture, Secretary, Centers for Medicare and Medicaid Services, Centers for Medicare and Medicaid Services, Administrator Attorney Brad P. Rosenberg added to party Donald J. Trump(pty:dft), Attorney Brad P. Rosenberg added to party US Department of Homeland Security(pty:dft), Attorney Brad P. Rosenberg added to party US Department of Homeland Security, Secretary(pty:dft), Attorney Brad P. Rosenberg added to party US Department of State(pty:dft), Attorney Brad P. Rosenberg added to party US Department of State, Secretary(pty:dft), Attorney Brad P. Rosenberg added to party US Department of Agriculture(pty:dft), Attorney Brad P. Rosenberg added to party US Department of Agriculture, Secretary(pty:dft), Attorney Brad P. Rosenberg added to party Centers for Medicare and Medicaid Services(pty:dft), Attorney Brad P. Rosenberg added to party Centers for Medicare and Medicaid Services, Administrator(pty:dft).(Rosenberg, Brad) (Entered: 01/27/2025) |
| 01/27/2025 | 49 | NOTICE of Attorney Appearance by Zachary L. Heiden on behalf of New Hampshire Indonesian Community Support, League of United Latin American Citizens, Make the Road New York Attorney Zachary L. Heiden added to party New Hampshire Indonesian Community Support(pty:pla), Attorney Zachary L. Heiden added to party League of United Latin American Citizens(pty:pla), Attorney Zachary L. Heiden added to party Make the Road New York(pty:pla).(Heiden, Zachary) (Entered: 01/27/2025) |
| 01/27/2025 | 50 | NOTICE of Attorney Appearance by Elizabeth Grace Caldwell on behalf of New Hampshire Indonesian Community Support, League of United Latin American Citizens, Make the Road New York Attorney Elizabeth Grace Caldwell added to party New Hampshire Indonesian Community Support(pty:pla), Attorney Elizabeth Grace Caldwell added to party League of United Latin American Citizens(pty:pla), Attorney Elizabeth Grace Caldwell added to party Make the Road New York(pty:pla).(Caldwell, Elizabeth) (Entered: 01/27/2025) |
| 01/27/2025 | 51 | NOTICE of Attorney Appearance by Morgan Elle Humphrey on behalf of New Hampshire Indonesian Community Support, League of United Latin American Citizens, Make the Road New York Attorney Morgan Elle Humphrey added to party New Hampshire Indonesian Community Support(pty:pla), Attorney Morgan Elle Humphrey added to party League of United Latin American Citizens(pty:pla), Attorney Morgan Elle Humphrey added to party Make the Road New York(pty:pla).(Humphrey, Morgan) (Entered: 01/27/2025) |
| 01/28/2025 | 52 | NOTICE of Attorney Appearance by Carol Garvan on behalf of New Hampshire Indonesian Community Support, League of United Latin American Citizens, Make the Road New York Attorney Carol Garvan added to party New Hampshire Indonesian Community Support(pty:pla), Attorney Carol Garvan added to party League of United Latin American Citizens(pty:pla), Attorney Carol Garvan added to party Make the Road New York(pty:pla).(Garvan, Carol) (Entered: 01/28/2025) |

| | | |
|---|---|---|
| 01/28/2025 | 53 | NOTICE of Attorney Appearance by Henry Clay Quillen on behalf of Local Governments and Local Government Officials Attorney Henry Clay Quillen added to party Local Governments and Local Government Officials(pty:am).(Quillen, Henry) (Entered: 01/28/2025) |
| 01/28/2025 | 54 | Assented to MOTION for Leave to File Brief of Amici Curiae Local Governments and Local Government Officials in Support of Plaintiff's Motion for Preliminary Injunction filed by Local Governments and Local Government Officials. (Attachments: # 1 Exhibit Proposed Brief of Amici Curiae Local Governments and Local Government Officials in Support of Plaintiffs' Motion for Preliminary Injunction)(Quillen, Henry) (Entered: 01/28/2025) |
| 01/29/2025 | | **ENDORSED ORDER granting 54 Motion for Leave to File Brief of Amici Curiae Local Governments and Local Government Officials in Support of Plaintiff's Motion for Preliminary Injunction.** *Text of Order: Granted. Within 48 hours counsel shall electronically refile the pleading attached to the Motion for Leave to File using the appropriate event in CMECF.* **So Ordered by Judge Joseph N. Laplante.(jwb)** (Entered: 01/29/2025) |
| 01/29/2025 | 55 | Assented to MOTION to Exceed Page Limits filed by Donald J. Trump, US Department of Homeland Security, US Department of Homeland Security, Secretary, US Department of State, US Department of State, Secretary, US Department of Agriculture, US Department of Agriculture, Secretary, Centers for Medicare and Medicaid Services, Centers for Medicare and Medicaid Services, Administrator.(Rosenberg, Brad) (Entered: 01/29/2025) |
| 01/29/2025 | 56 | BRIEF OF AMICI CURIAE– MEMORANDUM in Support re 24 MOTION for Preliminary Injunction filed by Local Governments and Local Government Officials. (Quillen, Henry) Modified on 1/29/2025 to add: BRIEF OF AMICI CURIAE(jwb). (Entered: 01/29/2025) |
| 01/29/2025 | | Corrective Entry to 56 Memorandum in Support of Motion. Entry corrected by Adding BRIEF OF AMICI CURIAE (jwb) (Entered: 01/29/2025) |
| 01/29/2025 | | **ENDORSED ORDER granting 55 Motion to Exceed Page Limits.** *Text of Order: Granted.* **So Ordered by Judge Joseph N. Laplante.(jwb)** (Entered: 01/29/2025) |
| 01/31/2025 | 57 | Assented to MOTION for Leave to File Brief Amicus Curiae filed by America's Future, Gun Owners of America, Inc., Gun Owners Foundation, Citizens United, U.S. Constutional Rights Legal Defense Fund, Leadership Institute, Conservative Legal Defense and Education Fund. Attorney Phillip Evan Marbury added to party Gun Owners of America, Inc(pty:am), Attorney Phillip Evan Marbury added to party America's Future(pty:am), Attorney Phillip Evan Marbury added to party Gun Owners Foundation(pty:am), Attorney Phillip Evan Marbury added to party Citizens United(pty:am), Attorney Phillip Evan Marbury added to party U.S. Constutional Rights Legal Defense Fund(pty:am), Attorney Phillip Evan Marbury added to party Leadership Institute(pty:am), Attorney Phillip Evan Marbury added to party Conservative Legal Defense and Education Fund(pty:am). (Attachments: # 1 Exhibit Amicus Curiae Brief to be filed)(Marbury, Phillip) (Entered: 01/31/2025) |
| 01/31/2025 | 58 | OBJECTION to 24 MOTION for Preliminary Injunction filed by Donald J. Trump, US Department of Homeland Security, US Department of Homeland Security, Secretary, US Department of State, US Department of State, Secretary, US Department of Agriculture, US Department of Agriculture, Secretary, Centers for Medicare and Medicaid Services, Centers for Medicare and Medicaid Services, Administrator. Follow up on Reply on 2/7/2025. The court only follow up date DOES NOT include 3 additional days that may apply per FRCP 6(d) and FRCrP 45(c). (Attachments: # 1 Memorandum of Law in Objection to Plaintiffs' Motion for Preliminary Injunction)(Rosenberg, Brad) (Entered: 01/31/2025) |
| 02/03/2025 | 59 | Assented to MOTION to File Amicus Brief filed by State of Iowa and 17 other states. Attorney Richard J. Lehmann added to party State of Iowa and 17 other states(pty:am). (Attachments: # 1 Memorandum of Law)(Lehmann, Richard) (Additional attachment(s) added on 2/3/2025: # 2 Corrected Back Page to Motion, # 3 Corrected Back Page To Brief) (jwb). (Entered: 02/03/2025) |

| | | |
|---|---|---|
| 02/03/2025 | | **ENDORSED ORDER granting 57 Assented to MOTION for Leave to File Brief Amicus Curiae filed by America's Future, Gun Owners of America, Inc., Gun Owners Foundation, Citizens United, U.S. Constutional Rights Legal Defense Fund, Leadership Institute, Conservative Legal Defense and Education Fund.**<br><br>*Text of Order: Granted. Within 48 hours counsel shall electronically refile the pleading attached to the Motion for Leave to File using the appropriate event in CMECF.* So Ordered by Judge Joseph N. Laplante.(jwb)<br><br>(Entered: 02/03/2025) |
| 02/03/2025 | | **ENDORSED ORDER granting 59 Assented to MOTION to File Amicus Brief filed by State of Iowa and 17 other states.**<br><br>*Text of Order: Granted. Within 48 hours counsel shall electronically refile the pleading attached to the Motion for Leave to File using the appropriate event in CMECF.* So Ordered by Judge Joseph N. Laplante.(jwb)<br><br>(Entered: 02/03/2025) |
| 02/04/2025 | 60 | BRIEF AMICI CURIAE IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION by Gun Owners of America, Inc., America's Future, Gun Owners Foundation, Citizens United, U.S. Constutional Rights Legal Defense Fund, Leadership Institute, Conservative Legal Defense and Education Fund(Marbury, Phillip) Modified on 2/4/2025 to add: Brief Amici text (jwb). (Entered: 02/04/2025) |
| 02/04/2025 | | Corrective Entry to 60 Brief. Entry corrected by Adding BRIEF AMICI CURIAE IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION to docket text. (jwb) (Entered: 02/04/2025) |
| 02/04/2025 | 61 | Assented to MOTION for Katherine Courtney to Appear Pro Hac Vice (Filing fee $ 100, Receipt # ANHDC–2598757.) filed by Local Governments and Local Government Officials. (Attachments: # 1 Exhibit 1 – Declaration of Katherine Courtney)(Quillen, Henry) (Entered: 02/04/2025) |
| 02/04/2025 | 62 | BRIEF/MEMORANDUM *of amicus curiae states filed* by Iowa, State of, Alabama, State of, Arkansas, State of, Florida, State of, Idaho, State of, Indiana, State of, Kansas, State of, Louisiana, State of, Mississippi, State of, Missouri, State of, Montana, State of, Nebraska, State of, North Dakota, State of, Oklahoma, State of, South Carolina, State of, South Dakota, State of, Utah, State of, Wyoming, State of(Lehmann, Richard) (Entered: 02/04/2025) |
| 02/04/2025 | 63 | NOTICE of Attorney Appearance by Jacob Rhodes on behalf of Immigration Reform Law Insitute Attorney Jacob Rhodes added to party Immigration Reform Law Insitute(pty:pla).(Rhodes, Jacob) (Entered: 02/04/2025) |
| 02/04/2025 | 64 | REPLY to Objection to Motion re 24 MOTION for Preliminary Injunction filed by New Hampshire Indonesian Community Support, League of United Latin American Citizens, Make the Road New York. Surreply due by 2/10/2025. (Attachments: # 1 Exhibit Supplemental Declaration of Juan Proao)(Wofsy, Cody) (Entered: 02/04/2025) |
| 02/04/2025 | 65 | Partially Assented to MOTION to File Amicus Brief filed by Immigration Reform Law Insitute.Follow up on Objection on 2/18/2025. The court only follow up date DOES NOT include 3 additional days that may apply per FRCP 6(d) and FRCrP 45(c). (Attachments: # 1 Memorandum of Law)(Rhodes, Jacob) (Entered: 02/04/2025) |
| 02/04/2025 | 66 | Assented to MOTION for Gabriel R. Canaan to Appear Pro Hac Vice (Filing fee $ 100, Receipt # ANHDC–2598944.) filed by Immigration Reform Law Insitute.(Rhodes, Jacob) (Entered: 02/04/2025) |
| 02/04/2025 | 67 | Assented to MOTION for Christopher J. Hajec to Appear Pro Hac Vice (Filing fee $ 100, Receipt # ANHDC–2598945.) filed by Immigration Reform Law Insitute.(Rhodes, Jacob) (Entered: 02/04/2025) |
| 02/04/2025 | | **ENDORSED ORDER granting 61 Motion for Katherine Courtney to Appear Pro Hac Vice. *Text of Order: Provisionally granted.* So Ordered by Judge Joseph N. Laplante.** |

| | | |
|---|---|---|
| | | The clerk's office will provide the admitted attorney with instructions on how to obtain access to electronic filing by separate email. The admitted attorney must have an individual upgraded PACER account, not a shared firm account, to electronically file in the District of New Hampshire. After obtaining e–filing access, the admitted attorney must file an appearance to begin receiving electronic notices.(jwb)<br><br>(Entered: 02/05/2025) |
| 02/05/2025 | | **ENDORSED ORDER granting 65 Partially Assented to Motion to File Amicus Brief.**<br><br>*Text of Order: Granted. Within 12 hours counsel shall electronically refile the pleading attached to the Motion for Leave to File using the appropriate event in CMECF. So Ordered by Judge Joseph N. Laplante.(jwb)*<br><br>(Entered: 02/05/2025) |
| 02/05/2025 | 68 | NOTICE of Attorney Appearance by Adriana Lafaille on behalf of New Hampshire Indonesian Community Support, League of United Latin American Citizens, Make the Road New York Attorney Adriana Lafaille added to party New Hampshire Indonesian Community Support(pty:pla), Attorney Adriana Lafaille added to party League of United Latin American Citizens(pty:pla), Attorney Adriana Lafaille added to party Make the Road New York(pty:pla).(Lafaille, Adriana) (Entered: 02/05/2025) |
| 02/05/2025 | 69 | BRIEF/MEMORANDUM *of Amicus Curiae i/s/o Defendants and in Opposition to Injunctive Relief* by Immigration Reform Law Insitute(Rhodes, Jacob) (Entered: 02/05/2025) |
| 02/06/2025 | 70 | NOTICE of Supplemental Authority – MD Case PI Order & WA Case PI Order by New Hampshire Indonesian Community Support, League of United Latin American Citizens, Make the Road New York. (Attachments: # 1 Exhibit A_Maryland Case PI Order, # 2 Exhibit B_Washington Case PI Order)(Kim, SangYeob) (Entered: 02/06/2025) |
| 02/07/2025 | | **ENDORSED ORDER granting 66 Motion for Gabriel R. Canaan to Appear Pro Hac Vice; granting 67 Motion for Christopher J. Hajec to Appear Pro Hac Vice. *Text of Order: Provisionally granted.* So Ordered by Judge Joseph N. Laplante.**<br><br>The clerk's office will provide the admitted attorney with instructions on how to obtain access to electronic filing by separate email. The admitted attorney must have an individual upgraded PACER account, not a shared firm account, to electronically file in the District of New Hampshire. After obtaining e–filing access, the admitted attorney must file an appearance to begin receiving electronic notices.(jwb)<br><br>(Entered: 02/07/2025) |
| 02/07/2025 | 71 | NOTICE of Attorney Appearance by Katherine Courtney on behalf of Local Governments and Local Government Officials Attorney Katherine Courtney added to party Local Governments and Local Government Officials(pty:am).(Courtney, Katherine) (Entered: 02/07/2025) |
| 02/07/2025 | | ***ENDORSED ORDER. Text of Order: Plaintiffs moved for a nationwide preliminary injunction to bar defendants from enforcing the Executive Order, "Protecting the Meaning and Value of American Citizenship," 90 FR 8449, that prevents federal departments and agencies from issuing and accepting documents that recognize United States citizenship for persons born in the United States in two circumstances related to their parents' immigration status. Courts in the Districts of Washington and Maryland already have issued nationwide preliminary injunctions for that purpose. State v. Trump, No. C25–0127–JCC, 2025 WL 415165, at \*7 (W.D. Wash. Feb. 6, 2025); CASA, Inc. v. Trump, No. CV DLB–25–201, 2025 WL 408636, at \*17 (D. Md. Feb. 2, 2025). Assuming that defendants are now enjoined from enforcing the challenged executive order in New Hampshire by the existing nationwide preliminary injunctions, a question arises as to the implications of these injunctions on the merits of plaintiffs' motion, including but not limited to the showing of irreparable harm required for issuance of a preliminary injunction. With apologies to counsel for the unavoidable timing and burdens imposed by this order,*** |

| | | |
|---|---|---|
| | | ***Plaintiffs may file a memorandum addressing this issue (10 page maximum, excluding exhibits) by 5:00 p.m. on Saturday, February 8. Defendants may make a responsive filing (same page limitations) until 5:00 p.m. on Sunday, February 9. No amicus filings are ordered or requested on this issue.*** So Ordered by Judge Joseph N. Laplante.(jwb) (Entered: 02/07/2025) |
| 02/07/2025 | 72 | Assented to MOTION for Defendants Counsel to Present Argument Remotely in the Event of Travel Disruption filed by Donald J. Trump, US Department of Homeland Security, US Department of Homeland Security, Secretary, US Department of State, US Department of State, Secretary, US Department of Agriculture, US Department of Agriculture, Secretary, Centers for Medicare and Medicaid Services, Centers for Medicare and Medicaid Services, Administrator.(Fuchs, Yuri) (Entered: 02/07/2025) |
| 02/07/2025 | | **ENDORSED ORDER granting 72 Motion for Defendants Counsel to Present Argument Remotely in the Event of Travel Disruption.** *Text of Order: The motion is granted conditionally. Counsel referenced in the motion may appear remotely should weather−related travel disruptions arise. Documentary evidence of such disruptions shall be provided to the court should counsel elect to appear remotely.* So Ordered by Judge Joseph N. Laplante.(jwb) (Entered: 02/07/2025) |
| 02/07/2025 | 73 | NOTICE of Attorney Appearance by Drew C. Ensign on behalf of Donald J. Trump, US Department of Homeland Security, US Department of Homeland Security, Secretary, US Department of State, US Department of State, Secretary, US Department of Agriculture, US Department of Agriculture, Secretary, Centers for Medicare and Medicaid Services, Centers for Medicare and Medicaid Services, Administrator Attorney Drew C. Ensign added to party Donald J. Trump(pty:dft), Attorney Drew C. Ensign added to party US Department of Homeland Security(pty:dft), Attorney Drew C. Ensign added to party US Department of Homeland Security, Secretary(pty:dft), Attorney Drew C. Ensign added to party US Department of State(pty:dft), Attorney Drew C. Ensign added to party US Department of State, Secretary(pty:dft), Attorney Drew C. Ensign added to party US Department of Agriculture(pty:dft), Attorney Drew C. Ensign added to party US Department of Agriculture, Secretary(pty:dft), Attorney Drew C. Ensign added to party Centers for Medicare and Medicaid Services(pty:dft), Attorney Drew C. Ensign added to party Centers for Medicare and Medicaid Services, Administrator(pty:dft).(Ensign, Drew) (Entered: 02/07/2025) |
| 02/08/2025 | 74 | BRIEF/MEMORANDUM re Order,,,,,, by New Hampshire Indonesian Community Support, League of United Latin American Citizens, Make the Road New York (Attachments: # 1 Exhibit Supplemental Declaration of Sandra Pontoh)(Wofsy, Cody) (Entered: 02/08/2025) |
| 02/09/2025 | 75 | AFFIDAVIT of Service of Complaint, Summonses, and ECF Notice as to All Defendants filed by League of United Latin American Citizens, New Hampshire Indonesian Community Support, Make the Road New York. Served/Mailed on 2/3/2025. Answer Follow Up on 2/24/2025. The court only follow up date DOES NOT include 3 additional days that may apply per FRCP 6(d) and FRCrP 45(c). (Attachments: # 1 Exhibit A_Proof of Service − President of the USA, # 2 Exhibit B_Proof of Service − DHS, # 3 Exhibit C_Proof of Service – Sec. of DHS, # 4 Exhibit D_Proof of Service − DOS, # 5 Exhibit E_Proof of Service – Sec. of DHS, # 6 Exhibit F_Proof of Service − DOA, # 7 Exhibit G_Proof of Service – Sec. of DOA, # 8 Exhibit H_Proof of Service − CMMS, # 9 Exhibit I_Proof of Service – Adm, of CMMS, # 10 Exhibit J_Proof of Service − United States – USAO−NH(Kim, SangYeob) (Entered: 02/09/2025) |
| 02/09/2025 | 76 | RESPONSE re Order,,,,,, 74 Brief filed by Donald J. Trump, US Department of Homeland Security, US Department of Homeland Security, Secretary, US Department of State, US Department of State, Secretary, US Department of Agriculture, US Department of Agriculture, Secretary, Centers for Medicare and Medicaid Services, Centers for Medicare and Medicaid Services, Administrator. (Fuchs, Yuri) (Entered: 02/09/2025) |

| 02/10/2025 | | Minute Entry for proceedings held before Judge Joseph N. Laplante. MOTION HEARING held on 2/10/2025 re 24 MOTION for Preliminary Injunction. Motion granted, order to issue. (Court Reporter: Liza Dubois) (Pltfs Atty: Cody Wofsy, Gilles R. Bissonnette, SangYeob Kim, Omar C. Jadwat, Ashley Michelle Burrell, Elizabeth Grace Caldwell, Henry Klementowicz, Kimberly Leung) (Defts Atty: Drew C. Ensign, Brad P. Rosenberg)(Total Hearing Time: 1 hour) (jwb) (Entered: 02/10/2025) |
|---|---|---|
| 02/10/2025 | 77 | **ORDER granting 24 Motion for Preliminary Injunction. So Ordered by Judge Joseph N. Laplante.(jwb) (Entered: 02/10/2025)** |
| 02/11/2025 | 78 | Assented to MOTION for Mide Odunsi to Appear Pro Hac Vice (Filing fee $ 100, Receipt # ANHDC−2601221.) filed by New Hampshire Indonesian Community Support, League of United Latin American Citizens, Make the Road New York. (Attachments: # 1 Exhibit (Affidavit) Affidavit of Attorney Mide Odunsi)(Kim, SangYeob) (Entered: 02/11/2025) |
| 02/11/2025 | 79 | **PRELIMINARY INJUNCTION ORDER. So Ordered by Judge Joseph N. Laplante.(jwb) (Entered: 02/11/2025)** |
| 02/12/2025 | | **ENDORSED ORDER granting 78 Motion for Mide Odunsi to Appear Pro Hac Vice. *Text of Order: Provisionally granted.* So Ordered by Judge Joseph N. Laplante.**<br><br>The clerk's office will provide the admitted attorney with instructions on how to obtain access to electronic filing by separate email. The admitted attorney must have an individual upgraded PACER account, not a shared firm account, to electronically file in the District of New Hampshire. After obtaining e−filing access, the admitted attorney must file an appearance to begin receiving electronic notices.(jwb)<br><br>(Entered: 02/12/2025) |
| 02/13/2025 | 80 | TRANSCRIPT of Proceedings for MOTION FOR PRELIMINARY INJUNCTION held on February 10, 2025. Court Reporter: Liza Dubois, Telephone # 603−225−1442. Transcript is available for public inspection, but may not be copied or otherwise reproduced, at the Clerk's Office for a period of 90 days. Additionally, only attorneys of record and pro se parties with an ECF login and password who purchase a transcript from the court reporter will have access to the transcript through PACER during this 90−day period. If you would like to order a copy, please contact the court reporter at the above listed phone number.<br><br>**NOTICE: Any party who requests an original transcript has 21 days from service of this notice to determine whether it is necessary to redact any personal identifiers and, if so, to electronically file a Redaction Request.**<br><br>Redaction Request Follow Up 3/6/2025. Redacted Transcript Follow Up 3/17/2025. Release of Transcript Restriction set for 5/14/2025.(jwb) (Entered: 02/13/2025) |
| 02/18/2025 | 81 | MOTION to Clarify 79 Order, 77 Order on Motion for Preliminary Injunction filed by Donald J. Trump, US Department of Homeland Security, US Department of Homeland Security, Secretary, US Department of State, US Department of State, Secretary, US Department of Agriculture, US Department of Agriculture, Secretary, Centers for Medicare and Medicaid Services, Centers for Medicare and Medicaid Services, Administrator.Follow up on Objection on 3/4/2025. The court only follow up date DOES NOT include 3 additional days that may apply per FRCP 6(d) and FRCrP 45(c). (Attachments: # 1 Memorandum of Law)(Merritt, Robert) (Entered: 02/18/2025) |
| 02/19/2025 | 82 | RESPONSE to Motion re 81 MOTION to Clarify 79 Order, 77 Order on Motion for Preliminary Injunction filed by New Hampshire Indonesian Community Support, League of United Latin American Citizens, Make the Road New York. (Wofsy, Cody) (Entered: 02/19/2025) |
| 02/28/2025 | 83 | NOTICE of Attorney Appearance by Ayomide Odunsi on behalf of New Hampshire Indonesian Community Support, League of United Latin American Citizens, Make the Road New York Attorney Ayomide Odunsi added to party New Hampshire Indonesian Community Support(pty:pla), Attorney Ayomide Odunsi added to party League of United Latin American Citizens(pty:pla), Attorney Ayomide Odunsi added to party Make the Road New York(pty:pla).(Odunsi, Ayomide) (Entered: 02/28/2025) |

| 02/28/2025 | | NOTICE of VIDEO Conference. In Chambers Conference VIA VIDEO CONFERENCE set for 3/5/2025 03:00 PM before Judge Joseph N. Laplante.(jwb) (Entered: 02/28/2025) |
|---|---|---|
| 03/04/2025 | 84 | NOTICE of Attorney Appearance by Tianna Jade Mays on behalf of League of United Latin American Citizens Attorney Tianna Jade Mays added to party League of United Latin American Citizens(pty:pla).(Mays, Tianna) (Entered: 03/04/2025) |
| 03/04/2025 | 85 | NOTICE of Attorney Appearance by Tianna Jade Mays on behalf of League of United Latin American Citizens *Norman Eisen* (Mays, Tianna) (Entered: 03/04/2025) |
| 03/05/2025 | | NOTICE of ECF Filing Error re: 85 NOTICE of Attorney Appearance by Tianna Jade Mays on behalf of League of United Latin American Citizens Norman Eisen. <br><br> The login and password used must equal the /s/ name on the pleading. <br><br> Attorney Norman Eisen must use their own login and password to file the appearance. Attorney is not added to the case until a correct appearance is filed. (jwb) (Entered: 03/05/2025) |
| 03/05/2025 | 86 | NOTICE of Corrected Appendix by Local Governments and Local Government Officials. (Attachments: # 1 Exhibit A – Appendix A)(Quillen, Henry) (Entered: 03/05/2025) |
| 03/05/2025 | 87 | NOTICE of Attorney Appearance by Norman Larry Eisen on behalf of League of United Latin American Citizens Attorney Norman Larry Eisen added to party League of United Latin American Citizens(pty:pla).(Eisen, Norman) (Entered: 03/05/2025) |
| 03/05/2025 | | Minute Entry for proceedings held before Judge Joseph N. Laplante. IN CHAMBERS CONFERENCE held on 3/5/2025. (Pltfs Atty: Cody Wofsy, SangYeob Kim, Ashley Michelle Burrell, Elizabeth Grace Caldwell, Henry Klementowicz, Adriana Lafaille, Carol Garvan, Christopher Myron Lapinig, Grace Choi, Hannah Schoen Steinberg, Morenike Fajana, Morgan Elle Humphrey, Noor Zafar, Spencer Elijah Wittmann Amdur, Stephen Kang, Wafa Junaid) (Defts Atty: Brad P. Rosenberg, Yuri Fuchs)(Total Hearing Time: 40 minutes) (jwb) (Entered: 03/05/2025) |
| 03/10/2025 | | **ENDORSED ORDER RE 86 Notice of Corrected Appendix. *Text of Order: Reviewed.* So Ordered by Judge Joseph N. Laplante.(jwb)** (Entered: 03/10/2025) |
| 03/11/2025 | 88 | NOTICE of Supplemental Authority – First Circuit Opinion by New Hampshire Indonesian Community Support, League of United Latin American Citizens, Make the Road New York. (Attachments: # 1 Exhibit CA1 Opinion)(Kim, SangYeob) (Entered: 03/11/2025) |
| 03/11/2025 | | NOTICE re: 81 MOTION to Clarify 79 Order, 77 Order on Motion for Preliminary Injunction. Motion Hearing set VIA VIDEO CONFERENCE for 3/14/2025 10:00 AM before Judge Joseph N. Laplante.(jwb) (Entered: 03/11/2025) |
| 03/12/2025 | 89 | AFFIDAVIT of Service of Complaint, Summonses, and ECF Notice as to All Defendants filed by League of United Latin American Citizens, New Hampshire Indonesian Community Support, Make the Road New York. Served/Mailed on 3/25/2025. Answer Follow Up on 4/15/2025. The court only follow up date DOES NOT include 3 additional days that may apply per FRCP 6(d) and FRCrP 45(c). (Attachments: # 1 Exhibit K_Service – AG)(Kim, SangYeob) (Entered: 03/12/2025) |
| 03/13/2025 | 90 | NOTICE of Relevant Proceedings (Defendants' Stay Motion with the United States Supreme Court) by New Hampshire Indonesian Community Support, League of United Latin American Citizens, Make the Road New York. (Attachments: # 1 Exhibit Defendants' Stay Motion with the United States Supreme Court)(Kim, SangYeob) (Entered: 03/13/2025) |
| 03/14/2025 | | **ENDORSED ORDER RE 90 Notice of Relevant Proceedings (Defendants' Stay Motion with the United States Supreme Court), 88 Notice of Supplemental Authority – First Circuit Opinion. *Text of Order: Reviewed.* So Ordered by Judge Joseph N. Laplante.(jwb)** (Entered: 03/14/2025) |
| 03/14/2025 | | Minute Entry for proceedings held before Judge Joseph N. Laplante. MOTION HEARING held on 3/14/2025 re 81 MOTION to Clarify 79 Order, 77 Order on |

| | | |
|---|---|---|
| | | Motion for Preliminary Injunction. (Court Reporter: Brenda Hancock) (Pltfs Atty: Cody Wofsy, SangYeob Kim, Elizabeth Grace Caldwell, Gilles Bissonnette, Christopher Myron Lapinig, Grace Choi, Hannah Schoen Steinberg, Kimberly Leung, Wafa Junaid, Omar C. Jadwat, Winifred Kao, Zachary L. Heiden, Tianna Jade Mays) (Defts Atty: Yuri Fuchs, Brad Rosenberg)(Amicus: Henry Clay Quillen, Katherine Courtney)(Total Hearing Time: 30 minutes) (jwb) (Entered: 03/14/2025) |
| 03/14/2025 | | **ENDORSED ORDER granting 81 Motion to Clarify. *Text of Order: Granted. Order clarified as set forth on the record at the hearing.* So Ordered by Judge Joseph N. Laplante.(jwb)** (Entered: 03/14/2025) |
| 03/14/2025 | 91 | TRANSCRIPT of Proceedings for MOTION HEARING HELD VIA VIDEOCONFERENCE on March 14, 2025. Court Reporter: Brenda Hancock, Telephone # 603–225–1454.<br><br>**NOTICE: Any party who requests an original transcript has 21 days from service of this notice to determine whether it is necessary to redact any personal identifiers and, if so, to electronically file a Redaction Request.**<br><br>Redaction Request Follow Up 4/4/2025. Redacted Transcript Follow Up 4/14/2025.(jwb) (Entered: 03/17/2025) |
| 03/19/2025 | 92 | Assented to MOTION to Extend Time to Answer filed by Donald J. Trump, US Department of Homeland Security, US Department of Homeland Security, Secretary, US Department of State, US Department of State, Secretary, US Department of Agriculture, US Department of Agriculture, Secretary, Centers for Medicare and Medicaid Services, Centers for Medicare and Medicaid Services, Administrator. (Attachments: # 1 Proposed Order)(Fuchs, Yuri) (Entered: 03/19/2025) |
| 03/20/2025 | 93 | **ENDORSED ORDER granting 92 Motion to Extend Time to Answer. *Text of Order: Granted. Motion to Extend Time to Answer is granted. For the reasons stated in the motion, the court finds good cause to extend the deadline for issuing the scheduling order pursuant to Fed. R. Civ. P. 16(b).* So Ordered by Judge Joseph N. Laplante.(jwb)** (Entered: 03/20/2025) |
| 04/10/2025 | 94 | NOTICE OF INTERLOCUTORY APPEAL as to 77 Order on Motion for Preliminary Injunction, 79 Order by Centers for Medicare and Medicaid Services, Centers for Medicare and Medicaid Services, Administrator, Donald J. Trump, US Department of Agriculture, US Department of Agriculture, Secretary, US Department of Homeland Security, US Department of Homeland Security, Secretary, US Department of State, US Department of State, Secretary. (No fee paid, USA or IFP.) [NOTICE TO COUNSEL: A Transcript Report/Order Form, which can be downloaded from the Forms & Notices section of the First Circuit website at www.ca1.uscourts.gov, MUST be completed and submitted to the U.S. Court of Appeals for the First Circuit.] (Fuchs, Yuri) (Entered: 04/10/2025) |
| 04/10/2025 | 95 | Appeal Cover Sheet as to 94 Notice of Interlocutory Appeal, filed by US Department of Agriculture, Secretary, Centers for Medicare and Medicaid Services, US Department of Homeland Security, US Department of Agriculture, Centers for Medicare and Medicaid Services, Administrator, US Department of State, US Department of Homeland Security, Secretary, Donald J. Trump, US Department of State, Secretary. (jwb) (Entered: 04/10/2025) |
| 04/10/2025 | 96 | Clerk's Certificate transmitting Record on Appeal to US Court of Appeals, documents numbered 77, 79, 94–96, re 94 Notice of Interlocutory Appeal. A copy of the Notice of Appeal electronically mailed to all parties this date.(jwb) (Entered: 04/10/2025) |
| 04/10/2025 | | Appellate Case Number: First Circuit Court of Appeals #25–1348 re 94 Notice of Interlocutory Appeal, filed by US Department of Agriculture, Secretary, Centers for Medicare and Medicaid Services, US Department of Homeland Security, US Department of Agriculture, Centers for Medicare and Medicaid Services, Administrator, US Department of State, US Department of Homeland Security, Secretary, Donald J. Trump, US Department of State, Secretary.(jwb) (Entered: 04/10/2025) |
| 04/22/2025 | 97 | Assented to MOTION to Extend Time to Answer filed by Centers for Medicare and Medicaid Services, Centers for Medicare and Medicaid Services, Administrator, |

| | | |
|---|---|---|
| | | Donald J. Trump, US Department of Agriculture, US Department of Agriculture, Secretary, US Department of Homeland Security, US Department of Homeland Security, Secretary, US Department of State, US Department of State, Secretary. (Attachments: # 1 Proposed Order)(Fuchs, Yuri) (Entered: 04/22/2025) |
| 04/23/2025 | | **ENDORSED ORDER granting 97 Motion to Extend Time to Answer.** *Text of Order: Motion to Extend Time to Answer is granted. For the reasons stated in the motion, the court finds good cause to extend the deadline for issuing the scheduling order pursuant to Fed. R. Civ. P. 16(b).* **So Ordered by Judge Joseph N. Laplante. (jwb)** (Entered: 04/23/2025) |

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**

| | |
|---|---|
| NEW HAMPSHIRE INDONESIAN COMMUNITY SUPPORT; LEAGUE OF UNITED LATIN AMERICAN CITIZENS; and MAKE THE ROAD NEW YORK, | Case No. 1:25-cv-38 |
| *Plaintiffs*, | |
| v. | |
| DONALD J. TRUMP, President of the United States, in his official capacity; U.S. DEPARTMENT OF HOMELAND SECURITY; SECRETARY OF HOMELAND SECURITY, in their official capacity; U.S. DEPARTMENT OF STATE; SECRETARY OF STATE, in their official capacity; U.S. DEPARTMENT OF AGRICULTURE; SECRETARY OF AGRICULTURE, in their official capacity; CENTERS FOR MEDICARE AND MEDICAID SERVICES; ADMINISTRATOR OF THE CENTERS FOR MEDICARE AND MEDICAID SERVICES, in their official capacity, | |
| *Defendants*. | |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

1.     Birthright citizenship embodies America's most fundamental promise: that all children born on our soil begin life as full and equal members of our national community, regardless of their parents' origins, status, or circumstances.  This principle has enabled generations of children to pursue their dreams and build a stronger America.

2.     The framers of the Fourteenth Amendment specifically enshrined this principle in our Constitution's text to ensure that no one—not even the President—could deny children born

1

in America their rightful place as citizens.  They did so with full knowledge and intent that this would protect the children of immigrants, including those facing discrimination and exclusion.

3.    The Citizenship Clause of the Fourteenth Amendment provides that "[a]ll persons born or naturalized in the United States and subject to the jurisdiction thereof, are citizens of the United States."  U.S. Const. amend. XIV, § 1.

4.    In *United States v. Wong Kim Ark*, the Supreme Court confirmed that children born in the United States of noncitizen parents are citizens under the Fourteenth Amendment's Citizenship Clause.  169 U.S. 649 (1898).  Following *Wong Kim Ark*, Congress codified birthright citizenship in a statute whose language mirrors the Fourteenth Amendment.  *See* 8 U.S.C. § 1401(a).

5.    In the over 125 years since the Supreme Court emphatically rejected the last effort to undercut birthright citizenship in *Wong Kim Ark*, this principle has remained undisturbed constitutional bedrock.  Even through countless subsequent immigration debates, and periods of intense anti-immigrant sentiment, this core constitutional guarantee has protected generations of Americans and prevented the emergence of a hereditary underclass excluded from full participation in American life.

6.    For families across America today, birthright citizenship represents the promise that their children can achieve their full potential as Americans.  It means children born here can dream of becoming doctors, lawyers, teachers, entrepreneurs, or even president—dreams that would be foreclosed if their citizenship were stripped away based on their parents' status.

7.    Now, flouting the Constitution's dictates, statutory commands, and longstanding Supreme Court precedent, Defendant President Donald Trump has issued an Executive Order entitled "Protecting the Meaning and Value of American Citizenship" ("the Order"), which

attempts to upend one of the most fundamental American constitutional values by denying citizenship to children born on American soil to a mother who is "unlawfully present" or temporarily present, and a father who is not a U.S. citizen or lawful permanent resident.

8.    For Plaintiffs—organizations with members impacted by the Order—and for families across the country, this Order seeks to strip from their children the "priceless treasure" of citizenship, *Fedorenko v. United States*, 449 U.S. 490, 507 (1981), threatening them with a lifetime of exclusion from society and fear of deportation from the only country they have ever known. But that is illegal.  The Constitution and Congress—not President Trump—dictate who is entitled to full membership in American society.

9.    The Order straightforwardly violates the Citizenship Clause, as well as the birthright citizenship statute, and should be enjoined.

## JURISDICTION AND VENUE

10.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.

11.    Venue is proper in the District of New Hampshire because Plaintiff New Hampshire Indonesian Community Support ("NHICS") resides in the District.  28 U.S.C. § 1391(e)(1).

## PARTIES

12.    Plaintiff New Hampshire Indonesian Community Support is a nonprofit, membership-based community organization in New Hampshire.  It is headquartered in Dover, New Hampshire.

13.    NHICS's mission is to help foster a well-informed, well-connected, and stronger immigrant community in New Hampshire and to build a community that contributes to society.

14.     NHICS has approximately 2,000 members located across New Hampshire.

15.     NHICS has members whose children will be denied citizenship under the Order.

16.     Plaintiff League of United Latin American Citizens ("LULAC") is a nationwide, non-profit, non-partisan, membership-based organization founded in 1929.

17.     LULAC's mission is to improve the lives of Latino families throughout the United States and to protect their civil rights in all aspects.

18.     LULAC has over 325,000 members nationwide.

19.     LULAC has members whose children will be denied citizenship under the Order.

20.     Plaintiff Make the Road New York ("MRNY") is a nonprofit, membership-based community organization with five offices in the New York area.

21.     MRNY's mission is to build the power of immigrant and working class communities to achieve dignity and justice.

22.     MRNY has over 28,000 members residing in New York State.

23.     MRNY has members whose children will be denied citizenship under the Order.

24.     Defendant Donald J. Trump is the President of the United States.  He is sued in his official capacity.  In that capacity, he issued and will oversee the implementation of the Order challenged in this lawsuit.

25.     Defendant U.S. Department of Homeland Security ("DHS") is a cabinet-level department of the United States federal government.  Its components include U.S. Immigration and Customs Enforcement ("ICE") and Customs and Border Protection ("CBP").  ICE's responsibilities include enforcing federal immigration law within the interior of the United States, including by carrying out deportations.  CBP's responsibilities include inspecting and

admitting people at international points of entry, including airports and land borders, and engaging in immigration enforcement near the border.

26.     Defendant Secretary of Homeland Security has responsibility for overseeing enforcement and implementation of the Order by all DHS staff.  They are sued in their official capacity.

27.     Defendant U.S. Department of State ("DOS") is a cabinet-level department of the United States federal government.  DOS is responsible for the issuance of passports to United States citizens.

28.     Defendant Secretary of State has responsibility for overseeing enforcement and implementation of the Order by all DOS staff.  They are sued in their official capacity.

29.     Defendant U.S. Department of Agriculture ("USDA") is a cabinet-level department of the United States.  USDA administers the Supplemental Nutrition Assistance Program ("SNAP").

30.     Defendant Secretary of Agriculture has responsibility for overseeing enforcement and implementation of the Order by all USDA staff.  They are sued in their official capacity.

31.     Defendant Centers for Medicare and Medicaid Services ("CMS") is an agency of the United States.  CMS provides health coverage to people in the United States through Medicaid.

32.     Defendant Administrator of the Centers for Medicare and Medicaid Services has responsibility for overseeing enforcement and implementation of the Order by all CMS staff. They are sued in their official capacity.

**STATEMENT OF FACTS**

**A. Legal Background**

33.     "Jus soli" is "the ancient and fundamental" principle of "citizenship by birth within the territory" of the United States. *Wong Kim Ark*, 169 U.S. at 693. This principle has its roots in English common law, *see Calvin v. Smith*, 77 Eng. Rep. 377 (K.B. 1608), and applied in the colonial era and early years of the American republic, *see Wong Kim Ark*, 169 U.S. at 658; *Inglis v. Trustees of Sailor's Snug Harbor*, 28 U.S. 99, 164 (1830).

34.     However, in the infamous case of *Dred Scott v. Sandford*, the Supreme Court held that, despite their birth in the United States, the descendants of enslaved people were "not included, and were not intended to be included, under the word 'citizens' in the Constitution." 60 U.S. 393, 404-05 (1857).

35.     After the Civil War, Congress repudiated *Dred Scott* and constitutionalized the birthright citizenship rule in the Fourteenth Amendment's Citizenship Clause, which provides that "[a]ll persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States." U.S. Const. amend. XIV, § 1. *See Wong Kim Ark*, 169 U.S. at 692-93. In so doing, the Framers strove to transform American citizenship from a race-based, two-tiered system, to one that was equally open to all regardless of their parents' heritage.

36.     The Citizenship Clause was enacted with full knowledge among both proponents and opponents that it would guarantee the citizenship of children of noncitizens.

37.     Accordingly, when the question of the citizenship of the child of two Chinese nationals—who at that time were barred under the Chinese Exclusion Acts from becoming U.S. citizens themselves—came before the Supreme Court in *Wong Kim Ark*, it rightly concluded that because the plaintiff had been born in the United States, he was a citizen, regardless of his

parents' circumstances.  169 U.S. at 693.  In *Wong Kim Ark*, the Supreme Court conclusively determined that all children born in the United States are citizens, subject only to very limited exceptions.

38.    The only exception relevant today is the children of foreign diplomats, who, under *Wong Kim Ark*, are not "subject to the jurisdiction" of the United States.  *Id*. at 683.

39.    Another exception *Wong Kim Ark* noted were children born to foreign armies living in U.S. territory that those armies had conquered.  *Id*. at 682-83.  There is no such U.S. territory today.

40.    Finally, *Wong Kim Ark* noted an exception for children born to Native Americans living within tribal territory.  *Id*. at 681.  Because tribes were considered quasi-sovereign entities, children born to Native Americans in their territory were deemed similar to "the children of subjects of any foreign government born within the domain of that government."  *Id*. (quoting *Elk v. Wilkins*, 112 U.S. 101, 102 (1884)).  Congress later declared all Native Americans born in the United States to be U.S. citizens.  Indian Citizenship Act, Pub. L. No. 68-175, 43 Stat. 253 (1924).

41.    Beyond these exceptions, the Fourteenth Amendment's guarantee of birthright citizenship applies to "the children born within the territory of the United States of all other persons."  *Wong Kim Ark*, 169 U.S. at 693.

42.    In 1940, Congress enacted a statute that mirrors the Citizenship Clause.  The birthright citizenship statute provides that "a person born in the United States, and subject to the jurisdiction thereof" is a citizen of the United States.  8 U.S.C. § 1401(a); *see also id.* §§ 1402, 1406(b), 1407(b).  This language "[wa]s taken . . . from the fourteenth amendment to the Constitution."  *To Revise and Codify the Nationality Laws of United States into a Comprehensive*

7

*Nationality Code: Hearings Before the Comm. on Immig. and Naturalization on H.R. 6127 Superseded by H.R. 9980*, 76th Cong., 1st Sess., at 38 (1940).  In 1952, the birthright citizenship statute was reenacted as part of a broader set of reforms to the naturalization laws.

43.     In passing and reenacting this statute, Congress codified the long-settled interpretation of the Fourteenth Amendment, whereby all children born in the United States were citizens, subject only to the narrow exceptions identified in *Wong Kim Ark*.

**B.  The Executive Order**

44.     On January 20, 2025, President Trump issued the Order.

45.     The Order purports to declare that a child born in the United States is not a citizen if, at the time of birth, their mother is either "unlawfully present in the United States" or their "mother's presence in the United States was lawful but temporary," and their father was not a U.S. citizen or lawful permanent resident.

46.     The Order directs the Secretary of State, the Attorney General, the Secretary of Homeland Security, and the Commissioner of Social Security to implement its terms.  It also directs all other agency heads to issue guidance regarding implementation of the Order.  Such agencies include USDA and CMS.

47.     The Order specifies that it will apply to persons born after 30 days from its issuance.

48.     Neither the Constitution nor any federal statute confers any authority on the President to redefine American citizenship.

49.     By attempting to limit the right to birthright citizenship, the Order exceeds the President's authority and runs afoul of the Constitution and federal statute.

**C. Plaintiffs and Their Members**

8

50.    Plaintiffs NHICS, MRNY, and LULAC are membership-based organizations. Each organization has members who are living in the United States and currently expecting children who, once they are born, will be denied citizenship under the Executive Order.

51.    NHICS's members include noncitizens who have a variety of immigration statuses. Specifically, NHICS's members include citizens, lawful permanent residents, asylees, applicants for immigration relief including asylum, student visa holders, recipients of Deferred Action for Childhood Arrivals ("DACA"), and undocumented noncitizens. Some of these members are currently expecting children who may be deemed to be covered by the Order.

52.    For example, "Gail" and "Thomas" are NHICS members whose child, when born, would be denied U.S. citizenship under the Order.

53.    Gail came to the United States on a tourist visa in 2023 and has a pending application for asylum but no other current immigration status. She is pregnant and has a due date in late February.

54.    Thomas is Gail's husband. He came to the United States in 2023 on a tourist visa and has a pending application for asylum but no other current immigration status. He is the father of Gail's expected child.

55.    Many of MRNY's members are neither U.S. citizens nor lawful permanent residents. Some of these members are currently expecting children who may be deemed to be covered by the order.

56.    For example, "Faith" is a member of MRNY and a noncitizen. Faith is pregnant, and is due in March 2025. She has lived in the United States for over twenty years. She is a DACA recipient but has no other immigration status, and her partner, who is the father of her expected child, is not a Lawful Permanent Resident nor a U.S. citizen.

9

57.     "Gordon" is a member of MRNY and a noncitizen.  He and his partner are expecting a child due in March 2025.  He and his partner have both applied for asylum, but neither has any other immigration status.

58.     "Johnathan" is a member of MRNY and a noncitizen.  He and his partner are expecting a child in April 2025.  He has lived in the United States for over thirty years, but neither he nor his partner has any immigration status.

59.     LULAC's members include noncitizens who have a variety of immigration statuses.  Specifically, LULAC's members include lawful permanent residents, student visa holders, asylees, refugees, parolees, noncitizens with Temporary Protected Status ("TPS"), DACA recipients, applicants for immigration relief including asylum, and undocumented noncitizens.  Some of these members are currently expecting children who may be deemed to be covered by the order.

60.     For example, "Carmen" is a member of LULAC and a noncitizen.  Carmen is expecting a child.  Carmen has lived in the United States for over 15 years and has a pending application for a U visa, which provides a path to permanent immigration status to victims of certain crimes, but Carmen has no other immigration status.  The father of Carmen's expected child also has no immigration status.

**D. Impact of the Order on Plaintiffs, their Members, and Other Families.**

61.     Denying citizenship to the children of Plaintiffs' members, as well as other children being born every day throughout the country, would have devastating impacts on these families and on the United States as a whole.

62.     Stripping children of the "priceless treasure" of citizenship, *Fedorenko*, 449 U.S. at 507, is a grave injury.  It denies them the full membership in U.S. society to which they are entitled.

63.     Allowing the Order to stand would "promot[e] the creation and perpetuation of a subclass" of children who were born in the United States but lack fundamental legal recognition and face stigma as a result of their novel and uncertain status.  *Plyler v. Doe*, 457 U.S. 202, 230 (1982).

64.     By attacking the principle that all children born in this country are citizens, the Order will invite persistent questioning of the citizenship of children of immigrants—particularly children of color.

65.     The Order's denial of these children's citizenship will also have numerous other consequences.

66.     Among other things, as they become adults, these children will, if stripped of their citizenship, be denied the right to vote in federal elections, *see* U.S. Const. art. 1, § 2; serve on federal juries, *see* 28 U.S.C. § 1865(b); serve in many elected offices, *see* U.S. Const. art. 2, § 1, cl. 5; id. art. 1, §§ 2, cl. 2, 3, cl. 3; and work in various federal jobs, *see, e.g.*, 35 U.S.C. § 3; 47 U.S.C. § 154(b)(1); 49 U.S.C. §§ 106, 114(b), 44935(e)(2)(A)(ii).

67.     Once deemed to be noncitizens, the children of Plaintiffs' members and other similarly situated children will be subject to immigration enforcement by DHS, CBP, and ICE. This may include arrest, detention, and deportation to countries they have never even visited.

68.     Improperly threatening children with arrest, detention, and deportation, and forcing them to grow up in fear of immigration enforcement, imposes harms on those children and their parents.

69.     That fear is multiplied for parents who face further concern that their baby's removal would be to a country where their lives or freedom would be in danger.

70.     United States passports are issued to United States citizens.  *See* 22 U.S.C. § 212; 22 C.F.R. § 51.2(a).  United States passports may be used for international travel, and as identification for many other purposes.

71.     Children of Plaintiffs' members and other noncitizen families will be ineligible for passports under the Order.

72.     Without passports, these children may not be able to travel outside the country to visit family.  This threatens to undermine family ties and prevent noncitizens from traveling abroad to, for example, visit ailing relatives or celebrate a wedding.

73.     Likewise, many families rely on passports as one of the only available forms of government identification for their children, which can be vital for both practical purposes, and to prove the child's identity and relationship to their parents in cases of contact with law enforcement or other government agencies.

74.     The Order may also render children legally or effectively stateless.  A U.S.-born child deemed to be a noncitizen may likewise not be recognized as a citizen under the laws of

their parents' country or countries of origin.  Even if legally possible, practical barriers may prevent these children from being recognized as citizens of any other country.

75.     For example, Gordon and his partner are citizens of Venezuela, which does not offer consular services in the United States.  His child, once born, may be rendered effectively stateless.

76.     Stateless people often lack access to education, employment, health care, and other rights, and face travel restrictions, social exclusion, and heightened vulnerability to violence and other harms.

77.     Denying these children's citizenship may also render them ineligible for critical early-life nutritional resources and medical care.  *See* 8 U.S.C. § 1611.

78.     For example, U.S. citizen children are eligible for SNAP.  SNAP provides access to critically important groceries for low-income households.

79.     Because they would be deemed noncitizens under the Order, children of Plaintiffs' members risk being deemed ineligible for access to nutrition under SNAP.  *See* 7 U.S.C. § 2015(f); 7 C.F.R. § 273.4.

80.     For example, Gail and Thomas's household would likely financially qualify for SNAP.  As a U.S. citizen, their child, once born, would be eligible for SNAP.  But because of the Order, their child will likely be ineligible.

81.     Ensuring access to nutritious food during early childhood is vital for children's physical and mental development, laying a foundation for future well-being.

82.     Likewise, Carmen's household financially qualifies for federal health insurance under the Medicaid program, which provides medical insurance for low-income people.  But under the Order, her child, once born, will likely be ineligible.

83.     Access to medical care plays a critical role in improving life outcomes for children and leads to improved cognitive and physical growth.

84.     Without it, children are at greater risk of avoidable hospitalizations and long-term health disparities.

85.     Moreover, the denial of medical coverage may require members to forego necessities such as food and shelter in order to pay for medical expenses.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
**Fourteenth Amendment to the United States Constitution**
**(All Defendants)**

86.     All of the foregoing allegations are repeated and realleged as if fully set forth herein.

87.     The Citizenship Clause of the Fourteenth Amendment provides that "[a]ll persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States."  U.S. Const. amend. XIV, § 1.

88.     The Citizenship Clause enshrined in the Constitution the fundamental common law rule of birth by citizenship, whereby all people born in the United States are citizens.  The term "subject to the jurisdiction" excludes only a few inapplicable categories—today, just the children of foreign diplomats.  All other children born in the United States are citizens, no matter the immigration status of their parents.

89.     The Executive Order violates the Fourteenth Amendment's Citizenship Clause because it denies citizenship to the children of noncitizens who are born in the United States and subject to the jurisdiction of the United States.

**SECOND CLAIM FOR RELIEF**
**8 U.S.C. § 1401 *et seq.***
**(All Defendants)**

90.     All of the foregoing allegations are repeated and realleged as if fully set forth herein.

91.     8 U.S.C. § 1401(a) provides that "a person born in the United States, and subject to the jurisdiction thereof" is a citizen of the United States.  *See also id.* §§ 1402, 1406(b), 1407(b).

92.     This language mirrors the Fourteenth Amendment's Citizenship Clause.  In this statute, Congress codified the Fourteenth Amendment's existing interpretation, which established citizenship for children regardless of the immigration status of their parents.

93.     The Executive Order violates 8 U.S.C. § 1401 *et seq.* because it denies citizenship to the children of noncitizens who are born in the United States and subject to the jurisdiction of the United States.

**THIRD CLAIM FOR RELIEF**
**Administrative Procedure Act**
**(All Defendants except Defendant Trump)**

94.     All of the foregoing allegations are repeated and realleged as if fully set forth herein.

95.     The actions of Defendants that are required or permitted by the Executive Order, as set forth above, are contrary to constitutional right, power, privilege, or immunity, including rights protected by the Fourteenth Amendment to the U.S. Constitution, in violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(B).

**FOURTH CLAIM FOR RELIEF**
**Administrative Procedure Act**
**(All Defendants except Defendant Trump)**

96.     All of the foregoing allegations are repeated and realleged as if fully set forth

herein.

97.     The actions of Defendants that are required or permitted by the Executive Order,

as set forth above, violate 8 U.S.C. § 1401 *et seq.* and are in excess of statutory jurisdiction,

authority, or limitations, or short of statutory right, in violation of the Administrative Procedure

Act, 5 U.S.C. § 706(2)(C).

**PRAYER FOR RELIEF**

WHEREFORE Plaintiffs request that the Court grant the following relief:

a.     Declare that the Executive Order is unconstitutional and unlawful in its entirety;

b.     Preliminarily and permanently enjoin Defendants from enforcing the Executive

Order;

c.     Require Defendants to pay reasonable attorneys' fees and costs;

d.     Grant any other and further relief that this Court may deem just and proper.

Dated: January 20, 2025                Respectfully submitted,

                                       /s/ SangYeob Kim
                                       SangYeob Kim (N.H. Bar No. 266657)
Cody Wofsy*                            Gilles R. Bissonnette (N.H. Bar. No. 265393)
Hannah Steinberg*                      Henry R. Klementowicz (N.H. Bar. No.
Stephen Kang*                          21177)
Spencer Amdur*                         Chelsea Eddy (N.H. Bar No. 276248)
AMERICAN CIVIL LIBERTIES               AMERICAN CIVIL LIBERTIES UNION
UNION FOUNDATION                       OF NEW HAMPSHIRE
IMMIGRANTS' RIGHTS PROJECT             18 Low Avenue
425 California Street, Suite 700       Concord, New Hampshire 03301
San Francisco, CA 94104               T: 603.224.5591
T: (415) 343-0770                      sangyeob@aclu-nh.org
cwofsy@aclu.org                        gilles@aclu-nh.org
hsteinberg@aclu.org                    henry@aclu-nh.org
skang@aclu.org

16

samdur@aclu.org

Noor Zafar*
Wafa Junaid*
Grace Choi*
Lee Gelernt*
Omar Jadwat*
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad St., 18th Floor
New York, NY 10004
T: (212) 549-2660
nzafar@aclu.org
wjunaid@aclu.org
gchoi@aclu.org
lgelernt@aclu.org
ojadwat@aclu.org

Morenike Fajana*
Ashley Burrell*
Elizabeth Caldwell*
Morgan Humphrey*
NAACP LEGAL DEFENSE &
EDUCATIONAL FUND, INC.
40 Rector St., FL 5,
New York, NY 10006
(212) 217-1690
mfajana@naacpldf.org
aburrell@naacpldf.org
bcaldwell@naacpldf.org
mhumphrey@naacpldf.org

Mide Odunsi*
NAACP LEGAL DEFENSE &
EDUCATIONAL FUND, INC.
700 14th Street NW, Suite 600
Washington, DC 20005
(202) 249-2193
modunsi@naacpldf.org

chelsea@aclu-nh.org

Norm Eisen†*
Tianna Mays†*
STATE DEMOCRACY DEFENDERS FUND
600 Pennsylvania Avenue SE, #15180
Washington, D.C. 20003
T: (202) 594-9958
norman@statedemocracydefenders.org
tianna@statedemocracydefenders.org

Christopher M. Lapinig*
Kimberly Wei Leung*
Winifred Kao*
ASIAN LAW CAUCUS
55 Columbus Ave
San Francisco, CA 94111
T: (415) 896-1701
christopherl@asianlawcaucus.org
kimberlyl@asianlawcaucus.org
winifredk@asianlawcaucus.org

Carol Garvan (N.H. Bar. No. 21304)
Zachary L. Heiden*
AMERICAN CIVIL LIBERTIES UNION OF MAINE
FOUNDATION
P.O. Box 7860
Portland, Maine 04112
T: (207) 619.8687
cgarvan@aclumaine.org
heiden@aclumaine.org

Adriana Lafaille*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF MASSACHUSETTS, INC.
One Center Plaza
Suite 850
Boston, MA 02108
T: (617) 482-3170
alafaille@aclum.org

*Counsel for Plaintiffs*
*†Counsel for LULAC only*
*\* Application for admission pro hac vice*
*forthcoming*

17

**<u>DECLARATION OF REVEREND SANDRA PONTOH, DIRECTOR OF THE NEW HAMPSHIRE INDONESIAN COMMUNITY SUPPORT</u>**

I, Sandra Pontoh, pursuant to 28 U.S.C. § 1746, declare as follows:

1.      I am the Director of the New Hampshire Indonesian Community Support (NHICS). In this capacity, I engage in, coordinate, and direct NHICS's community support for the Indonesian community in New Hampshire. I am also a reverend and serve as the pastor of the Maranatha Indonesian United Church of Christ in Madbury, New Hampshire.

2.      NHICS is a nonprofit, membership-based community organization that integrates Indonesians in New Hampshire. NHICS was established in 2010, and received its nonprofit organization status in 2016. As a community organization, NHICS serves more than two thousand Indonesians in New Hampshire. NHICS has its office in Dover, New Hampshire.

**<u>NHICS's mission and activities</u>**

3.      NHICS's mission is to help foster a well-informed, well-connected, and stronger immigrant community in New Hampshire and to build a community that contributes to society.

4.      At the core of NHICS's mission, NHICS and its members organize various activities for the community, from promoting Indonesian culture and food to advocating for the community. For instance, NHICS organizes cultural and food events with other organizations and invites all Indonesians and others to the events. NHICS also works with and connects the community to various government, social services, and other community-based organizations to advocate for the community members, including immigrant members. Examples include but are not limited to: working with local police to conduct public safety training; educating Indonesian Americans on how to actively participate in elections; educating and assisting members in paying their annual taxes; working with professors and local artists to develop activities for children; assisting parents of students at public schools as well as in other places such as

1

hospitals with interpretation/translation; providing interpretation and other administrative and

emotional support for postnatal care; connecting members to social service agencies and

providing interpretation for those meetings; holding community educational discussions on

workplace safety and health, taxes, health insurance, immigrant rights, and domestic violence

and abuse law; working with attorneys for immigration and non-immigration legal advice;

preparing members for the citizenship interviews; and assisting the census survey in the

community.

**NHICS's membership**

5.      NHICS is a membership-based organization. Currently, NHICS has about 2,000

Indonesian and Indonesian American members throughout New Hampshire. NHICS is organized

and run primarily by a team of volunteer community members and offers support services

completely free of charge. NHICS does not charge for any of its services and only accepts

donations.

6.      NHICS's members contribute to their local communities in a number of ways. For

example, one of its members works as a high school teacher, several members are police officers,

and one member is a physician.

7.      NHICS's members include citizens, lawful permanent residents, asylees, asylum

seekers, student visa holders, DACA recipients, and undocumented noncitizens.

**President Trump's executive order affects NHICS members**

8.      President Trump's executive order entitled "Protecting the Meaning and Value of

American Citizenship" ("the Order") will impact NHICS's members. NHICS is aware of various

members who are expecting children who will be covered by the Order.

2

9.      For example, Gail[1] is a member of NHICS and a noncitizen Indonesian national. She entered the United States on a tourist visa in 2023. Her husband, Thomas, is also a member of NHICS and a noncitizen Indonesian national. Gail and Thomas applied for asylum in 2023, and their application remains pending. Gail is pregnant, and her due date is in late February/early March.

10.      Under the Order, Gail and Thomas's child risks being deemed not be a U.S. citizen.

11.      Gail and Thomas's child may be subject to removal in light of the Order.  Under the Order, the child will be stripped of any legal protections, deemed to be a noncitizen, and not have any other immigration status. That means that the baby could be arrested and detained, and even deported as a noncitizen. While their parents have applied for asylum, it is not clear whether this U.S.-born child legally could be added to those applications (an issue that ordinarily never comes up because U.S.-born children are citizens).  Gail and Thomas fear that their U.S.-born child could be arrested and deported under the new administration's immigration policies.

12.      Gail and Thomas would like to seek a U.S. passport for their child to prove the baby's identity and citizenship to protect the baby from possible detention by local police officers and immigration agents as an undocumented noncitizen. But under the Order the child risks being deemed ineligible for a passport.

13.      Gail and Thomas also fear their child could be left totally stateless.  It is my understanding that Indonesia has several requirements for its nationals to pass on citizenship to children born abroad, including formal registration of birth at an Indonesian embassy.  However,

---

[1] To protect their identities, I am using fictitious names to describe them.

Gail and Thomas would be afraid to report the birth because of their asylum claim. Nor can they return to Indonesia because of their fear of persecution.

14.     Because of the order, the child's access to nutrition and healthcare services, such as SNAP and Medicaid, may also be threatened. I am aware of several NHICS members who rely on these programs.

15.     Gail and Thomas rely primarily on Thomas's extremely limited income of approximately $300 a week, which is insufficient to cover basic living expenses, let alone additional medical or nutritional needs for their child.

16.     Given these financial constraints, this family may be forced to either forgo necessary medical care for their child, or to divert money that is essential for food and shelter to cover their child's medical expenses. They may be compelled to do both.


I hereby declare under penalty of perjury that the foregoing is true and correct.

*Sandra Pontoh*.

Rev. Sandra Pontoh

Executed on ____Jan 21st____, 2025

4

JA49

## <u>DECLARATION OF JUAN PROAÑO, CHIEF EXECUTIVE OFFICER OF LEAGUE OF UNITED LATIN AMERICAN CITIZENS</u>

I, Juan Proaño, pursuant to 28 U.S.C. § 1746, declare that the following statements are true and correct to the best of my knowledge and belief:

1.      I am the Chief Executive Officer of League of United Latin American Citizens (LULAC), a position I have held since November 2023. In my role as Chief Executive Officer, I oversee the day-to-day operations at LULAC and work to amplify the organization's advocacy initiatives and action-oriented programs.

2.      LULAC is a nationwide, non-profit, non-partisan, membership-based organization with 535 councils (local chapters) and over 325,000 members. LULAC was established in 1929 and has its headquarters in Washington, D.C.

### <u>LULAC's mission and activities</u>

3.      LULAC is the largest and oldest Latino civil rights organization in the United States. LULAC's mission is to improve the lives of Latino families throughout the United States and to protect their civil rights in all aspects.

4.      LULAC advances the economic condition, educational attainment, political influence, housing, health, and civil rights of Hispanic Americans through community-based programs operating at more than 525 LULAC councils nationwide.

5.      LULAC has a national board, president, and professional staff, as well as several issue-specific committees.

6.      LULAC provides citizenship application assistance and civics and citizenship education to its members, many of whom are immigrants.

7.      LULAC and its affiliates provide approximately one million dollars in scholarships to Hispanic students each year. LULAC Institute programs include citizenship and

voter registration drives as well as education and health events and programs that empower the Hispanic community at the local, state and national level.

8.     In addition, LULAC offers educational programming to disadvantaged youth which impacts more than 18,000 Hispanic students per year at fourteen regional centers. LULAC affiliates, including LULAC's employment arm, provide job skills and literacy training to the Hispanic community through more than forty-eight employment training centers located throughout the United States. The LULAC Corporate Alliance, an advisory board of Fortune 500 companies, fosters stronger partnerships between Corporate America and the Hispanic community.

**LULAC's membership**

9.     LULAC's members include U.S. citizens, lawful permanent residents, student visa holders, asylees, refugees, parolees, noncitizens with Temporary Protected Status ("TPS"), Deferred Action for Childhood Arrivals ("DACA") recipients, applicants for immigration relief including asylum, and undocumented noncitizens.

10.    Our membership changes on a weekly basis, as new members join and, sometimes, existing members leave.  Maintaining and updating our membership lists is an ongoing, resource-intensive process.  Given our limited capacity, it sometimes takes up to a week before a new member is reflected in our systems.  We also have no existing process to confirm a person's current membership in LULAC for outside entities, and setting up and deploying that kind of system would seriously strain LULAC's resources.

**President Trump's executive order affects LULAC members**

11.    President Trump's Executive Order restricting birthright citizenship ("the Executive Order," or "the Order") will have a profound impact on LULAC's members and the

Latino community. LULAC has identified various members who are currently expecting children who (when born) will be covered by the Order.

12.     For some of these members, both parents of the expected baby are LULAC members.  For some, only one parent is a member.  Some parents live together while others do not—including in some cases parents that live in different States.

13.     "Carmen" is a LULAC member who is currently pregnant.[1]  She currently resides in Maryland and has lived in the United States for over 15 years.  Carmen has a pending application for a U visa, which provides a path to permanent immigration status to victims of certain crimes, but has no other immigration status.  The father of her expected child also has no immigration status.

14.     Under the Order, Carmen's child risks being deemed to not be a U.S. citizen.

15.     Carmen fears that, because of the Order, her child could be targeted by immigration enforcement and deported, separating the child from family in the United States.

16.     Carmen intends to apply for a passport for her child, when born, but under the Order the child risks being deemed ineligible for a passport.

17.     Because of the Order, Carmen's baby risks denial of access to healthcare and nutrition.

18.     Carmen's baby would qualify for the Supplemental Nutrition Assistance Program ("SNAP").  However, because of the Order, the baby risks being deemed ineligible.

19.     Likewise, the baby would qualify for health insurance under Medicaid, but risks being denied critical early life medical care because of the Order.

20.     I hereby declare under penalty of perjury that the foregoing is true and correct.

---

[1] To protect this member's privacy and security, I am using a fictitious name to describe her.

Executed on this 21st day of January 2025.

Juan Proaño

**DECLARATION OF SIENNA FONTAINE, GENERAL COUNSEL,**

**MAKE THE ROAD NEW YORK**

I, Sienna Fontaine, pursuant to 28 U.S.C. § 1746, declare as follows:

1.   I am General Counsel of Make the Road New York (MRNY). I am slated to become a co-Executive Director of MRNY as of April 1, 2025. As part of MRNY's Executive Leadership Team, I am responsible for shaping many of MRNY's organizational priorities; overseeing our staff; and fundraising. I have worked at MRNY since 2015.

2.   MRNY is a nonprofit, membership-based community organization that integrates adult and youth education, legal and survival services, and community and civic engagement, in a holistic approach to help low-income New Yorkers improve their lives and neighborhoods. MRNY has five offices in the New York area, located in Brooklyn, Queens, Staten Island, and in Suffolk and Westchester Counties.

**MRNY's Mission and Activities**

3.   MRNY's mission is to build the power of immigrant and working class communities to achieve dignity and justice.

4.   MRNY currently has over 250 staff members who provide services to thousands of individuals a year. To fulfill our mission, MRNY engages in four core strategies: Legal and Survival Services, Transformative Education, Community Organizing, and Policy Innovation.

5.   MRNY's organizing team leads our advocacy work and campaigns. Each year, MRNY participates in dozens of actions around the state to advocate for policy and legislative changes that would impact our members and the communities we serve. The organization engages in a deliberative process with our staff and members to create an annual platform comprised of our legislative and policy priorities for the year and then dedicates significant resources to educating

1

and mobilizing our members to support those priorities. In the past, we have helped secure important legislative victories and reforms from expansion of eligibility for drivers' licenses in New York State to creation of a groundbreaking Excluded Workers Fund for workers unable to access unemployment and pandemic benefits because of their immigration status.

6.    MRNY's organizing team facilitates standing committees in many areas of importance to our members. One of MRNY's longstanding committees is called "Familias en Acción" (Families in Action), formerly "Padres" (Parents). This committee is comprised of parents and family members of children who attend New York City public schools, and meets regularly in our Brooklyn and Queens offices. It has worked to ensure full funding for public schools at the state level and culturally responsive education in the New York City public school system. Two of our other most active committees are the Civil Rights and Immigrant Power Project ("CRIPP"), which works on campaigns for immigration reforms at the state and federal level, and BASTA, which works on campaigns for housing and environmental justice.

7.    MRNY's services teams, which include legal, health, and adult education, are on the front line with immigrant communities in New York and serve thousands of immigrants each year. Our immigration legal team covers a wide range of cases, including affirmative applications such as adjustment of status, naturalization, DACA, TPS, and visas for survivors of violence, as well as removal defense before the immigration courts. Our immigration team also helps hundreds of clients annually understand and apply for citizenship, which may come in the form of representing them in their naturalization process or, if they have a legal claim to citizenship by operation of law, advising them on their eligibility for and securing proof of citizenship. In addition, the legal team assists other departments in advocacy, planning, and training related to pending laws or regulations and engages in impact litigation. Our housing legal team, which

represents many MRNY members, assists hundreds of families in housing court cases involving evictions, hazardous conditions, and housing discrimination. The team routinely supports tenants who owe back rent or who cannot afford either their existing rent or the cost of relocation in avoiding homelessness by obtaining financial assistance through New York City programs. These programs require that at least one member of the household have lawful immigration status.

8.    MRNY's health team promotes the health and well-being of our community members, by providing health services to community members and advocating for improved access to healthcare for immigrants. The health team assists eligible individuals and families with applying for health insurance, including both Medicaid and New York State's Child Health First program, and other benefits including the Supplemental Nutrition Assistance Program ("SNAP"). Through its one-on-one assistance, the health team also provides information and referrals to community members, particularly individuals who do not qualify for health insurance through the New York State of Health program or who are facing food insecurity. The health team also administers a "promotora" program that trains community members to do outreach, screening, and referrals for SNAP and certain benefits programs and runs two food pantries and a community health worker asthma home visiting program. The health team also leads campaigns at the city and state level to increase access to health care and coverage for immigrants in New York.

9.    Lastly, MRNY's adult education team provides English-language classes for hundreds of individuals for whom English is not their first language and assists immigrants with civics, adult basic education, and citizenship classes. In addition, MRNY provides classes that lead directly to greater employment opportunities such as computer classes and Bridge to Health Careers classes.

**Harm to MRNY's Members From the Executive Order**

3

10. MRNY is a membership-based organization. Currently, we have over 28,000 members residing in New York City, Westchester County, and Long Island, and primarily in the boroughs of Queens, Brooklyn and Staten Island. Our membership is drawn primarily from Spanish-speaking immigrant communities. Although we do not collect immigration status information for our members, our long history engaging our members in the fight for immigration reforms and supporting them in sharing their personal stories with elected officials and others has shown that many of our members are neither U.S. citizens nor Lawful Permanent Residents.

11. Our members include thousands of parents and expectant parents. While we do not regularly seek or maintain information about our members' immigration or pregnancy status, as of this month we have over 12,000 members between the ages of 20 and 45, i.e. in the likely age range of expectant parents. I am aware of various members who are currently expectant parents.

12. Among MRNY members, some couples are both MRNY members. For others, only one person is a member. Although our members are primarily New York residents, some have moved out of state or have partners outside of New York.

13. MRNY maintains a database of its members. However, we do not have current contact information or a means of reaching all of our members, as individuals change phone numbers and addresses frequently. The frequency of these changes reflects the composition of our membership, which is drawn from low-income and working communities who often face financial hardship. While we strive to remain in contact with our members, these realities mean we cannot reliably reach all our members in a timely way.

14. Because of concerns for our members' privacy and the importance of their trust in MRNY as crucial to our mission and work, MRNY does not share our membership information with third parties including governmental agencies.

4

15. MRNY has members who are or may be directly impacted by the executive order ("the EO") regarding birthright citizenship challenged in this case.

16. "Faith" is a member of MRNY and a noncitizen who lives in New York.[1] Faith has lived in the U.S. for over two decades. She has DACA but no other immigration status and her partner is not a Lawful Permanent Resident or a U.S. citizen. She is pregnant with her first child and due in March 2025. She is concerned for her child's future educational and professional opportunities, particularly accessing higher education and a career, if he is not deemed to be a U.S. citizen. She also recalls her own fears and anxiety about immigration enforcement as a child in the U.S. without immigration status and does not want her son to experience that. "I don't want him to be scared," she says, especially not in the only country he knows.

17. "Gordon" is a member of MRNY and a noncitizen who lives in New York. He and his partner have both applied for asylum, but neither has Lawful Permanent Residence or U.S. citizenship. Gordon's partner is pregnant and due in March 2025. If born a U.S. citizen, their child will qualify for SNAP benefits which will provide crucial support. But without U.S. citizenship, the family will lose this access to food for their child. In addition, Gordon and his partner are only citizens of Venezuela. Venezuela does not offer consular services in the U.S. and Gordon cannot obtain a Venezuelan passport without leaving the U.S. Gordon is fearful that, if denied U.S. citizenship, his child will be rendered stateless and not have access to any passport or identity documents that would allow the child to travel or apply for immigration status. Gordon fears that, as a result, if he loses his immigration case and is deported from the U.S. or decides to leave the U.S. on his own, his child will be unable to travel with him and he will be separated from his child.

---

[1] To protect the privacy and security of our members, I am using fictitious names to identify them.

5

18. "Johnathan" is a member of MRNY and a noncitizen who lives in New York. Johnathan has lived in the U.S. for over 30 years. He and his partner are undocumented, and the couple is expecting their second child in April 2025. They are deeply fearful for their child's future if denied U.S. citizenship, knowing it will limit her access to education, employment and fundamental opportunities. Not only will she be wrongly treated as a noncitizen, but even those pathways available to other noncitizens under the immigration laws may be cut off. Johnathan is the beneficiary of an approved family petition and is pursuing adjustment of status to become a Lawful Permanent Resident. But it appears that under the EO, even once he has a green card, he will not be able to petition for his newborn child to adjust status as she would lack, according to the terms of the EO, any lawful immigration status and the necessary admission or parole for adjustment of status. For members like Johnathan, the EO creates an impossible situation where their child—physically present since birth on American soil—is barred from adjusting status specifically because she has always been here.

19. "Hector" is a member of MRNY and a noncitizen who lives in New York. Hector has lived in New York since the age of four. He and his partner both have DACA but no other immigration status. The couple is expecting their first child on February 26, 2025. With the issuance of the EO, they are fearful that their daughter will be born into immigration limbo, without a pathway to lawful status. Hector fears for her mental health, because under the EO she will live with the fear of deportation and separation from her family and without the certainty and stability that immigration status provides. He does not want her to experience "second-class citizenship," where like her parents she faces these threats despite growing up, going to school, working and contributing to the U.S.

6

20. As these individuals demonstrate, the communities MRNY serves will be harmed by the EO.

21. Every day, hundreds of people come to MRNY's five community-based offices or directly contact a member of our staff seeking information and assistance on a range of issues, particularly in the aforementioned areas including immigration, housing, and healthcare. Our staff regularly hold committee meetings, community-education sessions, and one-on-one meetings with our members and the communities we serve. Because of this, we experience firsthand the very harmful impact of policy changes targeting immigrants, including the EO purporting to end birthright citizenship.

22. Even before the EO was issued, we began to observe the impact of rhetorical attacks on birthright citizenship several months ago. Community members we serve have expressed fear and confusion about this change. Members and clients, including pregnant women, have expressed a deep sense of injustice and loss that their children may be forced to live in fear and without stability and equal access to education, employment and civic opportunities in the only country they have ever known. They also express concern at the legal limbo their children will be thrown into, with consequences to the children ranging from an inability to access any nationality or travel documents to ineligibility to adjust status or derive asylum.

23. Members have also shared anxiety about loss of access to essential rights, nutrition services, and healthcare as a result of the EO. Members' concerns demonstrate that the EO's chilling effect extends far beyond its immediate impact, deterring even qualified individuals from accessing critical services due to fear and uncertainty. For instance, members have expressed heightened fears that they or their previously U.S.-born children could lose their U.S. citizenship and be deported and have asked for information from our staff on that risk.

7

24. Children born in this country but deemed not to be citizens under the EO will be rendered ineligible for SNAP, a program that ensures low-income families can afford essential groceries. Without this critical support, our member families with newborns and young children no longer eligible for SNAP will face severe food insecurity. This loss will strain alternative resources, like MRNY's own food pantries and other emergency-food banks in and around New York City. But even when families can access those emergency resources, they are no replacement for SNAP, which provides regular, reliable, and flexible access to critical early-childhood nutrition.

25. Our members and their families will also lose access to important housing programs, exacerbating challenges in securing stable and affordable housing in communities already struggling to afford New York City's extremely high rents. Our housing organizers and housing legal team work to prevent housing instability and homelessness through a combination of organizing and legal services. Programs like New York City's Family Homelessness and Eviction Prevention Supplement (FHEPS) are essential to these efforts. FHEPS provides financial assistance to keep families in their homes or allow them to relocate but eligibility requires that at least one member of the family have lawful immigration status. Many of our members live in mixed-status households and their U.S.-citizen children rely on stable housing environments supported by programs like the FHEPS. Under the EO, children born without U.S. citizenship and their families will lose access to this crucial program. The result will be increased homelessness and, even among those who are not homeless, fewer resources available for non-rent expenses such as food and clothing. This impacts not just those families but the entire community, which thrives when all New Yorkers thrive.

26. Our members and their families' healthcare will also be impacted. Although all children can access health insurance through New York State up to age 19, coverage is not as extensive as through federally-funded Medicaid. Therefore children born in this country but deemed to not be citizens under the EO will have less access to healthcare than they otherwise would. This will impact their health and wellbeing.

27. Children deprived U.S. citizenship under the EO may be unable to obtain passports altogether, due to either statelessness or the impossibility of accessing passports from a parent's country of nationality in the U.S. MRNY has hundreds of Venezuelan members, including almost 200 members in the age range of likely expectant parents, and our legal team also serves a large volume of Venezuelan clients. Venezuelan nationals in the U.S. currently cannot obtain or renew passports due to the absence of consular services. This means children born in the U.S. to Venezuelan national parents will be unable to access any proof of citizenship. The issue extends to children of MRNY members of other nationalities, such as an Afghan member who resides in New York, whose national government similarly lacks consular support in the U.S.

28. The EO also threatens the stability and long-term educational and professional opportunities for our members' children, which is deeply concerning to MRNY and to our members who are expectant parents. Not only will children denied U.S. citizenship face the possibility of immigration enforcement and removal, but their lack of access to documentation will mean it is harder to accompany or visit a parent who leaves the U.S. Looking to the future, our members are fearful their children will be unable to access advanced education and gainful employment due to their lack of U.S. citizenship or any other lawful immigration status, and will be denied their fundamental rights as citizens including the right to vote once they are 18. As

9

parents and grandparents, our members do not want their children to suffer from the fear, instability and lack of opportunity that the EO will create.

I hereby declare under penalty of perjury that the foregoing is true and correct.

_____
Sienna Fontaine

Executed this 20th day of January, 2025

## <u>SUPPLEMENTAL DECLARATION OF REVEREND SANDRA PONTOH, DIRECTOR OF THE NEW HAMPSHIRE INDONESIAN COMMUNITY SUPPORT</u>

I, Sandra Pontoh, pursuant to 28 U.S.C. § 1746, declare as follows:

1.      I submit this supplemental declaration to explain how NHICS's impacted members (pregnant mothers) are affected by the uncertainty about whether injunctions issued in other lawsuits will protect them.

2.      I am aware of the nationwide injunctions from courts in Washington and Maryland that were issued this week. I am also aware that these orders are not final, that the federal government has already filed an appeal as to one of those orders, and that it may ask courts to eliminate or stay those orders in full or in part.  I understand that depending on what happens to those orders, NHICS's impacted members—expectant parents covered by the Order—could be left unprotected by any injunction.

3.      I previously explained the kinds of harms our members will face without an injunction.

4.      In addition, even while those other injunctions remain in place, the uncertainty and prospect of having any window of time where there is no direct protection is profoundly unsettling and anxiety-inducing for NHICS's impacted members.  This fear would be intense under any circumstances, but these families are in particularly challenging circumstances.  Our members include pregnant women and their partners, and these families are already grappling with the normal stresses, anxieties, and challenges of expectant parents.  Once their babies are born, they will be juggling all the anxiety, sleep deprivation, and emotions that parents of newborns often go through.  In the context of these human realities, the anxiety of wondering if protection from the executive order may be snatched away because of what happens in other cases will be particularly painful for these families.

1

5.    For example, the current situation puts significant pressure and stress on NHICS members Gail and Thomas, who expect their baby within weeks.  Gail and Thomas have been eagerly waiting to meet this baby, who will be their first child.  Every time they visit their OBGYN, the doctor emphasizes and reemphasizes how important it is for Gail to be happy and without stress for her own health and the health of the baby.  The additional anxiety and concern that would come from denial of an injunction in this case will affect Gail and Thomas significantly.

I hereby declare under penalty of perjury that the foregoing is true and correct.

_Sandra Pontoh_

Rev. Sandra Pontoh

Executed on _February 8th_, 2025

2

*NO COPY OF THIS TRANSCRIPT MAY BE MADE PRIOR TO MAY 14, 2025

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*
                                          \*
NEW HAMPSHIRE INDONESIAN COMMUNITY    \*
SUPPORT, et al.,                      \*
                                          \*
              Plaintiffs,    \*  1:25-cv-00038-JL-TSM
                             \*  February 10, 2025
        v.                   \*  8:34 a.m.
                             \*
DONALD J. TRUMP, President of the    \*
United States, in his official       \*
capacity, et al.,                    \*
                                          \*
              Defendants.    \*
\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*



TRANSCRIPT OF MOTION FOR PRELIMINARY INJUNCTION
BEFORE THE HONORABLE JOSEPH N. LAPLANTE



Appearances:


For the Plaintiffs:    Cody Wofsy, Esq.
                       Omar C. Jadwat, Esq.
                       American Civil Liberties Union Foundation

                       SangYeob Kim, Esq.
                       Gilles R. Bissonnette, Esq.
                       Henry Klementowicz, Esq.
                       American Civil Liberties Union of NH

                       Elizabeth Grace Caldwell, Esq.
                       Ashley Michelle Burrell, Esq.
                       NAACP Legal Defense Fund

                       Kimberly Leung, Esq.
                       Asian Law Caucus

Appearances Continued:


For the Defendants:        Drew C. Ensign, Esq.
                           Bradley P. Rosenberg, Esq.
                           U.S. Department of Justice
                           Civil Division



Court Reporter:            Liza W. Dubois, RMR, CRR
                           Official Court Reporter
                           U.S. District Court
                           55 Pleasant Street
                           Concord, New Hampshire 03301
                           (603) 225-1442

```
 1                    P R O C E E D I N G S
 2            THE CLERK:  This court is in session and has for
 3   consideration a hearing on a motion for a preliminary
 4   injunction in civil matter 25-cv-38-JL-TSM, New Hampshire
 5   Indonesian Community Support, et al, vs. Donald J. Trump,
 6   et al.
 7            THE COURT:  All right.  Why don't counsel identify
 8   themselves for the record and we'll get started.  We'll start
 9   with the plaintiffs.
10            MR. WOFSY:  Thank you, your Honor.  Good morning,
11   Cody Wofsy, ACLU, for the plaintiffs.
12            MR. JADWAT:  Omar Jadwat, ACLU, for the plaintiffs.
13            MR. KIM:  Good morning, your Honor.  SangYeob Kim
14   for plaintiffs.
15            THE COURT:  Nice to see you.
16            MR. BISSONNETTE:  Good morning, your Honor.  Gilles
17   Bissonnette on behalf of plaintiffs.
18            THE COURT:  Thank you.
19            MR. KLEMENTOWICZ:  Henry Klementowicz, ACLU of
20   New Hampshire for plaintiffs.
21            MS. LEUNG:  Good morning, your Honor.  Kimberly
22   Leung for plaintiffs.
23            MS. CALDWELL:  Good morning, your Honor.  Elizabeth
24   Caldwell for the NAACP Legal Defense Fund.
25            MS. BURRELL:  Good morning, your Honor.  Ashley
```

1    Burrell for the NAACP Legal Defense Fund for plaintiffs.

2              THE COURT:  Welcome.

3              Who's speaking primarily for the plaintiffs today?

4              MR. WOFSY:  That will be me, your Honor.

5              THE COURT:  All right.  That doesn't mean anybody

6    else can't be heard if they -- if they want to be heard.

7    Anybody can speak and chime in.  Just get my attention, and

8    that's fine, but I'll primarily hear from you.

9              All right.  Defense counsel?

10             MR. ENSIGN:  Good morning, your Honor.  Drew Ensign

11   for the defendants.

12             MR. ROSENBERG:  Good morning, your Honor.  Brad

13   Rosenberg from the Department of Justice, Civil Division,

14   Federal Programs Branch, on behalf of the defendants.

15             THE COURT:  Thank you.  And you'll -- are you

16   primarily addressing the Court today?

17             MR. ENSIGN:  Yes, your Honor.

18             THE COURT:  Same goes for both of you, though.

19   Anybody who wants to be heard, just get on your feet.

20             All right.  So we're here on a motion for

21   preliminary injunction regarding the birthright citizenship and

22   executive order.

23             I have a couple questions just to get started.  I'm

24   going to give you both all the time you want to argue, but I

25   want to -- there's a few things I want to clear up first.

1              You know, usually when I get a preliminary

2    injunction motion or a TRO motion, I sort of jump on it very

3    quickly, take control, and try to work out a plan.  But you

4    presented -- either working collaboratively or something, you

5    worked out a plan very quickly and it was sort of a fait

6    accompli, which has been a little bit difficult to manage

7    because I'm in the middle of a jury trial in the district of

8    Vermont.  We took a morning off from that to do this, which is

9    fine, but one thing -- usually one of the decisions we make is

10   do we want to have an evidentiary hearing or do we want to

11   proceed by affidavits or live witnesses, cross-examination

12   after an affidavit, what do you -- we worked that out.

13              It appears that you've -- it appears that you don't

14   want to present evidence today, neither side.  That's correct,

15   right?

16              MR. WOFSY:  That's correct, your Honor.

17              MR. ENSIGN:  That's correct for defendants as well.

18              THE COURT:  All right.  So I assume then that means

19   that I can make findings of fact based on the allegations in

20   the complaint; is that -- is that fair to say?

21              That's probably a question I should ask you.

22              MR. ENSIGN:  Your Honor, I'm not sure you can make

23   them on the complaint, but I believe you could make them on the

24   affidavits that --

25              THE COURT:  On the affidavits --

1           MR. ENSIGN:  Yes.

2           THE COURT:  -- that support them.

3           All right.  Thank you.

4           And then there doesn't appear to be much of a

5     disagreement regarding the facts.  This is -- these are

6     primarily legal arguments, interpretative arguments, regarding

7     the Fourteenth Amendment and statutes.  So that's the way I'm

8     approaching it.  All right?

9           Problem?

10          MR. ENSIGN:  No, your Honor.

11          THE COURT:  Okay.  All right then.

12          Here's a -- here's a factual -- here's a mixed

13    question of law and fact, but it's mostly a factual question

14    that I don't know the answer to and I want to make sure I

15    understand it.  And if there are immigration experts on either

16    side, this is probably in their bailiwick, so if you want to --

17    if that's you, that's great, but if you want to hand it off,

18    that's fine.

19          Let's assume for a minute that I deny this motion

20    for an injunction and either on appeal to the Ninth Circuit the

21    Washington injunction was vacated and the Maryland injunction

22    was vacated, and let's assume there just be no ruling enjoining

23    this conduct and the litigation proceeded.  Let's just assume

24    it took maybe, say, almost a year for the U.S. Supreme Court to

25    decide the issue.

```
 1              Children born after the 19th, on or after the 19th,
 2    would presumably not receive documents that afforded them
 3    birthright citizenship.  Down the road several months or a
 4    year, the U.S. Supreme Court agrees with the plaintiffs'
 5    position and says, no, the Fourteenth Amendment and the
 6    statute -- and/or the statute -- confer birthright citizenship
 7    to the people affected by the executive order, children born
 8    after the 19th -- on or after the 19th.
 9              Would those -- would those children be somehow
10    automatically retroactively conferred birthright citizenship or
11    would their -- or would they require to be -- they wouldn't
12    have received documents that certified that or would they
13    require some type of naturalization, some type of conferring
14    citizenship status on them?
15              I don't know the answer to that question as a matter
16    of immigration law.  Do you?  Do you know what the answer is?
17              MR. WOFSY:  I can speak to it.  I mean, obviously
18    we're at a very preliminary stage here and so --
19              THE COURT:  Yeah.
20              MR. WOFSY:  -- the government may have more
21    information about how they're planning to implement all of
22    this, but birthright citizenship isn't a matter of kind of
23    receiving a particular kind of document.  Just the fact of
24    being born in the United States is enough to confer birthright
25    citizenship under the Fourteenth Amendment.
```

1                    THE COURT:  Yup.

2                    MR. WOFSY:  And so -- and, you know, folks will

3      still have birth certificates, for example, as evidence that

4      they were, in fact, born in the --

5                    THE COURT:  In the U.S.

6                    MR. WOFSY:  -- United States.

7                    And so I don't think that there is going to be some

8      problem with recognizing the citizenship of these children once

9      this litigation is put to rest and the Fourteenth Amendment

10     sort of continues to be recognized.

11                   I think that the problem is in that in-between

12     period, during that --

13                   THE COURT:  Yup.

14                   MR. WOFSY:  -- year that your Honor's talking about

15     or however long, where folks are not -- are not recognized by

16     the executive branch as citizens, they're going to be subject

17     to that whole panoply of harms that we've talked about,

18     including arrest and detention and even deportation, as

19     supposed noncitizens.

20                   So that's kind of my understanding.  The government

21     may have more information about how they're thinking about

22     this.

23                   THE COURT:  All right.  And so it's clear, my

24     question isn't so much identifying a problem.  I'm just

25     wondering more about a process.

1                    MR. WOFSY:  Yeah.

2                    THE COURT:  But it sounds like you're saying you

3       don't know the government's plan, but you don't think it would

4       require a process because I guess birth documents that

5       demonstrate birth within the U.S. would somehow

6       automatically -- automatically inure, right, birthright

7       citizenship.

8                    MR. WOFSY:  That's how it works now is that, for

9       example, if you apply for a passport, which is one of the

10      classic kind of federal indicia that a person is a citizen,

11      what you would show is here's my birth certificate showing I

12      was born in the United States.  And the birth certificate

13      doesn't necessarily say this person is a citizen; it says this

14      person was born in Concord on X date.

15                   THE COURT:  Understood.

16                   Counsel, different answer, same answer?

17                   MR. ENSIGN:  It's a little tricky, your Honor,

18      because that's a question of implementation and the -- the

19      Western District of Washington issued a TRO and then PI that

20      prevents the United States from taking any steps to implement

21      the executive order.

22                   THE COURT:  Yup.

23                   MR. ENSIGN:  And so as to the nuts and bolts of how

24      it would operate, that's a little unclear because the -- the

25      executive branch isn't allowed to develop answers to those

1   questions.

2          That said, I'm not aware of any limitations on the

3   equitable powers of the Court to clear up any obstacles that

4   might present themselves --

5          THE COURT:  Sure.

6          MR. ENSIGN:  -- to retroactive -- like to

7   retroactive restoration of citizenship if plaintiffs were to

8   prevail in the -- you know, on their ultimate challenge.

9          THE COURT:  So, thank you, but what -- would that --

10  would that -- a court order, equitable order that retroactively

11  restored citizenship, would that -- I'm not trying to be cute

12  here.  I really want to understand this.

13         Would that amount to naturalization or would that

14  amount to something different like, I guess, retroactive --

15  retroactive resumption of birthright status?  Do you have an

16  opinion about that?

17         MR. ENSIGN:  Your Honor, I don't have a definitive

18  one conceptually.  I don't see why the Court's equitable power

19  couldn't restore the status quo ante.  I mean, that's typically

20  how courts would do.  Conceptually, within the existing boxes,

21  that's not naturalization but, rather, a recognition of --

22         THE COURT:  Okay.

23         MR. ENSIGN:  -- the facts as they were.

24         THE COURT:  The reason I ask, and this is -- the

25  reason I ask, because it's not really addressed in the papers,

1    your papers, and -- or the other decisions that have been

2    issued, is that, you know, there's such thing as

3    denaturalization.  And if -- if a person had to be naturalized,

4    that person could always be denaturalized.  And denaturalized

5    citizens are subject to deportation under some circumstances.

6              I was wondering about these plaintiffs, if they

7    would have that status of once naturalized -- of being

8    naturalized citizens rather than birthright.  And it sounds

9    like -- it sounds like you both believe the Court can fashion

10   an order that would amount to at least a functional equivalent

11   of birthright citizenship.

12             MR. WOFSY:  If I could just weigh in on that

13   briefly, your Honor?

14             THE COURT:  Sure.

15             MR. WOFSY:  So, yeah, we do not think that there

16   would be an exercise of the naturalization power which is given

17   to Congress.  Obviously, Congress can set sort of limits on --

18   on who's going to be naturalized and then, as your Honor points

19   out, can take that away as well.

20             Because birthright citizenship is a constitutional

21   guarantee, that's beyond the power of Congress.  It's beyond

22   the power of the denaturalization mechanisms.  The only way

23   that someone can become not a citizen is by renunciation, and

24   that's an entirely separate process that the Supreme Court has

25   spoken to.

1            But I do want to just flag one other kind of

2     practical consideration as we're thinking about this world --

3            THE COURT:  Yup.

4            MR. WOFSY:  -- which is that it could well be that

5     even though these -- these plaintiffs and other families are

6     recognized as citizens once the Fourteenth Amendment is again

7     sort of honored and this is all put to rest that there could be

8     residual harms.

9            And so I'll give you an example.  If some of these

10    babies, for example, are picked up by ICE and are subject to

11    some immigration proceedings --

12            THE COURT:  Yeah.

13            MR. WOFSY:  -- their fingerprints or their

14    information is now in ICE systems.  And we've seen this in the

15    past where U.S. citizens are subjected -- repeatedly,

16    actually -- to arrest by immigration enforcement.

17            And so it could be that even just kind of the

18    lingering effects of this unlawful application to citizens

19    could keep -- could sort of haunt these folks for years down

20    the road.  They get arrested, they get flagged in DHS databases

21    because of some, you know, error, some failure to clean things

22    up.

23            And so I think that there is a very real kind of

24    practical problem even though legally they are and will always

25    have been citizens under the Constitution and Congress can't

1    take that away.

2              THE COURT:  Understood.  All right then.  Thank you

3    for those preliminary answers.

4              This is your motion.  I'll let you proceed.

5              MR. WOFSY:  May it please the Court.

6              This executive order is a fundamental attack on the

7    Constitution and on the bedrock American value of birthright

8    citizenship.  It threatens to strip from thousands of U.S.-born

9    babies both their equal membership in this society and to

10   impose on them and their families a raft of extremely grave

11   injuries.  It's straightforwardly illegal under *Wong Kim Ark*

12   and the citizenship statute and we'd ask the Court to enjoin

13   that.

14             I'd like to begin with the Court's question posed on

15   Friday.  As we've laid out in our supplemental brief, the two

16   decisions rendered in Washington and in Maryland support us on

17   all the preliminary injunction factors and I just want to

18   emphasize that courts issue these kinds of injunctions all the

19   time, even when there's another existing injunction in another

20   court --

21             THE COURT:  Yeah.

22             MR. WOFSY:  -- and that's because those other

23   injunctions could be reversed, modified, as your Honor pointed

24   out, stayed.  And, of course, here, the government has already

25   sought almost a complete stay of the Washington injunction.

```
 1    It -- the government has said it has not quite decided what it

 2    wants to do in the Maryland litigation.  Obviously, that's cold

 3    comfort to these plaintiffs.

 4              And so, you know, for all those reasons, if the

 5    order were to go to in effect, as your Honor noted, the harms

 6    would be immediate; constitutional injuries, the threat of

 7    arrest and potentially deportation, the fear that goes along

 8    with that.  And then, as we've noted, there's also a current

 9    harm, and that's just the harm of the anxiety of knowing that

10    those other injunctions could be yanked away at any moment

11    because of things that may have nothing to do with these

12    organizations and their members.

13              I think that it is important that it's a

14    particularly sort of emotional, vulnerable moment for these

15    families.  Folks are expecting new babies, sometimes within

16    weeks.  They're going to be taking care of newborns.  It is an

17    intense period just in any family's life and I think that this

18    is just layering fear and anxiety on top of it.  And the

19    government has offered no reason why an injunction would harm

20    them.  In fact, if the other injunctions remain in place,

21    they're just prohibited from doing what they're already

22    prohibited from doing.

23              So for all those reasons, we do think we've made an

24    adequate showing on irreparable injury and so we think an

25    injunction's appropriate.
```

1              Unless the Court has questions on that issue --

2              THE COURT:  I don't.

3              MR. WOFSY:  -- I'll turn to the constitutional

4     merits.

5              And I want to just start by stepping back and

6     observing the stark mismatch between the arguments that the

7     government has offered and the rule that it's trying to defend

8     here.

9              Most of the arguments in the government's brief

10    were, as we've pointed out, squarely made and rejected in *Wong*

11    *Kim Ark*.  I, candidly, don't really understand how the

12    government can argue this case as though it's 1897 and we're

13    briefing *Wong Kim Ark* for the first time, but beyond that,

14    those arguments prove far too much.  They would all indicate

15    not that just the children of these categories of noncitizens

16    are outside the citizenship clause, but, in fact, that the

17    children of all noncitizens would be, and even the children of

18    dual nationals, U.S. citizens who are also nationals of another

19    country.

20             And so, you know, the implications are radical, and,

21    of course, that's also exactly what *Wong Kim Ark* rejected.  So

22    I think that the Court can just pass by all those arguments.

23    We may hear more about those today, about *Elk,* about the 1866

24    Act, but I think that all that is squarely rejected in *Wong Kim*

25    *Ark*.

1          And so the flip side of that is that there's also

2    nothing in the government's papers to actually justify the

3    lines that they do draw, that is, temporary visitors and

4    undocumented people.  I mean, there is no constitutional

5    rationale that they offer, if you accept *Wong Kim Ark,* that

6    would exclude undocumented families from the citizenship

7    clause.  And -- and so I think *Wong Kim Ark* clearly applies to

8    that category and for that reason they don't offer any

9    constitutional rule that this Court I think could accept.

10          So turning to temporary visitors, which is really

11    the focus, I think, of the government's briefing, the bottom

12    line is that there is no requirement of domicile in the text of

13    the Fourteenth Amendment.  And *Wong Kim Ark* explains what

14    subject to the jurisdiction means; it means subject to our

15    laws, immigration laws, criminal laws and so forth.  Temporary

16    visitors clearly are.  And so the -- the government's primary

17    argument on this is to point out that the opinion in *Wong Kim*

18    *Ark* uses the word domicile a number of times.  And we grant

19    that word is in the opinion, but I think it's critical to

20    understand the role that it's playing.  It is not establishing

21    some new constitutional requirement.

22          What the Court's really saying is that the case of

23    Wong Kim Ark, his parents were domiciled in this country, just

24    follows a fortiori, followed by necessity from the general rule

25    that the Court lays out.  And the rule is that all noncitizens,

1    with the exception of those categories that the Court

2    identifies, are subject to the power of the United States,

3    subject to the jurisdiction of the United States.  That was the

4    rule of common law.  That's the rule discussed in the *Lynch*

5    case, which was this very prominent common law decision before

6    the Fourteenth Amendment that gets discussed in the debates

7    about the Fourteenth Amendment, gets discussed at length in

8    *Wong Kim Ark.*

9            And I think that one of the keys to understanding

10   *Wong Kim Ark* in this way is Chief Justice Marshall's discussion

11   in the *Schooner Exchange*.  So in the *Exchange*, Marshall

12   explains the exception under international law the diplomatic

13   immunity exception and talks about why that exists --

14           THE COURT:  Yup.

15           MR. WOFSY:  -- and then goes on to extremely clearly

16   say in no uncertain terms that the same rationale does not

17   apply to other noncitizens who are in the United States,

18   whether that's for work, whether it's for pleasure, whether

19   they are on a merchant ship just pulling into port for the

20   first time, that those folks have to be subject to our criminal

21   laws, our immigration laws, our civil laws, and, therefore, are

22   under the jurisdiction of the United States.  And *Wong Kim Ark*

23   picks this up, endorses it, and says, when you look at the text

24   of the Constitution subject to the jurisdiction, what that

25   means is what Marshall explained in the *Schooner Exchange*.

1          And so I just think based on that there's no

2   question that under the rule in *Wong Kim Ark,* temporary

3   visitors are subject to the jurisdiction.  If there were any

4   doubt in that concluding -- you know, concluding paragraph at

5   pages 693 through 94, the Court, you know, runs through some of

6   its conclusions and ends by quoting language about how domicile

7   is not required to be subject to the jurisdiction.

8          So then why does the Court use the word domicile?

9   Again, I think it's just the Court saying if somebody on a

10  merchant ship pulling into port for the first time is subject

11  to the jurisdiction, then obviously somebody who's been here

12  for ten years, who's domiciled in the United States, who's made

13  it their permanent home, also has to be subject to the

14  jurisdiction.

15         So I think that at the end of the day, on the

16  Constitution, the government's argument is just that it

17  disagrees with *Wong Kim Ark*, that it thinks some portions of

18  it, I'm not sure which, are dicta.  But obviously that's not

19  for this Court to decide.  This Court is bound by *Wong Kim Ark*.

20         THE COURT:  What's your position about undocumented

21  aliens who entered not under the color of law who intend to

22  remain in the United States for the rest of their lives?  Are

23  they domiciled in the U.S.?

24         MR. WOFSY:  Sorry.  I missed the first part of your

25  question.  Undocumented --

1          THE COURT:  Undocumented aliens not here lawfully --

2          MR. WOFSY:  Right.

3          THE COURT:  -- who intend to remain here the rest of

4   their lives.

5          MR. WOFSY:  Right.

6          THE COURT:  Are they domiciled in the U.S.?

7          MR. WOFSY:  Absolutely.  I mean, under any

8   interpretation of domicile that anybody has pointed to and that

9   I'm aware of, you know, the traditional interpretation of

10  domicile, the meaning of domicile, is where you live and where

11  you intend to remain indefinitely.

12         THE COURT:  Yeah.

13         MR. WOFSY:  And so, plainly, that's the overwhelming

14  majority of the undocumented population.  But, of course, that

15  also doesn't matter for purposes of the citizenship clause

16  because there is no domicile requirement.

17              And so I think as your Honor's question I think

18  suggests, the argument as to undocumented people is sort of

19  doubly flawed.  There's no domicile requirement, and if there

20  were --

21         THE COURT:  They're domiciled.

22         MR. WOFSY:  -- they're domiciled.

23         THE COURT:  The parents.

24         MR. WOFSY:  And I -- and I don't really understand

25  any argument to the contrary in the papers.

1          So, all of that, I think --

2          THE COURT:  Well, I think the defendants have made

3    an argument to the contrary on the idea of domicile, but I'll

4    let them develop it and I'll let them tell me about it.

5          MR. WOFSY:  I'll just say the only case that they

6    cite on this, for the undocumented piece of it, in their papers

7    is a case that is not about the citizenship clause.  It's about

8    a state constitution.  It's not about the word domicile.  It's

9    about another term in the state constitution.  It's an

10   intermediate appellate court.  It basically has nothing to do

11   with this case.  So, to me, that lack of authority speaks

12   volumes, but, obviously, the government may have more to say

13   about that.

14         THE COURT:  Yup.

15         MR. WOFSY:  So under a direct application of *Wong*

16   *Kim Ark*, we win on the constitutional claim.  That's obviously

17   what the other courts that have looked at this issue have done

18   is ruled on the Constitution.

19         I do want to address the statutory claim because I

20   think it's important.

21         THE COURT:  Please.

22         MR. WOFSY:  As we pointed out in our, you know,

23   supplemental briefing, it's something that has not really

24   gotten play in some of the other cases.

25         THE COURT:  Well, the phrase is the same phrase in

1    the statute and the Constitution.

2            MR. WOFSY:  The phrase is the same phrase.  Our

3    point about it is simple, which is just that when you're

4    looking at language in a statute like this, it incorporates the

5    meaning -- settled meaning, the general understanding, of that

6    language at the time that the statute is enacted.  And so, for

7    us, that's 1940 and then 1952.  This is, you know, bread and

8    butter statutory interpretation.

9            THE COURT:  Just basic --

10           MR. WOFSY:  Right.  And so we think it's important

11   to address this, though, because really what's happening is

12   that the president's order takes a radical violation of the

13   Fourteenth Amendment and piles on top of it a serious violation

14   of the separation of powers --

15           THE COURT:  Yeah.

16           MR. WOFSY:  -- by contravening a statute that

17   Congress has enacted.

18           And so I take the government to basically make two

19   points in response.  They don't say much about this in their

20   papers.  But, first, they contest kind of the analytical

21   principle, which I agree is quite basic, and they say that

22   because the two phrases use the same words, they have to

23   continue to be interpreted in lockstep as time goes on.

24           There's no authority for that.  They cite none.  We

25   have -- in fact, none of their statutory cases are even about

1    that kind of situation.  We have two cases in particular --

2              THE COURT:  The Scalia-Garner Treatise is pretty

3    clear on this.

4              MR. WOFSY:  Right.  Okay.

5              THE COURT:  You know, it's funny.  I'd never heard

6    the term old soil and, you know, I teach statutory

7    interpretation.  And, as a matter of fact, on my way to Vermont

8    today, I've got to stop at BC Law to teach my class.  We do a

9    whole class on -- sort of in pari materia reasoning and

10   incorporating, but I've never heard it referred to as old soil

11   until this case.  It seems to be a very common way to refer to

12   it.  But the idea, as I understand it, is when a statute --

13   when a legislature borrows language, it borrows it with the

14   judicial understanding that's already part of the statute and

15   adopts it.  And --

16             MR. WOFSY:  Right.

17             THE COURT:  -- that seems to make sense to me.  I

18   don't think that can ever overcome clear textual meaning if it

19   means something different, but it does seem to be very well

20   accepted law.

21             MR. WOFSY:  I totally agree.  And we have a couple

22   of examples in the briefing that I'm sure your Honor has taken

23   a look at, the *Loughrin* case and the *Kozminski* case, that I

24   think are basically on all fours here.  So that's the

25   interpretive principles.

```
 1              And then the second response they make is, well,

 2   that maybe the understanding wasn't quite so settled at the

 3   time.  And I just think we have exceptionally strong evidence

 4   in this case.  This is a fairly common kind of interpretive

 5   mechanism and a lot of the times what it looks like is that

 6   there are some decisions out there and we presume that Congress

 7   is aware of them.  Sometimes that's a little bit of a legal

 8   fiction; who knows what --

 9              THE COURT:  But it's one that's recognized and

10   applied --

11              MR. WOFSY:  Right.

12              THE COURT:  -- frequently.

13              MR. WOFSY:  Right.

14              THE COURT:  But let's give credit to their argument.

15              MR. WOFSY:  Okay.

16              THE COURT:  What if -- what if, when the NIA was

17   adopted, it was -- it was -- the public understanding of the

18   phrase jurisdiction of the United States was different than

19   when the -- than when the amendment was interpreted by the

20   Court.  What if it's just understood differently?

21              MR. WOFSY:  That --

22              THE COURT:  Does that ordinary meaning overcome the

23   old soil idea?

24              MR. WOFSY:  I think that when we're talking about

25   this phrase, it's clearly a term of art.  It's not just sort of
```

1    the general understanding of those words.  It's those words in

2    the context of the Fourteenth Amendment.

3            THE COURT:  You mean jurisdiction of the

4    United States.

5            MR. WOFSY:  Yes --

6            THE COURT:  All right.

7            MR. WOFSY:  -- subject to the jurisdiction, exactly.

8            And -- but I think that the evidence here is so

9    strong that any kind of hypothetical about other -- other

10   situations is a little besides the point.

11           Let me just point out a couple pieces of the record

12   here in terms of what happened in 1940.

13           So we cite the president's message and the report

14   that comes with it.  The 1940 Act was drafted as a way to sort

15   of rationalize the nationality laws that were a little

16   scattered at that time by the executive branch.  And there's a

17   message from the president in a long report sort of going

18   through provision by provision.  We point to this on point 9 --

19   on page 9 of our motion.

20           And in that message, the -- the drafters talk about

21   this exact question.  They say the language comes from the

22   Fourteenth Amendment.  They point to *Wong Kim Ark.*  They point

23   to the *Lynch* case, which, again, was the common law case saying

24   that visitors are -- children of visitors are citizens and they

25   specifically say domicile is not a requirement to become a

1     citizen under the Fourteenth Amendment.

2               You can also take a look at the Flournoy article.

3     Mr. Flournoy was one of the drafters of the 1940 Act.  He

4     testified in Congress about these specific provisions.  That's

5     also on page 9 of our brief and on page 10 we cite the article.

6     And in this article he had written, he in even more depth walks

7     through exactly the kinds of arguments that defendants are

8     advancing today and say, this is wrong, here's what *Wong Kim*

9     *Ark* means, domicile is not required, temporary visitors'

10    children are U.S. citizens under the Fourteenth Amendment.

11              And so I just think given the ways in which this

12    canon is generally applied, this is an exceptionally,

13    exceptionally strong case.  We have first-person evidence, we

14    have the actual issues laid out in front of Congress, and then

15    they end up adopting that text.

16              The government has not responded to any of these

17    sources.  It has had, at least so far, nothing to say about

18    this -- this really compelling history.

19              And so for all those reasons I do think it would be

20    beneficial for the Court to reach that statutory claim and to

21    make clear that this is illegal not only under the Constitution

22    but also under the statute and sort of have that be part of the

23    judicial conversation that's beginning as the case moves up

24    into the Courts of Appeals.

25              THE COURT:  Understood.

1              MR. WOFSY:  So I don't want to belabor the equities.

2    We talked about them a little bit.  I just want to make a

3    couple of points.

4              The government does not contest --

5              THE COURT:  The equities don't seem like a hard

6    issue.  I mean --

7              MR. WOFSY:  I appreciate that.

8              THE COURT:  -- it's continuing a status quo for over

9    a century for what amounts to a few more months or year or not.

10   So it doesn't --

11             MR. WOFSY:  Exactly.

12             THE COURT:  And that's not to say I'm ruling out

13   your argument on the equities.  I just want to -- it doesn't

14   appear to me to be a tough part --

15             MR. WOFSY:  Yes.

16             THE COURT:  -- of the analysis.

17             MR. WOFSY:  I completely agree.  And I'll just say

18   they don't contest our showings on the equities and they don't

19   contest some of the sort of key questions like are these babies

20   going to be subject to arrest as noncitizens --

21             THE COURT:  That was the reason I asked at the

22   beginning are they going to be subject to naturalization if --

23             MR. WOFSY:  Right.

24             THE COURT:  Right?  Because --

25             MR. WOFSY:  Right.

1           THE COURT:  -- you know, that's a different status

2    than birthright.

3           MR. WOFSY:  Right.

4           THE COURT:  Because you can't be stripped of your

5    birthright citizenship, but you can if you're naturalized.

6           MR. WOFSY:  I just want to make one more point about

7    the equities --

8           THE COURT:  Yup.

9           MR. WOFSY:  -- because I appreciate your Honor has

10   digested them, which is that there's really nothing on the

11   other side.  The only argument they make is this radical vision

12   of executive supremacy in this arena.  They say that the

13   president needs to have the flexibility to rewrite our

14   citizenship rules.  That is to rewrite the DNA of this country

15   of who counts as an American citizen.

16           And that is just not the Constitution that we live

17   under.  Under our Constitution, the Fourteenth Amendment

18   guarantees birthright citizenship and takes it out of the hands

19   of not only Congress but, obviously, also the president.  And

20   Congress has supplemented that by enacting the birthright

21   citizenship statute and the president can't undo that as well.

22   There is no authority for the president to eliminate

23   protections for birthright citizenship.  And so I think the

24   fact that that's their equities argument just further

25   underscores how important it is to enjoin this executive order.

 1                    Unless the Court has further questions --

 2                    THE COURT:  I don't.  Hold on a minute, actually.

 3                    No, I'm good, Counsel.

 4                    MR. WOFSY:  Okay.  Thank you.

 5                    THE COURT:  Mr. Ensign, please.

 6                    MR. ENSIGN:  May it please the Court.  Drew Ensign,

 7     Deputy Assistant Attorney General for the United States.

 8                    This case turns on the critical phrase "subject to

 9     the jurisdiction thereof" in the citizenship clause.  On that

10     issue, plaintiffs offer construction that relies overwhelmingly

11     on mere dicta from *Wong Kim Ark*, which is directly contrary to

12     the Supreme Court's holding in *Elk*.

13                    *Elk* is critically important here.  In that decision,

14     the Supreme Court squarely held that members of Native American

15     tribes are not subject to the jurisdiction of the United States

16     and are thus not entitled to birthright citizenship, even

17     though they are unequivocally subject to the regulatory

18     jurisdiction of the United States.  And *Elk* remains good law to

19     this day.

20                    As a result, members of tribes receive their

21     citizenship from a separate statutory grant rather than the

22     birthright citizenship of the citizenship clause.  And the

23     reason why tribal members are excluded from the citizenship

24     clause is exceptionally important and ultimately controlling

25     here.

1          In *Elk*, the Supreme Court held for the citizenship

2     clause to apply, persons must be "completely subject to the

3     political jurisdiction" of the United States, which is to say

4     that they owe "direct and immediate allegiance" to the

5     United States, unqualified by any "allegiance to a foreign

6     power -- or, sorry -- allegiance to an alien power."

7          That's 112 U.S. at 102.

8          The Supreme Court further explained that citizenship

9     turns partly on consent of the sovereign since "no one can

10    become a citizen of a nation without its consent."

11         The Supreme Court in *Elk* thus rejected birthright

12    citizenship for tribal members because of their divided

13    allegiances between the United States and their respective

14    tribes.  The Supreme Court has also long recognized that Indian

15    tribes form "an intermediate category between foreign and

16    domestic states."

17         And that's from the *Coughlin* case we've cited.

18         THE COURT:  Yup.

19         MR. ENSIGN:  And so if allegiance to a tribe is

20    insufficient to satisfy the requisite "direct and immediate

21    allegiance" to the United States, then being a citizen of a

22    foreign power, which is to say an even more distant power, with

23    any -- without any permanent ties to the United States is

24    necessarily insufficient, too.

25         Notably, the *Wong Kim Ark* case on which plaintiffs

1    place overwhelming reliance makes clear that *Elk* remains good

2    law.  It further explains the citizenship clause applies only

3    to those "in the allegiance and under the protection of the

4    country," and that's at 693, thus reiterating the dispositive

5    allegiance test of *Elk*.

6              *Wong Kim Ark* similarly explains that "two things

7    usually concur to create citizenship:  First, birth locally

8    within the dominions of the sovereign; and second, birth ...

9    within the ligeance of the sovereign."

10             Ligeance is ancient word that is synonymous with

11   allegiance.

12             THE COURT:  Yup.

13             MR. ENSIGN:  I had to look it up.

14             But other points --

15             THE COURT:  I didn't look it up, but it just sounded

16   similar enough to me that I thought, yeah, it's allegiance.

17             MR. ENSIGN:  It is, indeed, your Honor.

18             THE COURT:  Yeah.

19             MR. ENSIGN:  But under plaintiffs' reading of the

20   citizenship clause, the second part of that test is just

21   obliterated.  And that's from *Wong Kim Ark* itself.

22             And so for all these reasons, plaintiffs' extensive

23   reliance on dicta from *Wong Kim Ark* is misplaced.  And that's

24   particularly so because *Wong Kim Ark* itself stresses that dicta

25   should not be regarded as binding since "general expressions in

1    every opinion are to be taken in context -- taken in connection

2    with the case in which those opinions are expressed."

3              And that's at 679.

4              And in that case, the question presented was

5    explicitly limited to whether a child whose parents had "a

6    permanent domicile and residence."

7              THE COURT:  Counsel, I'm going to ask you to slow

8    down just a little bit for the court reporter.

9              MR. ENSIGN:  Thank you, your Honor.

10             THE COURT:  Just a little bit.

11             MR. ENSIGN:  And so *Wong Kim Ark,* explicitly the

12   question presented in it, has lawful permanent residence.  And

13   that -- that is the holding of *Wong Kim Ark*.  The executive

14   order does not displace that whatsoever and that continues to

15   be good law.  Anyone that's a child of lawful permanent

16   residents continues to enjoy birthright citizenship in the

17   United States and that -- that remains the case to this day.

18             You know, I think opposing counsel flagged that we

19   had no, you know, principal basis for line-drawing, but the

20   line that's being drawn is by the Supreme Court itself in *Wong

21   Kim Ark*.  It drew that line of what is the requisite allegiance

22   to the United States that satisfies the citizenship clause as

23   being lawful permanent members -- the lawful permanent

24   residents of the United States.

25             And so that line continues to this day and that --

1    that's a line that's already been drawn by the Supreme Court

2    and the executive order just merely reflects that -- the

3    Supreme Court's own line.

4            You know, I think, further, that the -- the

5    president's reading of the citizenship clause to exclude those

6    lacking a permanent a connection to the United States and,

7    thus, the requisite allegiance is confirmed by the Civil Rights

8    Act of 1866.  The very same Congress that drafted the

9    Fourteenth Amendment just a few months prior adopted language

10   that provided for birthright citizenship to persons "born in

11   the United States and not subject to any foreign power,

12   excluding Indians not taxed."

13           That language has an explicit allegiance requirement

14   and there's every indication that Congress intended the

15   Fourteenth Amendment to codify and constitutionalize the

16   standard which simplifies the language concerning both foreign

17   powers and Indian tribes to the simple "subject to the

18   jurisdiction thereof" language.

19           Notably, contemporaneous statements from both

20   Senator Trumbull and Representative Wilson confirm this

21   reading.  And, indeed, it would be fairly bizarre for Congress

22   to set out to render a statute, that it had just enacted months

23   before, unconstitutional without so much as uttering a single

24   word that that's what its counterintuitive intent was.

25           THE COURT:  So you're into the legislative history

1  now.  Right?

2          MR. ENSIGN:  Yes.

3          THE COURT:  I should assume then that you view the

4  statute as ambiguous because otherwise you wouldn't be into

5  legislative history, right?  You'd be focused on text and not

6  going beyond text.  At least that's my practice, generally.  I

7  don't generally go into legislative history unless -- I don't

8  generally go into legislative history at all, if you want to

9  know the truth, but if I did, I would require ambiguity.  So it

10  sounds like you're telling me you think the act is ambiguous.

11          MR. ENSIGN:  Not exactly, your Honor.  I think I --

12  the history being used here is to construe the -- the text of

13  the Fourteenth Amendment itself and it's part of the history

14  being used --

15          THE COURT:  Okay.

16          MR. ENSIGN:  -- to construe it rather than the Civil

17  Rights Act, which is actually no longer in force.

18          THE COURT:  So I guess then what I'm -- yeah, good

19  point.

20          What I guess, then, though -- so this is an argument

21  construing the Fourteenth Amendment.  So I guess in that

22  respect then I should view the Fourteenth Amendment and the act

23  under the -- the act under which the statute's brought, under

24  which it's challenged, I should say, is -- they're parallel.

25  They use the identical language.  It's the same analysis.

1          MR. ENSIGN:  I believe so, your Honor, if you're

2     talking about the 1940 Act.

3          THE COURT:  Yeah.

4          MR. ENSIGN:  I mean, certainly our view is that when

5     you use identical words, you intend the same meaning.  And,

6     indeed, it's quite odd -- the strangest thing in the world to

7     do is if you intend a different result than existing text would

8     be to adopt identical language.  And so it's a very well

9     established canon of construction that the same words should be

10    given the same meaning.

11         And so as to that 1940 Act, the fact that they

12    adopted the same language as the Fourteenth Amendment means

13    that they intended the same results.

14         THE COURT:  Understood.

15         MR. ENSIGN:  You know, they also go into

16    codification, but I think that's really an exercise in

17    question-begging because it -- you know, as of 1940, the

18    allegiance test of *Elk* remains good law.  And one thing we know

19    is that -- I mean, their test is that "subject to the

20    jurisdiction thereof" means subject to the regulatory

21    jurisdiction of the United States.  But we know that that

22    construction is wrong, and unequivocally so, for at least two

23    reasons.  You know, first we can look to members of Native

24    American tribes who are absolutely subject to the regulatory

25    jurisdiction and --

```
 1              THE COURT:  A little bit.
 2              MR. ENSIGN:  Thank you, your Honor.  You're not the
 3   first judge to tell me that.
 4              THE COURT:  And I received that constantly when I
 5   was practicing, so I understand.  We've just got to do our best
 6   because we need a good record.
 7              Go ahead.
 8              MR. ENSIGN:  Thank you, your Honor.
 9              So we know subject to the jurisdiction of the
10   United States doesn't mean subject to the regulatory
11   jurisdiction since for Native American tribes they're clearly
12   subject to the regulatory jurisdiction of Congress.  And
13   that -- not only that, they're clearly subject to the Equal
14   Protection Clause of the Fourteenth Amendment.  So subject to
15   the jurisdiction has to mean something other than subject to
16   the regulatory jurisdiction.
17              Let me give you another example that's not
18   challenged here.  It's well recognized that children born on
19   boats in the territorial waters of the United States are also
20   not entitled to birthright citizenship under the citizenship
21   clause, but the territorial waters of the United States are
22   clearly subject to the regulatory jurisdiction of the
23   United States.  I mean, you know, if you are in the territorial
24   waters of the United States and you harpoon a whale in front of
25   the Coast Guard, you are absolutely going to be staring down,
```

1    you know, a prosecution under the Marine Mammal Protection Act.

2    And so we know for a fact that "subject to the jurisdiction

3    thereof" has never meant simply subject to the regulatory

4    jurisdiction of the United States.

5            So even if you thought the 1940 Act was codifying

6    something, it's not codifying their, you know, construction of

7    the word just as equivalent subject to regulatory power because

8    it has never been that and is not currently that, even to this

9    day.  So it must mean something else, and we -- you know, we

10   read it as the Supreme Court does.

11           *Elk* imposes an allegiance test and *Wong Kim Ark*

12   draws the line and says children of lawful permanent residents

13   have sufficient allegiance to the United States to satisfy that

14   allegiance test.

15           I believe opposing counsel raised dual citizens, but

16   that's answered by *Wong Kim Ark*, too.  If someone is a lawful

17   permanent resident and that is sufficient to satisfy the -- you

18   know, the requisite allegiance test, a dual citizen necessarily

19   has an even stronger connection to the United States and so,

20   you know, therefore, satisfies that *Elk* allegiance test even

21   more strongly than a lawful permanent resident.

22           I think it's also important to note here that we are

23   here on a facial challenge.  The -- these executive orders have

24   never been applied to anyone and the plaintiffs are challenging

25   them on their face.  Therefore, the *Salerno* no set of

1    circumstances test applies and there are certainly

2    circumstances where this could apply, you know.

3            And, you know, certainly if you look at the actual

4    holdings of the *Elk* and *Wong Kim Ark*, you know, the allegiance

5    test is such that if you had someone that, for example, came to

6    the United States on a 30-day visa with the express intent of

7    violating, you know, that visa, overstaying it, for the

8    specific purpose of, you know, exploiting the citizenship

9    clause, that is certainly, you know, within the allegiance test

10   of *Elk*, a circumstance that would defeat the *Salerno* no set of

11   circumstances test.

12           And so there may be as-applied challenges they can

13   bring down the road, but while we're here on a facial

14   challenge, they would have to show that no set of circumstances

15   exist which -- where the executive order could be applied in a

16   constitutional way and they don't even purport to satisfy that

17   standard yet.

18           Finally, your Honor, just on the equities, I would

19   note that --

20           THE COURT:  Please, yeah.

21           MR. ENSIGN:  -- defining -- you know, recognition of

22   citizens is a core sovereign power of any state.  You know, the

23   United States necessarily suffers harm anytime that it's forced

24   to recognize a citizen -- someone as a citizen against its

25   consent.  You know, if this Court were, for example, to dictate

1    to Switzerland who it must recognize as citizens, Switzerland

2    would obviously think that it has suffered sovereign injury in

3    that context.  And so because a core aspect of sovereignty is

4    the recognition of citizenship, the United States has

5    irreparable harm that would have to be balanced.

6            THE COURT:  Understood.

7            MR. ENSIGN:  Thank you, your Honor.

8            THE COURT:  Mr. Wofsy -- how do I pronounce your

9    name correctly?

10            MR. WOFSY:  Wofsy.

11            THE COURT:  Wofsy.  Please.

12            MR. WOFSY:  Thank you, your Honor.

13            Just wanted to make a few points and obviously

14    answer any questions the Court may have.

15            THE COURT:  Start with the -- start with the basis

16    for your statutory claim, whether there's a cause of action.

17            MR. WOFSY:  Yes, absolutely.

18            So we have a clear cause of action in equity.  This

19    is a long-standing principle.  It's been, you know, exercised

20    by the Supreme Court a number of times.  The *Youngstown* case,

21    obviously very famous, and is an example of that.  And I think

22    that the government -- I didn't hear any response to that line

23    of authority in their presentation.

24            THE COURT:  All right.  But didn't in *Hawaii v.*

25    *Trump* the Supreme Court say we're not deciding whether there's

```
 1    a statutory cause of action here, we're just assuming it?
 2    Doesn't that raise the question?
 3                MR. WOFSY:  So -- so *Hawaii* was in a particular
 4    context of visa -- visa denials, and there's a whole doctrine
 5    that has to do with -- it's called consular nonreviewability --
 6                THE COURT:  Yeah.
 7                MR. WOFSY:  -- that has to do with whether you can
 8    review and sue over visa denials, has to do with things
 9    happening overseas and so forth.  This case has nothing to do
10    with that.  And so I don't understand *Hawaii* to have cast any
11    doubt on that --
12                THE COURT:  Oh.
13                MR. WOFSY:  -- and certainly not enough to override,
14    for example, the First Circuit's decision in the Rhode Island
15    case that we -- that we cite which, in turn, relies on the D.C.
16    Circuit's case, the decision in *Reich*.
17                I just think it would be extremely detrimental to
18    sort of foundational separation of powers to say that if the
19    president -- the president is out here violating federal
20    statutes, that that's something that courts have no power to
21    reach.  That sort of basic principle is something that's been
22    recognized over and over and over again in all of these cases
23    and *Hawaii* really did not undermine that at all.
24                Unless the Court has further questions on that.
25                THE COURT:  You've addressed it.
```

1          MR. WOFSY:  So I just want to make a few points in

2     response to the government's presentation.

3          So the first is about *Wong Kim Ark*.  Again, it's

4     this attempt to sort of reduce *Wong Kim Ark* to the particular

5     facts at issue there.  I -- I don't understand how you can see

6     the holding as anything other than the reasoning that the Court

7     offers in reaching the conclusion that Wong Kim Ark's parents

8     were subject to the jurisdiction and that he, therefore, was a

9     citizen.  And I've walked through that reasoning.  We didn't

10    hear any response to any of that, including the -- *Wong Kim*

11    *Ark's* specific -- specific gloss on the constitutional language

12    in terms of the analysis in the *Schooner Exchange*.

13         So I just think, you know, it's -- it's fine to

14    stand up and say we want it to go no further than its facts.

15    That's not an argument.

16         THE COURT:  Well, it's an argument.  It's just --

17    the question is how persuasive it is.  Right?  And that's --

18         MR. WOFSY:  It --

19         THE COURT:  I don't mean to be a wise guy, but I

20    view it as a good faith argument.

21         MR. WOFSY:  Fair enough.

22         The government relied extensively on *Elk*, called it

23    critically important.  But, again, you didn't hear anything

24    about what *Wong Kim Ark* said about *Elk*.  *Wong Kim Ark* said *Elk*

25    is specific to the Native American context.  That's a

1    constitutionally unique situation.  *Wong Kim Ark* called it

2    anomalous and said in no uncertain terms it has no implications

3    for eliminating the birthright citizenship of any other persons

4    outside of Native Americans.

5           We can talk about the ins and outs of the Native

6    Americans' situation.  It's obviously a sort of

7    constitutionally unusual situation where you have sovereign

8    nations who are within the United States.  I think you see some

9    grappling with that idea.  But what *Wong Kim Ark* says about it

10   is set the whole issue aside; *Elk* is not about noncitizens,

11   it's about Native Americans, period.  And, again, we heard no

12   response to that.

13          Likewise, with the 1866 Act, we pointed out in our

14   papers what *Wong Kim Ark* says about 1866.  The government is

15   saying 1866 has to be read in this narrow way and, therefore,

16   you have to read the Fourteenth Amendment in that narrow way,

17   too.  *Wong Kim Ark* rejects both of those points.  It says 1866

18   is as broad as the holding of *Wong Kim Ark* and it excludes

19   only, for example, people like diplomats' children.  And even

20   if it were narrower, the language is different, the legislative

21   background is different, the political dynamics are different.

22   And so you can't just kind of import some statements that

23   somebody made about this separate statute drafted by separate

24   people with a separate context into the Fourteenth Amendment to

25   contravene the clear text of that constitutional amendment.

1      Just briefly on the territorial waters, this isn't

2  something that the government briefed, but I'll just note, you

3  know, to the extent that somebody born out -- offshore is not

4  considered a birthright citizen, I would assume that would be

5  because they are not born in the United States.  So it's not

6  the subject to the jurisdiction clause; it's the "in the

7  United States" clause, because they are born in the ocean.

8           THE COURT:  Well, but in territorial waters, that's

9  the United States, isn't it?

10          MR. WOFSY:  Well, I think that would be the argument

11  one way or the other if you were contesting that question, but

12  the point is it has nothing to do with the question of somebody

13  who's born in --

14          THE COURT:  In.

15          MR. WOFSY:  -- Concord.

16          And then, finally, on *Salerno*, there are no legal

17  applications of this -- of this executive order.  We've

18  explained how every single one of the persons who would be

19  denied citizenship under the executive order who would

20  otherwise have it, that that is illegal, that that violates

21  both the Constitution and the statute.  And so I don't think

22  that the government gets any -- any mileage out of pointing out

23  that this is a facial challenge.

24          THE COURT:  Okay.  That -- that -- on the statutory

25  cause of action argument you made --

1          MR. WOFSY:  Yeah.

2          THE COURT:  -- I'm sure it's in your papers.  If

3    somebody has that cite to the Rhode Island case, can I get that

4    cite?

5          MR. WOFSY:  Yes, I do.

6          THE COURT:  Is it in your papers?

7          MR. WOFSY:  It's in our papers.

8          THE COURT:  What's the name of the case?

9          MR. WOFSY:  It's called *Rhode Island Department of*

10   *Environmental Management*, I think.

11         THE COURT:  Thanks.

12         MR. WOFSY:  I might be getting the name of the

13   department a little bit mixed up, but that is -- thank you.

14         304 F.3d 31.

15         THE COURT:  Thank you.  Okay.

16         MR. WOFSY:  Great.  Unless the Court has further

17   questions --

18         THE COURT:  I don't.

19         MR. WOFSY:  Thank you.

20         THE COURT:  Mr. Ensign, I'll give you the last word.

21         MR. ENSIGN:  A couple quick things, your Honor.

22         As to whether or not they have a cause of action,

23   this is not some -- a circumstance where this Court is just

24   kind of implying a cause of action in equity on a blank slate.

25         Congress has specifically challenged -- or, sorry,

1    channeled challenges regarding citizenship under Section 1503

2    in a particular -- in particular courts and in a particular

3    manner.  And so where Congress has done so, that -- the courts

4    are not free to imply causes of action that are, you know,

5    contrary to that, including -- either in equity under the APA.

6             You know, if Congress, for example, sets a statute

7    that you have to challenge -- aggrieved parties have to

8    challenge an FCC order in the Court of Appeals in 30 days, you

9    can't say, well, I'm outside of the zone of interest and 35

10   days have passed, therefore, I can bring a cause of action

11   under the APA or in equity to challenge the FCC rule in

12   district court.

13            Congress has specifically challenged them and,

14   notably, as the Fifth Circuit has recognized, the -- I'm

15   sorry -- that channeling is exclusive.  And so that 1503

16   challenge is meant to bring these sort of citizenship disputes

17   within the Section 1503 challenges and not open-ended causes of

18   action in equity.

19            Second, we disagree fundamentally about how *Wong Kim

20   Ark* should be read.  We think that *Wong Kim Ark* does, in fact,

21   reiterate the allegiance test of *Elk*.  I read language where --

22   from *Ark* -- from *Wong Kim Ark* that, you know, *Wong Kim Ark* says

23   that it applies with those in the allegiance and under the

24   protection of the United States.  It, you know, further

25   requires that birth be within the ligeance of the sovereign and

1    there is -- you know, there's other instances, too, where they

2    refer expressly to that allegiance test.

3            And so -- and far from tribes being sui generis, you

4    have to apply the logic of *Elk*.  It's -- tribes occupy an

5    intermediate status between foreign powers and domestic.  And

6    so for all of the reasons that divided allegiances with respect

7    to being tribal members ultimately disqualifies people under

8    the citizenship clause, it even more strongly does for an

9    outright foreign power.  Not an intermediate category, but an

10   outright foreign power.

11           And so we think that the logic of the Supreme

12   Court's recognition of tribes as occupying that intermediate

13   category necessarily means that for outright foreign powers,

14   the same logic applies for even stronger reasons.

15           THE COURT:  Thank you.

16           MR. ENSIGN:  Thank you, your Honor.

17           THE COURT:  All right.  Let me ask this question.

18   This is just procedural.

19           Obviously there may be an appeal here by either side

20   because this is an issue that's going to -- going to be

21   resolved fairly shortly by the United States Supreme Court one

22   way or the other.  By fairly shortly, I mean within a year.  My

23   order will not address every single argument you've made on

24   each side.  However, I -- I want to make sure you have the

25   record you want.

 1              Is there anything anybody wants to say to me today

 2    that they haven't had a chance to say?  I've got your papers;

 3    I've studied them carefully.  I've read the cases; I've studied

 4    them carefully.  But I don't want to -- I don't want to

 5    restrict you in any way on your appellate record.

 6              So is there anything anybody feels like they haven't

 7    had a chance to put before the Court that they'd like to say?

 8              Let's start with the plaintiffs.

 9              MR. WOFSY:  Thank you, your Honor.  I appreciate the

10    opportunity.

11              I haven't spoken to Section 1503, which the

12    government raised on surreply, but this is addressed in our

13    papers.

14              THE COURT:  It is.

15              MR. WOFSY:  I want to -- you know, obviously I don't

16    want to belabor it if your Honor has -- already has our

17    argument.

18              I think that just the short version is that there is

19    no indication that Congress intended to channel this kind of

20    challenge to an unlawful executive order sort of writ large,

21    re-creating the citizenship laws of the United States into this

22    kind of individualized process where you're giving agencies the

23    chance to look at particular factual circumstances.  It does

24    not make any sense.  We've cited cases that talk about how

25    similar kinds of administrative and sort of individualized

 1    regimes don't make sense for this kind of argument.

 2              So I think that's our bottom line.  We have a

 3    variety of cases on that.

 4              THE COURT:  Yeah.  Your papers address that for

 5    sure.

 6              MR. WOFSY:  Thank you.

 7              And then I do just want to pick up on counsel's

 8    allegiance point because I'm a little worried there could be

 9    some confusion about that.

10              *Wong Kim Ark* is very clear about this.  Somebody who

11    is subject to the jurisdiction of the United States is somebody

12    who is subject to the power of the United States and has a

13    reciprocal allegiance.  And that allegiance can be temporary.

14    And so what the Court says is for as long as a noncitizen is on

15    our shores, for as long as they're here, they're both subject

16    to the laws and they owe that kind of local allegiance.  What

17    that basically means is that they have the obligation to follow

18    the law and they can be punished if they do not follow the law.

19    That's all it means.

20              And so for -- for the government to try and turn

21    that into a way of kind of dividing categories of noncitizens,

22    that is just not present in the reasoning of *Wong Kim Ark* or in

23    any of the history.  And so I just think that that's an attempt

24    to kind of pull a word out and create this whole other

25    constitutional idea out of whole cloth that's not supported.

1            And then in terms of the Native American example,

2   again, *Wong Kim Ark* does say it's sui generis, but also the

3   idea is that there's sort of a mediated relationship, that --

4   that the United States doesn't sort of have the direct

5   relationship with a member of a tribe because that member of

6   the tribe is, first and foremost, sort of regulated by an

7   allegiance to the tribe itself and so there's this sort of

8   intermediate relationship there.

9            I think that the attempt to turn that into some kind

10  of connections test has no basis in *Wong Kim Ark.*  And, you

11  know, I -- I take your Honor's point that sort of legislative

12  history, you know, folks may look at it differently, but I do

13  think it's critical to understand that in -- in the debates

14  around the Fourteenth Amendment and the 1866 Act, everybody was

15  clear that the text would cover, for example, the Chinese

16  Nationals who were living in California at that time.  And the

17  government's argument that, well, if, you know, the

18  relationship between the United States and a tribe isn't good

19  enough, then how can it be good enough for somebody who's the

20  subject to a foreign country.

21           Well, of course, the Chinese Nationals they were

22  talking about were subject to a foreign country.  They were

23  subjects of China.  And Wong Kim Ark's parents, in the

24  stipulated facts, they were subjects of China.

25           So, again, this just goes back to the point I made

1    at the beginning about proving too much.  These theories that

2    they're offering would require *Wong Kim Ark* to have come out

3    the other way and there is no clearer basis of just rejecting

4    Supreme Court precedent than that.

5             Unless the Court has further questions, thank you

6    very much.  I appreciate it.

7             THE COURT:  Thank you, Counsel.

8             Mr. Ensign, same to you.  Anything you want to put

9    on the record?

10            MR. ENSIGN:  Very quickly, your Honor.

11            The central premise of plaintiffs' suit is that

12   "subject to the jurisdiction thereof" within the citizenship

13   clause means merely subject to the regulatory jurisdiction of

14   the United States.

15            THE COURT:  Yeah.

16            MR. ENSIGN:  That is unambiguously wrong, as

17   demonstrated by both the Native American tribe and the ships in

18   territorial waters examples.  And so they give you no other

19   construction that is defensible under Supreme Court authority

20   under which they can prevail, so we think it fails on that

21   basis.

22            By contrast, the United States has pointed to the

23   allegiance test of *Elk* and it's further pointed out how *Wong

24   Kim Ark* specifically applies that test in a way that you can

25   draw, you know, lines that can be applied, specifically draws

1    that line of lawful permanent residents.  That's sufficient

2    allegiance to qualify under *Elk*.  Less than that is not.  And

3    for that reason the executive orders are valid.

4                    THE COURT:  Yup.  All right, counsel.

5                    Nobody threw me any curve balls this morning that

6    you hadn't well presented in your papers.  There were no sort

7    of unwelcome surprises.  And I don't view the territorial

8    waters argument as some type of departure from your position.

9    It seems consistent and I understand your point.

10                   I'm going to grant this motion.  I'm going to grant

11   the injunction.  I had a pretty good idea I was going to do

12   that before your arguments, but I wanted to give you the

13   opportunity and ask you a few questions, particularly

14   interested in this issue of the status of children born during

15   the pendency of the litigation.  You've both answered it, with

16   candor, by the way, and that's appreciated.

17                   But I think the prosecution -- I think the plaintiff

18   has made the required showing to get a preliminary injunction

19   of likelihood of success on the merits, irreparable harm, and

20   the last two factors, which are often combined when it's a case

21   against the government, which is the equities and the public

22   interest.

23                   It's a little bit of a busy time because I've got to

24   get back to Vermont and get this jury going again.  However --

25   but I'm going to issue an order right away, this morning.  But

1   because of what's going on, it's probably going to take me a

2   day to get out an order that explains my reasoning.  So

3   there'll be an injunction issued today and an explanatory order

4   tomorrow, should be tomorrow at the latest, setting forth the

5   Court's reasoning.

6              I want to thank counsel here for your presentations.

7   And I mean this, and I'm not just being polite.  Some of you

8   practice here all the time, but not everybody, and your -- your

9   approach is very much appreciated.  Your written presentations,

10  excellent.  Your oral presentations, excellent.  The way you've

11  worked collaboratively, collegially, with a high degree of

12  professionalism, it's very much appreciated.

13             I'm not persuaded by the defendants' argument on

14  this motion.  Obviously I'm not; I'm granting the injunction.

15  But I have to say I'm not offended by them either, as a lawyer

16  or a jurist.  I think the rule of law is best served -- best

17  maintained and preserved when excellent practitioners present

18  their arguments to the Court with all the experience and

19  knowledge and expertise they can muster and I think I've seen

20  that in this case and it's very much appreciated by the Court.

21             The motion for an injunction is granted, and you'll

22  have an order shortly.  We are adjourned.

23             THE CLERK:  All rise.

24             (Proceedings concluded at 9:36 a.m.)

25

C E R T I F I C A T E


I, Liza W. Dubois, do hereby certify that
the foregoing transcript is a true and accurate transcription
of the within proceedings, to the best of my knowledge, skill,
ability and belief.


Submitted: 2/13/25          */s/  Liza W. Dubois*
                            LIZA W. DUBOIS, RMR, CRR

```
 1                  UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF NEW HAMPSHIRE
 2

 3   *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *
                                        *
 4   NEW HAMPSHIRE INDONESIAN            *
     COMMUNITY SUPPORT, ET AL.,          *
 5                                       *  No. 1:25-cv-00038-JL-TSM
                        Plaintiffs.      *  March 14, 2025
 6                                       *  10:10 a.m.
                                         *
 7              v.                        *
                                         *
 8                                       *
     DONALD J. TRUMP, PRESIDENT OF       *
 9   THE UNITED STATES, IN HIS           *
     OFFICIAL CAPACITY, ET AL.,          *
10                                       *
                        Defendants.      *
11                                       *
     *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *
12
                   TRANSCRIPT OF MOTION HEARING
13                  HELD VIA VIDEOCONFERENCE
             BEFORE THE HONORABLE JOSEPH N. LAPLANTE
14

15   APPEARANCES:

16

17   For the Plaintiffs:          Cody Wofsy, Esq.
                                   Hannah Schoen Steinberg, Esq.
                                   American Civil Liberties Union
18                                 Foundation - California
                                   425 California St, Ste 700
19                                 San Francisco, CA 94104

20                                 Carol Garvan, Esq.
                                   Zachary L. Heiden, Esq.
21                                 American Civil Liberties Union
                                   Foundation
22                                 PO Box 7860
                                   Portland, ME 04112
23
                                   Christopher Myron Lapinig, Esq.
24                                 Winifred Kao, Esq.
                                   Asian Law Caucus
25                                 55 Columbus Ave
                                   San Francisco, CA 94111
```

APPEARANCES CONTINUED:

For the Plaintiffs (Cont'd):  Elizabeth Grace Caldwell, Esq.
                               NAACP Legal Defense Fund
                               40 Rector St
                               New York, NY 10006

                               Gilles R. Bissonnette, Esq.
                               SangYeob Kim, Esq.
                               American Civil Liberties Union of
                               New Hampshire
                               18 Low Ave
                               Concord, NH 03301

                               Grace Choi, Esq.
                               American Civil Liberties Union
                               Foundation
                               125 Broad St, 18th Flr
                               New York, NY 10004

                               Kimberly Leung, Esq.
                               Asian Law Caucus
                               55 Columbus Ave
                               San Francisco, CA 94111

                               Omar C. Jadwat, Esq.
                               American Civil Liberties Union
                               Foundation
                               125 Broad St, 18th Flr
                               New York, NY 10004

                               Wafa Junaid
                               American Civil Liberties Union
                               Foundation
                               66 W 38th St, Ste 29C
                               New York, NY 10018

                               Tianna Jade Mays, Esq.
                               State Democracy Defenders Action
                               1500 K Street, Ste 900
                               Washington, DC 20005

                               Henry Clay Quillen, Esq.
                               Whatley Kallas LLP
                               159 Middle Street, Suite 2C
                               Portsmouth, NH 03801

```
1    APPEARANCES CONTINUED:

2

     For the Plaintiffs (Cont'd):  Katherine Courtney, Esq.
3                                   Public Rights Project
                                    490 43rd St, Ste 115
4                                   Oakland, CA 94609

5    For the Defendants:           Yuri Fuchs, Esq.
                                    Brad P. Rosenberg, Esq.
6                                   US Department of Justice
                                    1100 L St NW
7                                   Washington, DC 20530

8

9

10

     Court Reporter:               Brenda K. Hancock, RMR, CRR
11                                  Official Court Reporter
                                    United States District Court
12                                  55 Pleasant Street
                                    Concord, NH 03301
13                                  (603) 225-1454

14

15

16

17

18

19

20

21

22

23

24

25
```

| | |
|---|---|
| 1 | P R O C E E D I N G S |
| 2 | THE CLERK:  Good morning, your Honor. |
| 3 | We're here in the matter of <u>New Hampshire Indonesian</u> |
| 4 | <u>Community Support, et al. versus Donald J. Trump, et al.,</u> |
| 5 | 25-cv-38-JL, for a motion hearing. |
| 6 | THE COURT:  Good morning, everyone. |
| 7 | MR. WOFSY:  Good morning, your Honor. |
| 8 | MR. FUCHS:  Good morning, your Honor. |
| 9 | THE COURT:  We're here on a motion for clarification |
| 10 | of the Court's prior preliminary injunction in this case.  Why |
| 11 | don't we start by having counsel, not everybody, but counsel |
| 12 | who are going to speak for the parties today identify |
| 13 | themselves for the record.  We'll start with the plaintiffs. |
| 14 | MR. WOFSY:  Good morning, your Honor.  Cody Wofsy, |
| 15 | ACLU, for the plaintiffs. |
| 16 | THE COURT:  Good morning. |
| 17 | And defense. |
| 18 | MR. FUCHS:  Good morning, your Honor.  Yuri Fuchs, |
| 19 | trial attorney from the Civil Division at the Department of |
| 20 | Justice on behalf of the defendants. |
| 21 | THE COURT:  Good morning to you. |
| 22 | All right.  So, we are here on a motion for |
| 23 | clarification of the order. |
| 24 | I guess I'll just make an observation as a preliminary |
| 25 | that I think the defense is within its rights to make this |

1    request, for sure.  This type of request is authorized by the

2    *Federal Rules of Civil Procedure*.  So, technically, this is

3    nothing unusual, but I guess I want to -- I do want to start --

4    we had a little bit of a housekeeping conference to set this up

5    a few days ago.

6            Attorney Fuchs, were you on that call?

7            MR. FUCHS:  I was, your Honor.

8            THE COURT:  I'm going to ask you a couple of things we

9    talked about there, just so we sort of have it on the record

10   here.  I think I anticipate your answers, but I think it's

11   important to have a complete record, although things have

12   changed a little bit in that there's been an emergency request

13   for a stay of the three pending nationwide injunctions on the

14   same issue in this case.  I've reviewed that.  I've reviewed

15   both.  So, I guess I want to ask you again, though, given that

16   there are three nationwide injunctions pending on this

17   birthright citizenship Executive Order -- I know the one in the

18   First Circuit, a stay was denied of that one.  I'm not sure

19   about -- I think a stay was also denied in the one out of

20   Maryland, if I remember right.

21           MR. FUCHS:  Yes.  And the Ninth Circuit as well, your

22   Honor.

23           THE COURT:  All three of them.

24           MR. FUCHS:  Yes.

25           THE COURT:  Given that that's the state of play here,

1    right, why is clarification of this particular order, which

2    hasn't been appealed yet, anyway, and it appears that the

3    government is honoring the injunctions, at least so far, what

4    is the -- what's the necessity for the clarification?

5         MR. FUCHS:  So, to repeat kind of the points from a

6    few days ago, your Honor, and to add another one, the

7    government --

8         THE COURT:  We're having some trouble with the audio.

9         MR. FUCHS:  -- assess its compliance with --

10        THE COURT:  Counsel, counsel, time out.

11        MR. FUCHS:  I'm sorry.

12        THE COURT:  I need you to start over, because we're

13   having -- at least I'm having some problem with the audio.

14   It's either going blank or it's speeding up.  So, why don't you

15   start over.

16        MR. FUCHS:  Okay.  Can you hear me now, your Honor?

17        THE COURT:  I can.

18        MR. FUCHS:  All right.  So, to reiterate some of the

19   points from a few days ago, your Honor, but also to add another

20   one based on recent developments, as we indicated a few days

21   ago, the government always needs to understand sort of the

22   contours of a particular injunction in order to assess and

23   ensure its compliance with them, whether that be both the scope

24   as to the plaintiffs and also as well as geographic scope.  We

25   had also noted that for the purposes of whether we want to

1    appeal the preliminary injunction order and assert some of the

2    same arguments that we've done in the other cases it is

3    worthwhile to know the geographic scope.

4         I think the application also is particularly salient

5    here to the extent that, if the Supreme Court were to deny the

6    application and all of the nationwide injunctions continue,

7    obviously that doesn't change the government's compliance of

8    having to ensure the injunction is effectuated on a nationwide

9    basis.  But, to the extent that it actually is granted, your

10   Honor, and the court -- the primary issue is in granting the

11   applications the nationwide scope of these injunctions.  To the

12   extent that the court holds that nationwide scope is improper,

13   I think it's actually more salient to understand the contours

14   of the injunction that your Honor issued and its geographic

15   scope both for the purposes of compliance and to ensure that

16   our appeal arguments are consistent across the various cases.

17        THE COURT:  Okay.  Understood.  I mean, I understand

18   the answer.  I'm not sure I completely accept it, given the

19   fact that -- I can't imagine how the scope of this injunction

20   could possibly be implicated, given that you're honoring three

21   nationwide injunctions, but I do understand the impetus to just

22   understand an order that's been issued in any given case.

23        MR. FUCHS:  Yeah.  If I can add, I don't want to

24   belabor the point, for instance, if the nationwide scope of

25   these injunctions is ruled unlawful, right, then the actual

1    geographic scope of all of them I think is actually

2    particularly relevant for our -- for the defendants' compliance

3    with especially your Honor's order.

4              THE COURT:  That makes sense.  Let me ask you this

5    question:  What's the timetable for that litigation?  I mean,

6    when is the response due, if you know?  When is the response

7    due, and do you have any kind of prognostication for me

8    regarding the timing of an order in that case?

9              MR. FUCHS:  I don't dare to read the tea leaves of

10   when the Supreme Court will ever act on something, so I can't

11   speak to that, your Honor.  I don't have -- unfortunately, I'm

12   sorry, I don't have the response to the application in front of

13   me.

14             THE COURT:  Okay.  Mr. Wofsy, are you involved in that

15   litigation at all?

16             MR. WOFSY:  We're not direct parties.  You know, I've

17   sort of communicated with some of our colleagues.  My

18   understanding is that there is no response date set yet.

19             THE COURT:  Okay.  Well, there you go.

20             All right, then, so before I move on to the motion,

21   anything you wanted to add, Mr. Wofsy?

22             MR. WOFSY:  There is one point I just want to bring to

23   the Court's attention.  You know, I think -- we're happy to

24   answer whatever questions the Court may have in terms of this

25   motion, and, as we said, we don't oppose clarification.  I

1    don't think it's going to surprise the Court that we are

2    concerned about the scope issues.  You know, I think, given

3    that the government is bringing these arguments to the Supreme

4    Court and arguing that this order should go into effect, I

5    don't think it will surprise the Court that we are worried

6    that, if they prevail on that, that this, you know, blatantly

7    illegal Executive Order is going to start impacting people,

8    depending on what the contours of the Court's decision might

9    be.

10          So, I did want to just flag for the Court that we are

11   considering the possibility of seeking a class in this case,

12   and, in particular, a nationwide class.  That may not be

13   surprising to the Court.  Obviously, this is something that the

14   government itself raised in the stay application.  It's at page

15   38 of its Supreme Court stay application, where it's indicated

16   this is, in its view, a proper way to obtain nationwide

17   protection for everyone.  So, I wanted to raise this for the

18   Court, you know, both to give you a heads-up and also to see if

19   there's any questions or thoughts that the Court wanted to

20   share at this point, obviously.  There's no motion yet, and so

21   it may be premature, but I did want to raise that.

22          The other thing I just wanted to say about that is in

23   terms of, just to share our thinking, in terms of the

24   possibility of seeking class-wide relief, I think that the key

25   thing for us would just be a question of speed.  As I said,

1    this is a blatantly unconstitutional order.  I think it's

2    telling that the government has not argued that it's likely to

3    succeed on the actual constitutional or statutory merits in any

4    of the stay papers in any of the proceedings, including up to

5    the Supreme Court, and so I think for us the concern is that

6    delay in obtaining relief, you know, should the Supreme Court

7    limit these injunctions, would mean that children would be

8    exposed to all the harms we've talked about immediately.

9            So, anyway, that is kind of what we're thinking.  We,

10   obviously, are still digesting the stay application and

11   thinking things through, given that this just came in

12   yesterday, but wanted to share our current thinking with the

13   Court.

14           THE COURT:  Understood.  All right.

15           So, Mr. Fuchs, I have read your motion as well as the

16   supplemental authority that the parties have filed.  I think

17   there was a couple of instances of supplemental authority.  One

18   was the First Circuit denial of a stay and now the application

19   for I guess what I would call an emergency stay at the

20   U.S. Supreme Court level on all three of the other cases,

21   right?  So, I've read all that.  And I guess -- I understand

22   the questions.  If you want to speak more about the questions

23   you've raised, Mr. Fuchs, you can.  You shouldn't feel the need

24   to, though.  I do understand them, but I'm happy to listen.

25           MR. FUCHS:  No.  I don't want to belabor the point,

1    your Honor.

2         THE COURT:  Fair enough.

3         Anything you want to add to -- you've given me a

4    heads-up, Mr. Wofsy, about the possibility of seeking class

5    certification, but just on the merits of this motion anything

6    you want to say?

7         MR. WOFSY:  No, your Honor.  Thank you.

8         THE COURT:  Okay.  Well, look, here's -- so what I did

9    tell you earlier was I'm not prepared to supplement my order

10   with another order, but I am happy to answer your questions,

11   bottom line, and the transcript of this proceeding can be your

12   record, and I'll order the preparation of that so you have

13   that.  Nobody needs to do that.  I'll ask the court reporter

14   now to prepare a transcript of this proceeding today as a

15   supplement to the injunction order.

16        Before issuing the injunction, I did carefully

17   consider and research the topic of national -- not national --

18   nationwide injunctions or universal injunctions, not because I

19   was inclined to grant one, because I'm, frankly, disinclined,

20   but because the plaintiffs requested it.  I mean, they

21   specifically asked for it, and I thought, well, I need to look

22   at this.  There's lots of scholarly authority on the issue, and

23   there's some judicial authority on the issue, with precedent

24   and cases discussing the concept.  It strikes me in the reading

25   I've done that what authority is out there, both scholarly,

1    academic and judicial, is less focused on the facts and

2    circumstances either favoring or militating against nationwide

3    or universal relief in any given litigation or guidance on when

4    or when not to grant or deny nationwide or universal injunctive

5    relief.  It more seems to be focused on judicial power, the

6    judicial role and its limits under our constitutional system

7    and under Article III, not just Article III, but the separation

8    of powers that infuses our system.  My -- this Court's view of

9    the separation of powers and Article III leaves me disinclined

10   to grant nationwide or universal injunctive relief.

11          So, I'll just say, first of all, this Court's

12   injunction is not a nationwide injunction.  Secondly, this

13   Court's injunction is not a universal injunction.

14          I don't know if there is a principal difference

15   between those two concepts, to be honest.  What discussion I

16   can find -- I see both terms used in the media and sometimes

17   even in court papers.  If there is a difference, I guess it's

18   this idea of parties involved versus geography, but I'm not

19   sure how principled that distinction really is.

20          The bottom line, though, this Court's injunction is

21   written to be neither universal nor nationwide.  Now, by its

22   terms it's meant to apply, you know, "within the jurisdiction

23   of this court, during the pendency of this litigation."

24          I recognize that an appellate review of this order or

25   an appellate court reviewing it might take a different view

1   than my intentions; it might simply decide that that language

2   is either more universal or nationwide than I have intended it

3   to be, but that's a decision for another court.  My intention

4   was not to issue a nationwide nor a universal injunction.

5        So, that clarifies, I think, the main issue.

6        I guess I'll ask Mr. Fuchs, then, knowing that, do you

7   require more clarification, and, if so, tell me what you want

8   to know.

9        MR. FUCHS:  I guess, your Honor, is it then -- reading

10  the terms of your orders, your Honor's order, is it then

11  confined to the District of New Hampshire or --

12       THE COURT:  Well, the Court's injunction applies to

13  all members of the plaintiff organizations, not just those

14  referred to in the papers, all members.

15       Now, look, Mr. Wofsy said several times in this

16  litigation, and I agree with him, that it would not be

17  difficult to work out a procedural device or apparatus or way

18  to ensure that we know who the members are, if necessary, and

19  that could be done through any combination of a protective

20  order, or some sealed filings, or the like.  I expect counsel,

21  if necessary, to work that out, and, if you can't work it out

22  and file something with me, some type of stipulated approach to

23  it, I can get involved, and I can resolve it; I can either

24  assist you in resolving it, or I can just issue orders.  But

25  the injunction applies to all members of the plaintiff

1  organizations.

2       All right.  As to the geographic question, Mr. Fuchs,

3  I have to respond to your question with a question.  So, I

4  guess what you're asking me is are individuals who are not

5  members of the organizations but somehow come under enforcement

6  in the District of New Hampshire, are they protected by the

7  injunction?  Is that your question?

8       MR. FUCHS:  Yeah, essentially.  To sort of follow up

9  your question with a question, so this becomes two questions,

10  so one, as I read it, your Honor, and feel free to correct me,

11  what you were saying before is basically the injunction entered

12  is not nationwide per se but would apply nationwide to all of

13  the members of the organizations who are plaintiffs in this

14  case.  Is that correct?

15       THE COURT:  Well, look, if they are parties before the

16  Court, this Court, the answer is yes.

17       MR. FUCHS:  Okay.  And then the second question is,

18  excluding those individuals who are part of this case, does

19  your Honor's order affect nonparties within the jurisdiction of

20  the District of New Hampshire?

21       THE COURT:  I'd say technically no, but let me ask you

22  this:  I'm trying to envision a child born who would be subject

23  to the enforcement of this order, right?  Can you conceive of a

24  person who would be born after the effective date of the order,

25  who would be subject to the order, who would not be entitled to

1    the same relief in this jurisdiction if they came to the court?

2    I can't think of one.  I can't think of such a person who would

3    not be entitled to the same relief, given this Court's

4    interpretation of the law.  Is there such a human that could

5    exist?

6              MR. FUCHS:  I kind of don't want to wade into that,

7    your Honor, because we haven't had any -- for the reasons

8    stated many moons ago that there hasn't been any kind of

9    meaningful guidance or thinking about this from the agencies,

10   and I don't want to propound an explanation of how that would

11   work without --

12              (Mr. Fuch's audio connection stopped)

13              MR. FUCHS:  -- thinking about that in the first place.

14              THE COURT:  All right.

15    (The court reporter asked Mr. Fuchs to repeat his statement)

16              MR. FUCHS:  Sorry.  To repeat --

17              THE COURT:  Basically he said he didn't want to weigh

18   in on the question.

19              MR. FUCHS:  Basically, yeah.  Thank you.

20              THE COURT:  Yeah.  Well, look, I can't conceive of

21   individuals who would be covered by the Executive Order but who

22   would not be entitled to the identical relief if it was

23   requested with respect to enforcement within this district.  I

24   can't think of such a person.

25              So, I guess my answer to your question is, Mr. Fuchs,

1    as a technical matter, no, it doesn't apply to such

2    individuals, the order, but as a practical matter it

3    effectively does, because anyone seeking similar relief would

4    receive it from the Court, given the Court's interpretation of

5    the applicable statute and the Fourteenth Amendment.

6           MR. FUCHS:  Understood, your Honor.  Thank you.

7           THE COURT:  I think that answers all the questions in

8    the motion, so let me just ask each of you, anything else I can

9    do for you?

10          MR. FUCHS:  Nothing further from us, your Honor.

11   Thank you very much.

12          THE COURT:  Mr. Wofsy?

13          MR. WOFSY:  I do have one question, I guess, coming

14   out of this conversation, your Honor, and, obviously, I

15   understand if it feels premature, but, thinking about this

16   class question, I think what I hear the Court saying is that

17   it's concerned about its jurisdiction or maybe propriety to

18   issue a nationwide injunction in the sense of an injunction

19   that applies across the country but protects nonparties.  Am I

20   right in assuming that those same concerns that the Court has

21   would not apply to a nationwide class, because then everybody

22   in the class would be parties properly before the Court, or is

23   there some concern that I'm not understanding that we should be

24   aware of as we're thinking through how to deal with this

25   procedurally complex situation?

1          THE COURT:  Having not thought about it much, I'll say

2     that nationwide classes are something that this Court deals

3     with routinely.  I won't say more about it than that, but all

4     your members of all your organizations are covered.

5          MR. WOFSY:  We appreciate that.  Thank you, your

6     Honor.

7          THE COURT:  All right.  Well, Counsel, I want to

8     continue to commend you for how you are approaching the

9     litigation.  I feel the same way I felt at the injunction

10    hearing.  I do think having excellent counsel, experienced

11    counsel, thoughtful counsel, as you both are, briefing these

12    issues and litigating them in court in a collegial way is the

13    best way to serve the rule of law, and that's been, at least

14    for this litigation, everything I've seen so far has fit that

15    description.  So, I appreciate your continued participation and

16    the spirit in which you're participating.

17          That's all I have, Counsel, and we are adjourned.

18          MR. WOFSY:  Thank you, your Honor.

19          MR. FUCHS:  Thank you, your Honor.

20       (WHEREUPON, the proceedings adjourned at 10:30 a.m.)

21

22

23

24

25

18

1                           C E R T I F I C A T E

2

3

4            I, Brenda K. Hancock, RMR, CRR and Official Court

5    Reporter of the United States District Court, do hereby certify

6    that the foregoing transcript constitutes, to the best of my

7    knowledge, skill, ability and belief, a true and accurate

8    transcription of the within proceedings.

9

10

11

12

13   Date: ___3/14/24___         /s/ *Brenda K. Hancock*
                                 Brenda K. Hancock, RMR, CRR
14                               Official Court Reporter

15

16

17

18

19

20

21

22

23

24

25

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW HAMPSHIRE**

| | |
|---|---|
| **NEW HAMPSHIRE INDONESIAN COMMUNITY SUPPORT**, *et al.*, | |
| *Plaintiffs*, | |
| v. | Case No. 1:25-cv-38-JL-TSM |
| **DONALD J. TRUMP**, *et al.*, | |
| *Defendants.* | |

<u>**NOTICE OF APPEAL OF PRELIMINARY INJUNCTION**</u>

PLEASE TAKE NOTICE that Defendants hereby appeal to the United States Court of Appeals for the First Circuit from the Court's February 10, 2025 Order (ECF No. 77) granting Plaintiffs' motion for preliminary injunction.

DATED: April 10, 2025            Respectfully submitted,

YAAKOV M. ROTH
Acting Assistant Attorney General
Civil Division

ALEXANDER K. HAAS
Branch Director

BRAD P. ROSENBERG
Special Counsel

*s/ Yuri S. Fuchs*
R. CHARLIE MERRITT
YURI S. FUCHS (CA Bar No. 300379)
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Phone:  202-598-3869
Fax: 202-616-8460
Email: yuri.s.fuchs@usdoj.gov

1

*Attorneys for Defendants*